1 | ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice* forthcoming)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant*
IXL LEARNING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S., AMY WARREN, on behalf of herself and her minor child B.W., and KIMBERLEY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IXL LEARNING, INC.,<br><br>Defendant. | Case No. 3:24-cv-02724-RFL<br><br>**DEFENDANT IXL LEARNING, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 8, 2024<br>Time: 10:00 a.m.<br>Court: Room 15, 18th Floor<br>Judge: Hon. Rita F. Lin<br><br>Complaint Filed: May 7, 2024 |

**TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

**Please take notice** that on October 8, 2024 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 15, 18th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant IXL Learning, Inc. ("IXL") will and hereby does move this Court for an order compelling Plaintiffs to arbitrate the claims asserted against IXL in their Complaint and staying this action pending completion of arbitration on an individual basis.

This motion is made on the grounds that Plaintiffs are each subject to a valid and enforceable arbitration agreement that requires arbitration of the claims raised in this lawsuit pursuant to the Federal Arbitration Act.

This Motion is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and is based on this Notice, the attached Memorandum of Points and Authorities, the accompanying Declarations of Alex Smetana, David P. Fuad, and Joseph Zhou and exhibits thereto, the [Proposed] Order, all other supporting papers and documents on file with the Court, the record in this action, and such oral and documentary evidence as may be presented at the hearing.

Dated: July 12, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *David P. Fuad*
Aravind Swaminathan (*pro hac vice* forthcoming)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant IXL Learning, Inc.*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1
II. FACTUAL BACKGROUND ............................................................................................... 1
III. LEGAL STANDARD ........................................................................................................... 2
IV. ARGUMENT ........................................................................................................................ 3
    A. The Terms Constitute a Valid Arbitration Agreement Enforceable Against Plaintiffs ................................................................................................................... 4
        1. Plaintiffs' School Districts Consented to the Terms as Plaintiffs' Agents ........................................................................................................... 4
        2. Plaintiffs Consented to the Terms Through Their Continued Use of IXL's Services .................................................................................................. 6
    B. The Parties Agreed To Arbitrate Their Claims ........................................................ 8
        1. The Arbitration Agreement Delegates Threshold Issues Of Arbitrability To An Arbitrator ...................................................................... 8
        2. Plaintiffs' Claims Are Within the Agreement's Scope ............................... 9
    C. The Court Should Stay This Action And Compel Arbitration ................................. 9
V. CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*,
   861 F.2d 224 (9th Cir. 1988) ............................................................................................... 7

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ....................................................................................................... 3, 6

*AT&T Techs., Inc. v. Commc'n Workers of Am.*,
   475 U.S. 643 (1986) ........................................................................................................... 9

*B.D. v. Blizzard Ent., Inc.*,
   76 Cal. App. 5th 931, 292 Cal. Rptr. 3d 47 (2022) ............................................................ 7

*Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*,
   623 F. Supp. 3d 1059 (C.D. Cal. 2022) ............................................................................. 5

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ........................................................................................... 8

*Cairo, Inc. v. Crossmedia Servs., Inc.*,
   No. C 04-04825 JW, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ..................................... 7

*Capital Grp. Communs. Inc. v. Xedar Corp*,
   No. C -13-01793 EDL, 2013 U.S. Dist. LEXIS 109856 (N.D. Cal. Aug. 5,
   2013) .................................................................................................................................. 3

*Cooper v. Adobe Sys. Inc.*,
   No. 18-CV-06742-BLF, 2019 WL 5102609 (N.D. Cal. Oct. 11, 2019) ............................ 8

*Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*,
   478 F. Supp. 3d 919 (C.D. Cal. 2020) ............................................................................... 6

*Davis v. Nordstrom, Inc.*,
   755 F.3d 1089 (9th Cir. 2014) ........................................................................................... 3

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ........................................................................................................... 3

*Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*,
   No. 20-cv-00574, 2020 WL 3869186 (N.D. Cal. July 9, 2020) ........................................ 3

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ............................................................................................................. 3

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ................................................................................................... 3, 8

*Hosp. & Inst. Workers Union Local 250 v. Marshal Hale Mem'l Hosp.*,
  647 F.2d 38 (9th Cir.1981) ................................................................................................ 9

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) .................................................... 9

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*,
  No. 18-CV-06503-RS, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ............................... 4

*Luckert v. Tesla Energy Ops., Inc.*,
  No. 21-cv-3027-VC, 2021 WL 3721967 (N.D. Cal. Aug. 5, 2021) ................................... 8

*MediVas, LLC v. Marubeni Corp.*,
  741 F.3d 4 (9th Cir. 2014) .................................................................................................. 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ........................................................................................................... 3, 6

*NORCAL Mut. Ins. Co. v. Newton*,
  84 Cal. App. 4th 64, 100 Cal. Rptr. 2d 683 (2000) ....................................................... 4, 7

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ............................................................................................... 6

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ............................................................................................................. 3

*Shivkov v. Artex Risk Sols., Inc.*,
  974 F.3d 1051 (9th Cir. 2020) ............................................................................................ 4

*Singh v. Payward, Inc.*,
  No. 23-CV-01435-CRB, 2023 WL 5420943 (N.D. Cal. Aug. 22, 2023) .......................... 8

*Smith v. Spizzirri*,
  601 U.S. 472, 144 S. Ct. 1173 (2024) ................................................................................ 9

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ............................................................................................................... 2

*Stoyas v. Toshiba Corp.*,
  896 F.3d 933 (9th Cir. 2018) .............................................................................................. 5

*Ticketmaster Corp. v. Tickets.Com, Inc.*,
  No. CV997654HLHVBKX, 2003 WL 21406289 (C.D. Cal. Mar. 7, 2003) ..................... 7

*United States v. Bailey*,
  696 F.3d 794 (9th Cir. 2012) .............................................................................................. 7

*Valente v. Bank of Am. NA*,
   No. 20-CV-01172-MMC, 2020 WL 3543383 (N.D. Cal. June 30, 2020), aff'd,
   No. 20-16604, 2021 WL 5359585 (9th Cir. Nov. 17, 2021) ................................................... 7

*Vianna v. Doctors' Mgmt. Co.*,
   27 Cal. App. 4th 1186, 1189 (1994) .................................................................................... 9

*Wolsey, Ltd. v. Foodmaker, Inc.*,
   144 F.3d 1205 (9th Cir. 1998) .............................................................................................. 3

**Statutes**

9 U.S.C. §§ 1-16 ............................................................................................................................ 2

9 U.S.C. § 3 ............................................................................................................................... 1, 9

15 U.S.C. § 6501 ........................................................................................................................... 4

15 U.S.C. § 6501(1) ...................................................................................................................... 5

Children's Online Privacy Protection Act (COPPA) ......................................................... 4, 5, 6, 7

Federal Arbitration Act (FAA) .............................................................................................. *passim*

Federal Wiretap Act ...................................................................................................................... 2

**Other Authorities**

16 CFR part 312 ............................................................................................................................ 4

64 Fed. Reg. 59888 (1999) ............................................................................................................ 5

64 Fed. Reg. 59903 (1999) ......................................................................................................... 5, 6

89 Fed. Reg. 2034 (2024) .............................................................................................................. 6

89 Fed. Reg. 2055 (2024) .............................................................................................................. 6

"COPPA Guidance for Ed Tech Companies and Schools during the
   Coronavirus"(available at https://www.ftc.gov/business-
   guidance/blog/2020/04/coppa-guidance-ed-tech-companies-and-schools-
   during-coronavirus) ............................................................................................................. 5

https://www.ixl.com ............................................................................................................. 2, 5, 9

https://www.ixl.com/termsofservice ............................................................................................. 1

"JAMS Comprehensive Arbitration Rules & Procedures" (available at
   https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11) ................................ 8

Restatement (Second) of Contracts § 69(1)(a) (1981) .................................................................... 6

v

DEFENDANT IXL LEARNING, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:24-CV-02724-RFL

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Gretchen Shanahan, Amy Warren, and Kimberly Whitman ("Plaintiffs") have chosen the incorrect forum to resolve their disputes with IXL Learning, Inc. ("Defendant" or "IXL"). Plaintiffs allege that IXL unlawfully collected, used, and sold their children's data in connection with their use of IXL's websites and school educational services. Plaintiffs are wrong, but that question is not for this Court to decide.

Plaintiffs are bound by IXL's Terms of Service (the "Terms").[1] The Terms provide that the merits of any dispute "arising out of or in connection with or relating to this agreement" must be resolved "by binding arbitration." The Terms likewise provide, by incorporating the JAMS Optional Expedited Arbitration Procedures, that threshold issues of arbitrability—including any dispute over the validity or scope of the arbitration agreement—must also be resolved by the arbitrator, not this Court. And the Terms mandate that any claim must be brought in a party's individual capacity, not as a class member in any putative class action.

In other words, the Terms expressly waive the exact claims Plaintiffs now purport to bring. This Court should compel Plaintiffs to arbitrate all their claims on an individual basis and dismiss or stay this case pending the completion of arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.

## II. FACTUAL BACKGROUND[2]

Plaintiffs are all Kansas residents whose minor children "access and use IXL products and services" as "part of their public schooling" in the Shawnee Mission Public School District and the Wichita Unified School District 259. Compl. ¶¶ 6-12. Before Plaintiffs' children used IXL's products, these school districts purchased access from IXL to their educational services, whereupon the districts were presented with and agreed to IXL's policies, including the Terms. *See* Zhou Decl. ¶¶ 2, 4. The Terms apply to all users "who access or otherwise use the Service," specifically

---

[1] *Available at* https://www.ixl.com/termsofservice; *see also* ECF No. 1 ("Complaint" or "Compl."), n. 2.
[2] IXL accepts the Complaint's allegations solely for purposes of this motion and does not otherwise concede their veracity.

including all "online and/or mobile services, websites, and software provided on or in connection with www.ixl.com." *See* Terms, ¶ 2.

The first page of the Terms informs users in bold, capital letters that "**THIS AGREEMENT CONTAINS A MANDATORY INDIVIDUAL ARBITRATION AND CLASS ACTION/JURY TRIAL WAIVER PROVISION THAT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS**." Terms, ¶ 4. Section 22 likewise tells users to "READ THIS SECTION CAREFULLY BECAUSE IT REQUIRES THE PARTIES TO ARBITRATE THEIR DISPUTES AND LIMITS THE MANNER IN WHICH YOU CAN SEEK RELIEF FROM IXL." *Id*. § 22. The Terms require arbitration of "any claim, dispute, or controversy … arising out of or in connection with or relating to this agreement" through "JAMS, under the Optional Expedited Arbitration Procedures then in effect for JAMS." *Id*. The Terms specify that "any arbitration conducted pursuant to the terms of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-16)." *Id*. § 21. The Terms also bar any claim brought "AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION OR OTHER REPRESENTATIVE PROCEEDING," including in class arbitrations. *Id*. § 23. The Terms thus require all claims to proceed on an individual basis.

Disregarding these provisions, Plaintiffs filed this putative class action on May 7, 2024, bringing claims under the Federal Wiretap Act and various California statutes and common law causes of action. Plaintiffs' claims all arise out of their children's use of IXL's websites and services. The claims allege that IXL unlawfully and non-consensually collected, used, and sold Plaintiffs' children's data. *See, e.g*., Compl. ¶ 296 ("IXL's non-consensual tracking of the Plaintiffs' and Class members' internet communications was without authorization and consent from the Plaintiffs and Class members").

### III.    LEGAL STANDARD

The FAA "creates a body of federal substantive law" that is applicable in both state and federal courts. *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984). The FAA reflects a "liberal

federal policy favoring arbitration," and its primary purpose is to ensure the enforcement of arbitration agreements according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 344-46 (2011). In evaluating a motion to compel under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The party seeking to avoid arbitration has the burden of showing that the arbitration provision is unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The FAA "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis in original).

The threshold issue regarding arbitration is arbitrability—whether "a valid contract to arbitrate exists" and encompasses the dispute at issue. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014). The arbitrator decides those "gateway questions of arbitrability" if the "parties' agreement" so provides "by clear and unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529-30 (2019) (citations and quotations omitted); *see Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010) (holding that the question of whether the arbitration agreement was unconscionable must be decided by the arbitrator under provision delegating enforceability issues); *Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*, No. 20-cv-00574, 2020 WL 3869186 at *5 (N.D. Cal. July 9, 2020) (enforcing provision delegating "disputes over existence, scope, and validity of the arbitration agreements exclusively to the arbitrator"). Otherwise, the courts resolve questions of arbitrability. *See Henry Schein, Inc.*, 139 S. Ct. at 529-30. Courts apply state contract law in determining the existence, validity, and scope of an arbitration agreement. *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). "In California, a heavy presumption weighs the scales in favor of arbitrability." *Capital Grp. Communs. Inc. v. Xedar Corp*, No. C-13-01793 EDL, 2013 U.S. Dist. LEXIS 109856, at *9 (N.D. Cal. Aug. 5, 2013) (brackets and internal quotation marks omitted).

## IV. ARGUMENT

Plaintiffs agreed to the arbitration provision in Section 22 of the Terms through two

methods, each independently establishing an agreement: (1) the consent supplied by their children's schools under federal law, and (2) through allowing their children's continued use of IXL's services with knowledge of the terms. Accordingly, Plaintiffs are bound by a valid arbitration agreement that delegates threshold issues of arbitrability to the arbitrator. And even if this Court were to analyze the question of arbitrability itself, Plaintiffs' claims are within the arbitration agreement's scope. Because all of Plaintiffs' claims are subject to arbitration, the Court should stay this case.

### A. The Terms Constitute a Valid Arbitration Agreement Enforceable Against Plaintiffs

When deciding whether the parties agreed to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020). Under those principles, the agreement to arbitrate disputes contained in Section 22 of the Terms is enforceable against Plaintiffs for two independent reasons: The school districts acted as Plaintiffs' agents and consented to the Terms on their behalf, and Plaintiffs further consented by allowing their children's continued use of IXL's services with knowledge of the Terms.

#### 1. Plaintiffs' School Districts Consented to the Terms as Plaintiffs' Agents

It is "well-settled under California law that a principal may be bound by an agreement made by an agent," and "[a]rbitration agreements are no exception." *Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, No. 18-CV-06503-RS, 2019 WL 3430656, at *3 (N.D. Cal. July 30, 2019). California courts thus enforce arbitration agreements against nonsignatories when there is "an agency or similar relationship between [a] nonsignatory and one of the parties to the arbitration agreement." *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 76, 100 Cal. Rptr. 2d 683, 693 (2000).

Here, an express agency existed between Plaintiffs and the relevant school districts as a matter of federal law. Specifically, the federal Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq.*, along with the Federal Trade Commission's ("FTC") implementing rule, 16 CFR part 312, empowers schools to "act[] as intermediaries between [education technology providers] and parents" and "***serv[e] as the parents' agent*** in the [notice and

*consent] process"* when the provider's services are used for an educational purpose.[3] 64 Fed. Reg. 59888, 59903 (1999)(emphasis added); *see also* FTC, "COPPA Guidance for Ed Tech Companies and Schools during the Coronavirus", published on April 9, 2020 (available at https://www.ftc.gov/business-guidance/blog/2020/04/coppa-guidance-ed-tech-companies-and-schools-during-coronavirus) (last accessed July 12, 2024).[4]

As authorized by federal law, the school districts consented to the Terms as agents of the parents.[5] After the schools provided this consent, by operation of law, the Terms applied to all users "who access or otherwise use the Service," specifically including the "use of online and/or mobile services, websites, and software provided on or in connection with www.ixl.com." *See* Terms, ¶ 2. According to Plaintiffs, their minor children "access[ed] and use[d] IXL products and services" as "part of [their] public schooling" in their respective Kansas school districts. Compl. ¶¶ 6-7, 9, 11. That use was subject to the Terms.

Plaintiffs may contend that because COPPA addresses consent in the context of data collection, the schools exceed the scope of COPPA's statutory consent mechanism by binding Plaintiffs to the Terms' arbitration provision. But this cannot be true when considering the express reasoning behind COPPA's consent scheme: If education technology providers like IXL had to individually obtain each parent's consent to the Terms, the resulting impracticalities could jeopardize an entire class's educational experience. As the Commission recently articulated as the basis for this rule:

> The need for parental consent is … likely to interfere with educators' curriculum decisions. As a practical matter, obtaining consent from the parents of every student in a class often will be

---

[3] COPPA applies to children "under the age of 13." 15 U.S.C. § 6501(1). Three of Plaintiffs' minor children were fifteen (15) years old when Plaintiffs filed the Complaint. *See* Smetana Decl. ¶ 2. Those children attend school in the Shawnee Mission School District. *Id*. IXL contracted to provide its services to the Shawnee Mission School District in 2020. Zhou Decl. ¶ 3. The fourth minor child is currently twelve (12) years old. *See* Smetana Decl. ¶ 2. Accordingly, Plaintiffs' minor children were all under the age of thirteen (13) when their school districts agreed to the Terms, and COPPA's consent scheme applied.

[4] A "court may take judicial notice of government-provided information on its official website." *Balboa Cap. Corp. v. Shaya Med. P.C. Inc*., 623 F. Supp. 3d 1059, 1066 n. 3 (C.D. Cal. 2022) (citing *Stoyas v. Toshiba Corp*., 896 F.3d 933, 946 n.17 (9th Cir. 2018)).

[5] When Plaintiffs' children began using IXL's services, IXL's Terms of Service contained the same arbitration provision as that in IXL's currently operative Terms of Service. *See* Fuad Decl. ¶¶ 2-4.

challenging…. In situations where some number of parents in a class decline to consent to their children's use of [education technology], schools would face the prospect of foregoing particular services for the entire class or developing a separate mechanism for those students whose parents do not consent.

89 Fed. Reg. 2034, 2055 (2024); *see* 64 Fed. Reg. 59903. This rationale necessarily applies with equal force to other aspects of a provider's terms and conditions—including, as here, disputes about data collection. *See also Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*, 478 F. Supp. 3d 919, 927 (C.D. Cal. 2020) ("Signing an arbitration agreement was a necessary step in making [the] purchase, and Plaintiffs are therefore bound by the agreement" entered into by the plaintiffs' agent). Otherwise, education technology providers would effectively be foreclosed from resolving disputes in arbitration—a result clearly inconsistent with the "congressional declaration of a liberal federal policy favoring arbitration agreements" reflected in the FAA. *See Moses H. Cone*, 460 U.S. at 24.

Moreover, the FTC has provided no such limitations on the agency's scope. In the absence of a textual limitation, there is no reason to infer Congressional intent to create a narrow agency. It would be illogical for the FTC to create a regime that allowed parents to cherry-pick provisions of school vendor agreements that they do not like by asserting the school district lacked authority to bind them. Such a narrow agency absent textual support would violate the rule that "courts must place arbitration agreements on an equal footing with other contracts." *AT&T Mobility LLC*, 563 U.S. at 339. Accordingly, COPPA's consent scheme applies to Plaintiffs and bound them to the Terms.

**2.     Plaintiffs Consented to the Terms Through Their Continued Use of IXL's Services**

As an additional, independent reason establishing Plaintiffs' agreement to the Terms, Plaintiffs themselves separately accepted the Terms by allowing their children's continued use of IXL's services with knowledge of the Terms. It is hornbook contract law that "when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (quoting Restatement (Second) of Contracts § 69(1)(a) (1981)). "[N]o particular

form of words is necessary to indicate assent—the offeror may specify that a certain action in connection with his offer is deemed acceptance, and ripens into a contract when the action is taken." *Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV997654HLHVBKX, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003). Here, the Terms make clear that they apply to all users "who access or otherwise use the Service[.]" *See* Terms, ¶ 2. Thus, using IXL's services with knowledge of the Terms manifests assent.

The Complaint demonstrates that Plaintiffs had knowledge of the Terms at least by the time they decided to file this lawsuit. The Complaint frequently cites, references, and quotes the Terms, *see, e.g.,* Compl. ¶¶ 5, 66, 122, 139, 144, 264, and even acknowledges the location of the Terms. *Id.* ¶ 139 (alleging that the Terms are "located on [IXL's] website").[6] As explained, the Terms conspicuously and repeatedly call attention to their arbitration provisions. *Supra* p. 2; *see B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 947, 292 Cal. Rptr. 3d 47, 61 (2022) (criteria for whether arbitration provision is sufficiently conspicuous includes text's "size, color, contrast, and location"). And Plaintiffs allege that their children continue to "use IXL platforms." *See* Compl. ¶ 231. Plaintiffs' allowing of their children's continued use of IXL's platforms after they indisputably had seen the Terms constitutes acceptance. *See Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825 JW, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005) ("visits to [defendant's] web sites with knowledge of [defendant's] Terms of Use constituted acceptance of the terms"). Accordingly, at the latest, a valid agreement to arbitrate existed on the date Plaintiffs filed the Complaint containing the exact claims that they waived.[7]

---

[6] "Factual assertions in pleadings … are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988); *see also United States v. Bailey*, 696 F.3d 794, 802 (9th Cir. 2012) ("a complaint establishes [] knowledge of what a plaintiff claims"); *Valente v. Bank of Am. NA*, No. 20-CV-01172-MMC, 2020 WL 3543383, at *1 (N.D. Cal. June 30, 2020), aff'd, No. 20-16604, 2021 WL 5359585 (9th Cir. Nov. 17, 2021) (holding that a complaint demonstrated the plaintiff's knowledge as of a certain date).

[7] For these same reasons, Plaintiffs cannot argue that the schools would exceed their agency authority under COPPA by binding Plaintiffs to the Terms. *See supra* § IV(B)(1). "A principal's failure to promptly disaffirm an agent's conduct on her behalf constitutes a ratification." *NORCAL Mut. Ins. Co. v. Newton*, 84 Cal. App. 4th 64, 79, 100 Cal. Rptr. 2d 683, 695 (2000).

**B.      The Parties Agreed To Arbitrate Their Claims**

**1.      The Arbitration Agreement Delegates Threshold Issues Of Arbitrability To An Arbitrator**

Upon holding that Plaintiffs are bound to an arbitration agreement, the Court should refer this case to arbitration without further consideration because the Terms clearly and unmistakably delegate issues of arbitrability to the arbitrator. The Terms do so by expressly incorporating JAMS' Optional Expedited Arbitration Procedures. *See* Terms, § 22. Those procedures provide for a broad delegation of arbitrability: All "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." *See* "JAMS Comprehensive Arbitration Rules & Procedures" (available at https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11) (last accessed July 12, 2024).[8] By incorporating that provision, the Terms clearly and unmistakably delegate to the arbitrator all "gateway issue[s] of arbitrability," *Henry Schein, Inc.*, 139 S. Ct. at 529-30, including whether Plaintiffs formed a valid arbitration agreement and are proper parties to the arbitration, and whether the substance of their claims falls within the agreement's scope.

Northern District courts routinely hold that an arbitration agreement's incorporation of JAMS rules is clear and unmistakable evidence delegating arbitrability to the arbitrator. *See, e.g.*, *Singh v. Payward, Inc.*, No. 23-CV-01435-CRB, 2023 WL 5420943, at *7 (N.D. Cal. Aug. 22, 2023); *Luckert v. Tesla Energy Ops., Inc.*, No. 21-cv-3027-VC, 2021 WL 3721967 (N.D. Cal. Aug. 5, 2021); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("incorporation of the AAA rules constitutes 'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator"). This Court should do the same and refer this case to arbitration.[9]

---

[8] "JAMS rules are a matter of public record and therefore subject to judicial notice." *Cooper v. Adobe Sys. Inc.*, No. 18-CV-06742-BLF, 2019 WL 5102609, at *4 (N.D. Cal. Oct. 11, 2019) (collecting cases).

[9] The Terms also state that "[f]or any dispute with IXL, you agree to first contact us at legalnotices@ixl.com and attempt to resolve the dispute with us informally," and any unresolved disputes are referred to arbitration "after sixty (60) days." Terms, § 22. Plaintiffs failed to comply with these requirements, and IXL reserves all rights and remedies. However, the Court need not

### 2. Plaintiffs' Claims Are Within the Agreement's Scope

Even if the Court were to consider the issue of arbitrability itself, it should still refer this case to arbitration. Plaintiffs' claims fall within the Terms' arbitration provision, which broadly encompasses "any claim, dispute, or controversy … arising out of or in connection with or relating to this agreement." Terms, § 22. The Terms apply to a user's "use of online and/or mobile services, websites, and software provided on or in connection with www.ixl.com." *Id*. ¶ 1. Plaintiffs bring claims arising out of their minor children's "us[e] [of] IXL products and services as part of their education." *See* Compl. ¶¶ 6-12. The Terms therefore encompass Plaintiffs' claims. And even if there was any doubt, such doubt must be resolved in favor of arbitration. *See AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986) (holding that questions as to whether an asserted dispute is covered by an arbitration clause "should be resolved in favor of coverage"); *Vianna v. Doctors' Mgmt*. Co., 27 Cal. App. 4th 1186, 1189 (1994) ("Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.").

### C. The Court Should Stay This Action And Compel Arbitration

Because each claim in the Complaint is subject to arbitration and governed by a class action waiver, the Court should stay this proceeding pending the outcome of arbitration. When a court determines that all claims raised in an action are subject to arbitration, the FAA "requires a court to stay the proceeding" pending the outcome of the arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 476, 144 S. Ct. 1173, 1177 (2024). Here, all of Plaintiffs' claims are subject to arbitration. *See supra* § IV.B.2. Accordingly, the Court should stay this action upon referring the dispute to arbitration as required by the FAA. *See* 9 U.S.C. § 3; *MediVas, LLC v. Marubeni Corp*., 741 F.3d 4, 9 (9th Cir. 2014) (adopting rebuttable presumption that actions are stayed pending arbitration if not expressly dismissed).

---

address this argument at this stage because it is a "procedural question" that should be decided by an arbitrator, not by a court. *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 84-85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *see also Hosp. & Inst. Workers Union Local 250 v. Marshal Hale Mem'l Hosp*., 647 F.2d 38, 41 (9th Cir.1981) (holding that disputes regarding "alleged non-compliance with a similar multiple-step [grievance] procedure ... should be resolved by the arbitrator") (citation omitted).

## V. CONCLUSION

For all of the foregoing reasons, the Court should compel arbitration and stay this case.

Dated: July 12, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *David P. Fuad*
Aravind Swaminathan (*pro hac vice* forthcoming)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant IXL Learning, Inc.*