1  ORRICK, HERRINGTON & SUTCLIFFE LLP
   Aravind Swaminathan (*pro hac vice*)
2  aswaminathan@orrick.com
   401 Union Street, Suite 3300
3  Seattle, WA 98101
   Telephone: (206) 639-9157
4
   David P. Fuad (SBN 265193)
5  dfuad@orrick.com
   Thomas Fu (SBN 325209)
6  tfu@orrick.com
   355 S. Grand Ave., Suite 2700
7  Los Angeles, CA 90017
   Telephone: (213) 629-2020
8
   *Attorneys for Defendant*
9  IXL LEARNING, INC.

10
                    UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12

13
   GRETCHEN   SHANAHAN,   on  behalf  of       Case No. 3:24-cv-02724-RFL
14 herself and her minor children A.S. and B.S.,
   AMY WARREN, on behalf of herself and her     **DEFENDANT IXL LEARNING, INC.'S**
15 minor   child   B.W.,   and   KIMBERLEY      **NOTICE OF MOTION AND MOTION**
   WHITMAN, on behalf of herself and her minor  **TO DISMISS PLAINTIFFS'**
16 child H.W., individually and on behalf of all **COMPLAINT**
   others similarly situated,
17                                               Date: October 22, 2024
                    Plaintiffs,                  Time: 10:00 a.m.
18                                               Court: Room 15, 18th Floor
          v.                                     Judge: Hon. Rita F. Lin
19
   IXL LEARNING, INC.,
20                                               Complaint Filed: May 7, 2024
                    Defendant.
21

22

23

24

25

26

27

28

**TO THE CLERK OF COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 22, 2024 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 15, 18th Floor of the United States District Court for the Northern District of California, located at the San Francisco Courthouse, 450 Golden Gate Ave., San Francisco, California 94102, Defendant IXL Learning, Inc. ("IXL") will and hereby does move this Court for an order dismissing Plaintiffs' Complaint with prejudice.

This motion is made on the grounds that Plaintiffs fail to state a plausible claim for relief.

This Motion is made pursuant to Federal Rule of Civil Procedure 12(b), and is based on this Notice, the attached Memorandum of Points and Authorities, IXL's Request for Judicial Notice and accompanying Declaration of Alex Smetana, all other supporting papers and documents on file with the Court, the record in this action, and such oral and documentary evidence as may be presented at the hearing.

Dated: August 15, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *David P. Fuad*
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant IXL Learning, Inc.*

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    INTRODUCTION .......................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 3

      A.    IXL Collects Student Data Pursuant to Controlling Federal and State Law ........... 3

      B.    Plaintiffs' Complaint .................................................................................................. 4

III.  LEGAL STANDARD .................................................................................................... 6

IV.   ARGUMENT ................................................................................................................. 6

      A.    The Complaint Fails to Allege a Violation of the Federal Wiretap Act ................. 6

            1.    IXL Is a Party to the Alleged Communications ........................................... 6

            2.    The Complaint Fails to Plausibly Allege Interception ................................. 8

            3.    The Complaint Challenges Lawful, Consensual Conduct ........................... 9

      B.    Plaintiffs Fail to State a Claim Under CIPA ......................................................... 11

      C.    Plaintiffs Fail to State a Claim for Invasion of Privacy or Intrusion Upon
            Seclusion ................................................................................................................ 12

      D.    Plaintiffs' CDAFA and UCL Claims Fail as a Matter of Law .............................. 14

            1.    Plaintiffs Lack Statutory Standing Under the CDAFA and UCL .............. 14

            2.    IXL's Lawful, Consensual Conduct Dooms Plaintiffs' CDAFA and
                  UCL Claims .............................................................................................. 15

            3.    The CDAFA Does Not Apply to Plaintiffs' Complaint ............................. 15

V.    CONCLUSION ............................................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................... 6

*B.K. v. Eisenhower Med. Ctr.*,
No. EDCV 23-2092 JGBKKX, 2024 WL 878100, at *6 (C.D. Cal. Feb. 29,
2024) ......................................................................................................................... 13

*Backhaut v. Apple, Inc.*,
74 F.Supp.3d 1033 (N.D. Cal. 2014) .......................................................................... 9

*Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*,
623 F. Supp. 3d 1059 (C.D. Cal. 2022) ...................................................................... 9

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
No. 21-md-2992, 2023 WL 3668535 (S. D. Cal. May 25, 2023) ................................ 6

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................................... 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 6

*California Crane Sch., Inc. v. Google LLC*,
No. 21-CV-10001-PCP, 2024 WL 1221964 (N.D. Cal. Mar. 21, 2024) ..................... 1

*Cody v. Boscov's, Inc.*,
No. *:22-cv-01434, 2024 WL 2228973, at *3 (C.D. Cal. May 6, 2024) ..................... 9

*Coto Settlement v. Eisenberg*,
593 F.3d 1031 (9th Cir. 2010) .................................................................................... 4

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ............ 11, 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F3d 589 (9th Cir. 2020) .................................................................................... 12

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986, 125 Cal.Rptr.3d 260 (2011) ................................................ 13

*Galderma Lab'ys, L.P. v. Revance Therapeutics, Inc.*,
No. 2:23-cv-02879, 2024 WL 3008860 (C.D. Cal. Mar. 29, 2024) .......................... 15

ii

DEFENDANT IXL LEARNING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:24-CV-02724-RFL

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ................................................................... 13

*In re Google, Inc. Privacy Pol'y Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ..................................................................... 12

*Hazel v. Prudential Fin., Inc.*,
    No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023)................................. 14

*In re iPhone App. Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................. 13

*James v. Allstate Ins. Co.*,
    No. 3:23-CV-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ............................ 13

*James v. Veros Credit, LLC*,
    No. 3:19-cv-0094, 2019 WL 13102877 (S.D. Cal. Sept. 3, 2019)..................................... 15

*James v. Walt Disney Co.*,
    No. 23-CV-02500 (EMC), 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023) ............................ 11

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002)............................................................................... 8

*Licea v. Am. Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023)............................................................... 8, 9

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) (overruled on other grounds) .................................... 11

*Mollicone v. Universal Handicraft, Inc.*,
    No. 2:16-CV-07322-CAS(MRWX), 2017 WL 440257 (C.D. Cal. Jan. 30,
    2017) ........................................................................................................ 11

*Navarro v. Ski Data, Inc.*,
    No. 2:20-CV-07370-SVW-SK, 2021 WL 4355353 (C.D. Cal. Aug. 12, 2021)..................... 7

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    No. 12-CV-01685-BAS(JLB), 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ..................... 10

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ............................................................... 8, 12

*Nowak v. Xapo, Inc.*,
    No. 5:20-cv-03643, 2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ................................. 15

*Pena v. GameStop, Inc.*,
    670 F. Supp. 3d 1112 (S.D. Cal. 2023) ............................................................. 7, 12

*Smith v. Facebook, Inc.*,
 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ...................... 13

*Stoyas v. Toshiba Corp.*,
 896 F.3d 933 (9th Cir. 2018)........................................................................................... 9

*Van Buren v. United States*,
 593 U.S. 374 (2021) ...................................................................................................... 15

*In re Vizio, Inc. Consumer Priv. Litig.*,
 238 F. Supp. 3d 1204 (C.D. Cal. 2017)............................................................................ 8

*Williams v. Facebook, Inc.*,
 384 F. Supp. 3d 1043 (N.D. Cal. 2018) ......................................................................... 14

*Williams v. What If Holdings LLC*,
 No. C 22-03780, 2022 WL 17869275 (N.D. Cal. 2022)................................................ 7, 9

*In re Yahoo Mail Litig.*,
 308 F.R.D. 577 (N.D. Cal. 2015) .................................................................................. 12

*Yunker v. Pandora Media*,
 11-cv-3113, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ................................................ 13

**Statutes**

16 C.F.R. part 312 ................................................................................................................ 1, 3

34 C.F.R. part 99 ............................................................................................................ *passim*

18 U.S.C. § 2511 .................................................................................................................. 7, 9

15 U.S.C. § 6501 .................................................................................................................... 1, 3

20 U.S.C. § 1232g ................................................................................................................. 1, 10

Cal. Bus. & Prof. Code § 17200 .............................................................................................. 15

Cal. Bus. & Prof. Code § 22584 ...................................................................................... 4, 9, 10

Cal. Educ. Code § 49073.1...................................................................................................... 4

Cal. Penal Code § 502 ............................................................................................................ 15

Cal. Penal Code § 631 ...................................................................................................... 11, 12

Fed. R. Civ. P. 8 ..................................................................................................................... 15

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 6

KSA 72-6314(c) ................................................................................................... 4, 9

KSA 72-6333(c) ................................................................................................. 4, 10

**Other Authorities**

64 Fed. Reg. 59888 (1999) ....................................................................................... 3

89 Fed. Reg. 2034 (2024) ......................................................................................... 3

Frequently Asked Questions, https://www.ftc.gov/business-
    guidance/resources/complying-coppa-frequently-asked-questions (last
    accessed August 15, 2024) ................................................................................. 9

IXL Service Privacy Policy § 9 (available at
    www.ixl.com/privacypolicy/serviceprivacypolicy) (last accessed August 15,
    2024) .............................................................................................................. 4, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**[1]

## I.    <u>INTRODUCTION</u>

IXL is an education technology provider that supplies Plaintiffs' children with educational programming through their schools to assist in their public education. As permitted by federal and state law, IXL collects student data that it uses to improve the function of its services and to bolster children's learning experiences through individualized curricula.

Plaintiffs allege that IXL's data collection practices are unlawful, bringing claims under the Federal Wiretap Act ("FWA"); the California Invasion of Privacy Act ("CIPA"); the Comprehensive Computer Data and Access Fraud Act ("CDAFA"); California's Unfair Competition Law ("UCL"); and claims for invasion of privacy and intrusion upon seclusion, all based on IXL's purported collection, use, and sale of Plaintiffs' children's data. But instead of alleging the facts required to plead the elements of any cause of action, the Complaint is consumed with broad, overwrought, and unfounded social critiques of education technology tools.

Although Plaintiffs allege they are seeking relief due to IXL's violation of various privacy laws through its data practices, it is apparent that Plaintiffs' true grievance is that educational technology providers are permitted by law to collect data under a school's authority. Plaintiffs' problem is that all the complained-of conduct is expressly permitted by applicable law, and so the allegations fail to state a claim. Specifically, the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq.*, along with the Federal Trade Commission's ("FTC") implementing rule, 16 CFR part 312, allows schools to consent to a provider's collection of student data on behalf of the students' parents when the data is used for an educational purpose. Additionally, the Family Educational Rights and Privacy Act ("FERPA") (20 U.S.C. § 1232g; 34 CFR part 99) permits schools to share student data from educational records without parental

---

[1] As stated in the Parties' stipulation, ECF No. 22, IXL reserves all rights with respect to its pending Motion to Compel Arbitration and Stay Proceedings, including its argument that all the issues addressed in this brief should be decided by an arbitrator. *See* ECF No. 19; *California Crane Sch., Inc. v. Google LLC*, No. 21-CV-10001-PCP, 2024 WL 1221964, at *4 (N.D. Cal. Mar. 21, 2024) (defendant "preserved their position that the issues in this case should be decided by an arbitrator rather than by the Court" by "mov[ing] to compel arbitration before ever moving to dismiss"). Indeed, if the Court grants IXL's Motion to Compel, this Motion to Dismiss will be rendered moot.

1

DEFENDANT IXL LEARNING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:24-CV-02724-RFL

consent with a third party acting in its capacity as a "school official" who performs an outsourced institutional function. Applicable state laws contain similar allowances for schools to authorize data collection by technology providers and allow education technology providers to use de-identified student data to improve their products and services. While Plaintiffs might not like these laws, IXL complies with them, and its data collection practices are perfectly legal. As such, IXL's permissible conduct defeats all of Plaintiffs' causes of action, each of which include an element requiring a lack of consent or unlawful conduct.

Moreover, each of Plaintiffs' causes of action contain fatal flaws independently warranting dismissal. Their CIPA claim fails because none of the Plaintiffs are California residents. And because CIPA and FWA do not apply when the purported interceptor is a party to the alleged communications, Plaintiffs are left with narrow claims based solely on the assertion that IXL somehow intercepted their communications with third-party websites. But the Complaint pleads no facts about those third-party claims at all—it fails to identify the third-party websites, how IXL supposedly intercepted the communications, which portions of the alleged communications IXL accessed, or how that interception happened "in transit" (as distinguished from after the communications were delivered). Courts have made clear that these details are required to state a claim under the FWA and CIPA, but they are absent here.

Plaintiffs' claims under the CDAFA and UCL fare no better. The CDAFA is an anti-hacking statute that applies only where a defendant (1) reached into the user's device and accessed data stored there, and (2) thereby inflicted "technological harm" on the plaintiff's computer device/data. Plaintiffs and their children using public school educational software is not "hacking" in any reasonable construction of the word. Plaintiffs allege no facts satisfying either of these elements. And Plaintiffs fail to plausibly allege facts establishing a cognizable loss under either statute.

Plaintiffs' claims for invasion of privacy and intrusion upon seclusion also fail. Each requires a "highly offensive" invasion of privacy, which requires something beyond intercepting record data or browsing history. And, again, the Complaint contains no facts establishing these elements. As a matter of law, merely because Plaintiffs disapprove of the use of algorithms in the classroom does not mean that these practices are highly offensive.

2

1    Rather than burdening this Court and law-abiding education technology providers like IXL

2    with baseless litigation, Plaintiffs' concerns are better addressed through vigorous legislative

3    advocacy, such as lobbying their elected representatives or submitting comments to the governing

4    regulatory agencies. Plaintiffs' lawsuit should be dismissed with prejudice.

5    **II.    FACTUAL BACKGROUND**

6    IXL is an educational technology company whose primary customers are school districts

7    and education institutions. Compl. ¶¶ 26-27. IXL utilizes student data to provide individualized

8    guidance and real-time analytics tailored to the unique needs of the 15 million learners using its

9    services in the United States. *See id.* ¶ 29.

10    **A.    IXL Collects Student Data Pursuant to Controlling Federal and State Law**

11    Under COPPA, 15 U.S.C. §§ 6501, *et seq.*; 16 CFR part 312, schools may "act[] as

12    intermediaries between [education technology providers] and parents" and "serv[e] as the parents'

13    agent in the [notice and consent] process" when the provider's services are used for an educational

14    purpose. 64 Fed. Reg. 59888, 59903 (1999). As the Commission recently articulated as the basis

15    for this rule, acquiring consent from each individual parent is "likely to interfere with educators'

16    curriculum decisions" and could force schools to "forego[] particular services for the entire class

17    or developing a separate mechanism for those students whose parents do not consent." 89 Fed.

18    Reg. 2034, 2055 (2024).[2]

19    FERPA similarly recognizes a school's authority to authorize educational technology

20    providers to access student data. Specifically, an "outsourced institutional service" on behalf of the

21    school—like IXL—functions as a "school official." *See* 34 C.F.R. § 99.31 (explaining that schools

22    may share personal information from education records without parental consent if the disclosure

23    _____

24    [2] COPPA applies to children "under the age of 13." 15 U.S.C. § 6501(1). IXL received student data
requests from Plaintiffs, which state that A.S. and B.S. were born on September 27, 2009; B.W.

25    was born on March 11, 2012; and H.W. was born on March 9, 2009. *See* IXL's Request for Judicial
Notice ISO Motion to Dismiss; Smetana Decl. at ¶ 3. Plaintiffs allege that at "all relevant times,"

26    Plaintiffs' children have "attend[ed] school" in their respective school districts and "access[ed] and
use[d] IXL products and services" as "part of [their] public schooling." *See* Compl. ¶¶ 6-12.

27    Accordingly, taking Plaintiffs' allegations as true, when their children began using IXL's services,
the student data requests show that they were under 13-years-old, and COPPA's consent scheme

28    applied.

3

is to a "party to whom an agency or institution has outsourced institutional services or functions");

IXL Service Privacy Policy § 9 (available at www.ixl.com/privacypolicy/serviceprivacypolicy)

(last accessed August 15, 2024) (hereinafter the "Privacy Policy")[3] ("IXL provides the Services to

Schools as a 'School Official'").

State student data privacy laws provide similar allowances. *See* KSA 72-6314(c) ("[s]tudent

data may be disclosed […] to a service provider of a state agency, educational agency or school

who is engaged to perform a function of instruction"); Cal. Bus. & Prof. Code § 22584(b)(4)(A)

(allowing disclosure of student information "[i]n furtherance of the K-12 purpose of the site,

service, or application"); Cal. Educ. Code § 49073.1(a)(2) (a local education agency may "enter

into a contract with a third party … to provide digital educational software that authorizes a third-

party provider of digital educational software to access, store, and use pupil records…"). And state

laws allow education technology providers to use "student information to maintain, develop,

support, improve or diagnose the operator's educational online product," and to use de-identified

student data to "demonstrate the effectiveness of the service" and to "improve educational products

and services." KSA 72-6333(c); Cal. Bus. & Prof. Code §§ 22584(b)(4)(E)(c), (f)(2), (g) (same).

### B.    Plaintiffs' Complaint

Notwithstanding these laws, Plaintiffs allege that IXL's data practices are unlawful and non-

consensual. But the 327 paragraphs in their Complaint—which read more like an op-ed than a legal

pleading—cast education technology tools in absurdly Orwellian terms, rather than allege facts

supporting their causes of action. *See, e.g.*, Compl. ¶¶ 188 ("The datafication of a child and their

learning process, for commercial purposes, brings about a social disempowerment that negatively

affects the child's education in the moment of learning and also, therefore, the future of a free and

sustainable society."); 51 (characterizing IXL as a "surveillance-technology empire"); 185

(alleging that IXL "emphasizes compliance with current social order instead of the cultivation of

identity and dignity" and "trains children not to value their own and others' privacy and

autonomy").

---

[3] *See also* Compl. ¶ 52, n. 18. Courts may take judicial notice of documents incorporated by reference in the complaint. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

The Complaint also spills much ink railing against schools' consent to education technology programs. What they ignore—or maybe simply do not like—is that this consent is expressly permitted by law. Plaintiffs allege that they were "never informed about IXL's data practices nor [were they] ever asked for [their] consent to those practices," Compl. ¶¶ 6-12, and that "[s]chools cannot legally consent to the direct collection or use of personal information about and belonging to children by a third party." Compl. ¶ 130. That is immaterial and contravenes COPPA, FERPA, and controlling state laws that expressly allow this exact conduct.

Plaintiffs attempt to plead around these statutes by attacking the schools' consent. In so doing, Plaintiffs seek to create their own standard for consent and allege that "effective, ongoing consent" is not possible. Compl. ¶¶ 94, 157-63. They also allege that IXL used their children's data for "commercial marketing purposes" by using the data "to demonstrate the effectiveness of the Service" and to "improve our Service and other educational products and services." Compl. ¶¶ 52-53. Notwithstanding the factually unsupported legal conclusions underlying these allegations, both arguments again run headlong into FERPA and controlling state laws that authorize this exact conduct.

Missing from this polemic are details about the elements of Plaintiffs' causes of action. Plaintiffs allege, without any factual support, that "IXL's data practices enable children and their digital behaviors to be tracked for the purpose of creating and delivering targeted marketing campaigns by IXL and *unidentified* third parties." Compl. ¶¶ 53, 173 (emphasis added). But the Complaint says nothing about who these third parties are, what data IXL purportedly tracked or misused, or how IXL accomplished this purported conduct. Similarly, Plaintiffs allege that IXL intercepts data on "websites and other web properties other than [IXL's]." Compl. ¶ 272. Again, Plaintiffs do not explain how IXL tracks them on other websites or on which unspecified "other" websites IXL purportedly tracks. And while Plaintiffs allege that "schools lack the information necessary to support informed consent," *see* Compl. ¶ 136, they say nothing about what information was exchanged between IXL and their children's school districts prior to the district authorizing the use of IXL's services.

III.    **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Id*. Courts are not obligated "to accept legal conclusions couched as factual allegations and 'formulaic recitation[s] of the elements of a cause of action' aren't sufficient." *In re Bank of Am. Cal. Unemployment Benefits Litig*., No. 21-md-2992, 2023 WL 3668535, at *4 (S. D. Cal. May 25, 2023) (quoting *Twombly*, 550 U.S. at 555).

IV.    **ARGUMENT**

Each cause of action bears multiple fatal flaws that independently warrant dismissal. IXL's status as a party to the allegedly intercepted communications coupled with Plaintiffs' failure to plausibly allege interception on third-party websites defeats Plaintiffs' FWA and CIPA claims. Plaintiffs, as Kansas residents, also lack standing to bring a CIPA claim. They fail to satisfy any elements required for an invasion of privacy or intrusion upon seclusion. Plaintiffs do not establish the elements of a CDAFA claim, and they lack statutory standing under the UCL and CDAFA by failing to plausibly allege economic harm. And because Plaintiffs only challenge lawful data collection practices, all their causes of action fail.

A.    **The Complaint Fails to Allege a Violation of the Federal Wiretap Act**

Plaintiffs' FWA claim suffers from three deficiencies, each independently requiring dismissal: 1) IXL is a party to communications on its own website, and the Complaint's allegations regarding third-party websites are not adequately pled; 2) the Complaint fails to plausibly allege that IXL intercepted Plaintiffs' communications; and 3) the FWA does not provide liability for consensual or lawful acts.

1.    **IXL Is a Party to the Alleged Communications**

*First*, because Plaintiffs allege that IXL intercepted and tracked data once Plaintiffs used

6

DEFENDANT IXL LEARNING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:24-CV-02724-RFL

IXL's website, IXL is a party to these communications. Put another way, the communications at issue that IXL is supposed to have unlawfully intercepted are communications that Plaintiffs had with IXL itself through its website. *Williams v. What If Holdings LLC*, No. C 22-03780, 2022 WL 17869275 at *2 (N.D. Cal. 2022) ("As the website owner, [IXL] was the intended recipient of [Plaintiffs'] communication[s].")

Under the FWA, "[i]t shall not be unlawful ... for a person ... to intercept a[n] electronic communication where such person is a party to the communication," so long as such interception is not "for the purpose of committing any criminal or tortious act[.]" 18 U.S.C. § 2511(2)(d). Plaintiffs allege that IXL collects information "as soon as a person interacts" with its webpages. Compl. ¶ 145. Communications by Plaintiffs with IXL's website are communications with IXL itself. *Williams*, 2022 WL 17869275, at *2. Plaintiffs' conclusory allegations that IXL acted with an unlawful purpose do not save their claim. *See* Compl. ¶ 270 ("IXL's actions in intercepting and tracking user communications was intentional"). Moreover, "Plaintiff[s] do[] not allege that [IXL] intercepted the communications at issue for the purpose of violating" any laws, "but even if [they] did," the alleged wiretapping itself is not "independently illegal or actionable conduct such that the party exception is inapplicable." *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119-20 (S.D. Cal. 2023).

IXL's status as a party to the alleged communications leaves Plaintiffs with narrow claims that IXL committed unlawful wiretapping solely by purportedly intercepting users' communications with other websites. But these claims are a total afterthought in the Complaint and based on no actual facts. Plaintiffs allege generally that IXL "partners with a variety of other third parties in the joint collection, analysis, and use of student data." Compl. ¶ 44. Courts reject conclusory allegations like these that vaguely allege dealings with unspecified "third parties." *See, e.g., Navarro v. Ski Data, Inc*., No. 2:20-CV-07370-SVW-SK, 2021 WL 4355353, at *2 (C.D. Cal. Aug. 12, 2021) (rejecting as conclusory allegations that defendants "collect Plaintiffs' license plate information and disseminate it to unspecified third parties for unspecified marketing or tracking purposes"). Similarly, Plaintiffs' allegations that IXL intercepts data on "websites and other web properties other than [IXL's]," Compl. ¶ 272, do not explain how IXL tracks on other websites or

1    on which unspecified websites IXL purportedly tracks.

2            **2.**      **The Complaint Fails to Plausibly Allege Interception**

3        *Second*, the Complaint fails to plausibly allege that IXL intercepted Plaintiffs'

4    communications. The "Wiretap Act … prohibits only 'interceptions' of electronic

5    communications." *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 876 (9th Cir. 2002). Courts

6    interpret interception "narrow[ly]" and require the "acquisition of a communication

7    contemporaneous with transmission." *Id*. This requirement is particularly difficult to satisfy with

8    respect to text-based internet communications. That is because "[t]here is only a narrow window"

9    during which an interception of an internet-based text message may occur, namely, "the seconds or

10    milli-seconds before which a newly composed message is saved to any temporary location

11    following a send command." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951–52

12    (N.D. Cal. 2014). Accordingly, courts view skeptically conclusory allegations that interception

13    occurs "contemporaneously," and require plaintiffs to "articulate[]" with more "clarity" exactly

14    when, and how, a party "supposedly intercepted the[] communications." *See In re Vizio, Inc.*

15    *Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226, 1228 (C.D. Cal. 2017); *Licea v. Am. Eagle*

16    *Outfitters, Inc*., 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) ("Plaintiffs must provide more than

17    conclusory allegations that messages were intercepted 'during transmission and in real time.'").

18        Against this authority, Plaintiffs' conclusory allegation that "IXL's interception of internet

19    communications that the Plaintiffs and Class members were sending and receiving was done

20    contemporaneously with the Plaintiffs' and Class members' sending and receipt of those

21    communications" falls short. *See* Compl. ¶ 271. The Complaint contains no facts as to "how and

22    when the third party receives the communications." *Licea*, 659 F. Supp. 3d at 1085. It makes no

23    effort to identify the "websites and other web properties other than Defendant's" to which the

24    communications were directed, when they were sent, and when they were intercepted. *See* Compl.

25    ¶ 272. At best, "[t]he timeline of the automatic recording and transcription is unclear, as it could

26    occur during transit or it can take place after receipt of the message" by IXL. *Licea*, 659 F. Supp.

27    3d at 1085. Thus, Plaintiffs' failure to plausibly allege interception supplies yet another sufficient

28

1  basis for dismissal.[4] *See Cody v. Boscov's, Inc.*, No. *:22-cv-01434, 2024 WL 2228973, at *3 (C.D.

2  Cal. May 6, 2024) (dismissing claim on this ground); *Licea*, 659 F. Supp. 3d at 1085 (same).

3  ### 3.    The Complaint Challenges Lawful, Consensual Conduct

4  Finally, Plaintiffs' FWA claim fails because they only challenge conduct that is authorized

5  by state and federal laws. Under the FWA, communications may be divulged "with the lawful

6  consent of the originator." 18 U.S.C.A. § 2511(3)(b)(ii); *see also Backhaut v. Apple, Inc*., 74

7  F.Supp.3d 1033, 1045 (N.D. Cal. 2014) ("consent of one of the parties to the communication [is]

8  sufficient to preclude liability under the Wiretap Act"). And a defendant is not liable under the

9  FWA for acts under the "color of law." 18 U.S.C. § 2511(2)(d).

10  Plaintiffs allege that they were "never informed about IXL's data practices nor [were they]

11  ever asked for [their] consent to those practices." *See* Compl. ¶¶ 6-12. But under COPPA, schools

12  "may act as the parent's agent and can consent under COPPA to the collection of [student]

13  information on the parent's behalf." FTC, Complying with COPPA: Frequently Asked Questions,

14  https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions

15  (last accessed August 15, 2024)[5]; *see supra*, § II.A. And, by extension, IXL functions as a "school

16  official" performing an "outsourced institutional service" on behalf of the school, as permitted by

17  federal law. *See* 34 C.F.R. § 99.31; *supra,* § II.A. Additionally, FERPA allows an "educational

18  agency or institution [to] disclose personally identifiable information from an education record of

19  a student without [] consent" to "school officials," including third-parties "to whom an agency or

20  institution has outsourced institutional services or functions." 34 CFR § 99.31(a)(1)(i)(A-B); *see*

21  *also* KSA 72-6314(c); Cal. Bus. & Prof. Code § 22584(b)(4)(A).

22  Plaintiffs challenge the schools' valid consent, alleging that "effective, ongoing consent"

23  for IXL's data collection practices is not possible because "[s]tudents and parents have no way of

24  _____

25  [4] IXL's status as a party to the communications also defeats the interception requirement as to the
    alleged direct dealings between Plaintiffs and IXL. A party cannot "intercept" its own

26  communications. *See Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL
    17869275, at *2 (N.D. Cal. Dec. 22, 2022) (party cannot eavesdrop on its own conversation).

27  [5] A "court may take judicial notice of government-provided information on its official website."
    *Balboa Cap. Corp. v. Shaya Med. P.C. Inc*., 623 F. Supp. 3d 1059, 1066 n. 3 (C.D. Cal. 2022)

28  (citing *Stoyas v. Toshiba Corp*., 896 F.3d 933, 946 n.17 (9th Cir. 2018)).

controlling—correcting, deleting, or otherwise modifying—their data obtained by IXL." Compl. ¶¶ 157-63.[6] And Plaintiffs allege that when they requested access to IXL's data, "IXL responded by … directing Plaintiffs to contact their schools." *Id.* ¶ 245. But parents *do* have the right to inspect, review, and amend student data under FERPA, 34 CFR § 99.7(a)(2), which requires *schools* to "establish appropriate procedures for the granting of a request by parents for access to the education records of their children." 21 U.S.C. § 1232g(a)(1)(A). As such, IXL properly directs parent requests to the appropriate school (i.e., the owner and controller of the student's data), and works with schools to "review and delete the personal information collected from their students." Privacy Policy § 11.

Plaintiffs also allege that IXL "uses children's personal information for commercial marketing purposes" by "'us[ing] information [it collects] to demonstrate the effectiveness of the Service[.]'" Compl. ¶ 53. But again, this conduct is explicitly permitted by controlling state law. *See supra,* § II.A; KSA 72-6333(c); Cal. Bus. & Prof. Code §§ 22584(b)(4)(E)(c), (f)(2), (g).

Accordingly, taken as a whole and accepting Plaintiffs' allegations as true, the Complaint merely describes valid and lawful consent and data collection practices. As authorized by COPPA, the school districts consented to IXL's data collection practices as agents of the parents before IXL provided its services to the schools and before any student used IXL's services. After the schools provided this consent, their minor children then "access[ed] and use[d] IXL products and services" as "part of [their] public schooling" in their respective Kansas school districts. Compl. ¶¶ 6-7, 9, 11. That use was subject to the consent provided by their schools. And because "IXL provides the Services to Schools as a 'School Official,'" IXL "collect[s], retain[s], use[s] and disclose[s] Student Data only for or on behalf of our School customers for the purpose of providing the Services

---

[6] Plaintiffs insert their own standard for informed consent. *See* Compl. ¶ 94 ("In order to support informed consent, IXL must disclose the potential benefits of its practices—as demonstrated by objective, verified, evidence-based research—against the potential harms those practices pose to children."). Plaintiffs cannot invent a legal standard and then allege IXL should be liable for violating their invented legal standard. Instead, "[c]onsent may be express or may be implied in fact from surrounding circumstances," with the "critical question" being whether "adequate notice" was given. *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) (citations omitted).

1  specified in [IXL's] agreement with the School and for no other commercial purpose," as

2  authorized by federal and state law. *See* Privacy Policy § 9.

3      Therefore, Plaintiffs do not—and cannot—plausibly allege unlawful conduct by IXL. As

4  explained below, this is fatal not only to their FWA claims, but to all their causes of action.

5          **B.      Plaintiffs Fail to State a Claim Under CIPA**

6      *First*, Plaintiffs' CIPA claims must be dismissed for lack of standing. The named plaintiffs

7  are Kansas residents. *See* Compl. ¶¶ 6-12. But "only a California plaintiff can bring a CIPA claim."

8  *Doe v. Kaiser Found. Health Plan, Inc*., No. 23-CV-02865-EMC, 2024 WL 1589982, at *13 (N.D.

9  Cal. Apr. 11, 2024). Where, as here, "a representative plaintiff is lacking for a particular state, all

10 claims based on that state's laws are subject to dismissal." *Mollicone v. Universal Handicraft, Inc*.,

11 No. 2:16-CV-07322-CAS(MRWX), 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) (collecting

12 cases).

13     Plaintiffs allege that because IXL's Terms of Service choose California law, California law

14 applies "to every member of the Class, regardless of where … the Class member resides." *See*

15 Compl. ¶ 264. But choice-of-law provisions have "no force" where, as here, the state law at issue

16 contains "express geographical limitations." *Doe*, 2024 WL 1589982, at *11-12; Cal. Pen. Code

17 § 631 (providing for liability regarding communications "in transit or passing over any wire, line,

18 or cable, or is being sent from, or received at any place *within this state*") (emphasis added).

19     Further, IXL's residence in California does not automatically warrant the application of

20 California law to all class members. "California does not have a predominant interest simply

21 because [defendant] is based in California." *Doe*, 2024 WL 1589982 at *13. Rather, if a conflict

22 exists between California law and the law(s) of the other implicated jurisdiction(s), "California law

23 may only be used on a classwide basis if the interests of other states are not found to outweigh

24 California's interest in having its law applied." *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 590

25 (9th Cir. 2012) (overruled on other grounds) (citations and quotations omitted). Applied here, courts

26 have recognized that "there are material differences between CIPA and the wiretapping statutes of

27 the other 49 states." *James v. Walt Disney Co*., No. 23-CV-02500 (EMC), 2023 WL 7392285, at

28 *17 (N.D. Cal. Nov. 8, 2023) (quoting *In re Yahoo Mail Litig*., 308 F.R.D. 577, 602-03 (N.D. Cal.

2015)). As such, "[b]ecause wiretapping statutes are designed to protect the privacy interests of individual members, the residences of the individuals are more important to the respective sovereign than the residence of the alleged wrongdoer." *Doe*, 2024 WL 1589982 at *13. Therefore, the "wiretapping law that applies turns on the residence of the [user]." *Id*. at *12-13. And because no named California plaintiffs exist, the CIPA claim must be dismissed for lack of standing.

*Second*, Plaintiffs' CIPA claim fails for the same reasons as its FWA claim. *See NovelPoster v. Javitch Canfield Grp*., 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("Because NovelPoster is unable to allege a violation of the Wiretap Act, it is also unable to allege a violation of CIPA."); *Pena*, 670 F. Supp. 3d at 1117 ("The analysis for a violation of CIPA is the same as that under the [FWA].") (citations omitted). Accordingly, the Complaint's deficiencies as to its FWA claims are equally fatal to Plaintiffs' CIPA claims. *See* § IV.A; *In re Facebook, Inc. Internet Tracking Litig*., 956 F3d 589, 607-608 (9th Cir. 2020) (party exception applies to CIPA); Cal. Penal Code § 631(a) (requiring interception of communications "in transit" and "without consent").

## C.    Plaintiffs Fail to State a Claim for Invasion of Privacy or Intrusion Upon Seclusion

Plaintiffs fail to state a claim for invasion of privacy or intrusion upon seclusion under California law. For an intrusion upon seclusion claim, Plaintiffs must establish "1) intrusion into a private place, conversation or matter, [] 2) in a manner highly offensive to a reasonable person." *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2014). Similarly, for invasion of privacy, "Plaintiffs must show that (1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is so serious ... as to constitute an egregious breach of the social norms such that the breach is highly offensive." *In re Facebook, Inc*., 956 F.3d at 601 (citations omitted). The Complaint does not satisfy any of these elements for at least three reasons.

*First*, Plaintiffs fail to allege that IXL intruded on a protected privacy interest. Plaintiffs allege that IXL intruded upon the privacy interests provided by the Federal Wiretap Act, the California Wiretap Act, the 4th Amendment right to privacy, and the California Constitution's right to privacy. Compl. ¶ 306. But the Complaint contains only conclusory allegations as to what, when,

and to whom any private information was disclosed. *See, e.g*., Compl. ¶ 199 (alleging that IXL combines "additional data" with "other personal information"); ¶ 207 (alleging that "schools and other third parties may rely on the data collected by IXL"); ¶ 223 (alleging that unspecified "third parties [] track users' browsing histories"); ¶ 242 (alleging that IXL "permitted a host of third parties to track and surveil" Plaintiffs). "Without more detailed allegations as to what 'private information' was disclosed, how, and when it was disclosed," Plaintiffs' claims fail. *See B.K. v. Eisenhower Med. Ctr*., No. EDCV 23-2092 JGBKKX, 2024 WL 878100, at *6 (C.D. Cal. Feb. 29, 2024). And "[e]ven if the collection of data establishes an information privacy interest," Plaintiffs' claim still fails because IXL "only tracked and collected data during use of [IXL's] services." *In re Google Location Hist. Litig*., 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019).

*Second*, Plaintiffs do not plausibly allege that IXL's purported conduct is highly offensive. Even assuming that IXL does sell children's data to third parties (it does not), the collection and sale of data is not offensive as a matter of law. *See, e.g., Yunker v. Pandora Media*, 11-cv-3113, 2013 WL 1282980 at *15 (N.D. Cal. Mar. 26, 2013) (allegations that defendant obtained plaintiff's personally identifiable information and provided that information to advertising libraries for marketing purposes insufficient "to allege that [defendant's] conduct constitutes an egregious breach of social norms"); *In re iPhone App. Litig*., 844 F. Supp. 2d 1040 (N.D. Cal. 2012) (information allegedly disclosed to third parties, including personal data, did not "constitute an egregious breach of social norms"); *James v. Allstate Ins. Co*., No. 3:23-CV-01931-JSC, 2023 WL 8879246, at *6 (N.D. Cal. Dec. 22, 2023) ("to the extent [Plaintiffs'] information was provided to a third party," the "alleged conduct is not highly offensive as a matter of law"). Indeed, the Complaint even describes data collection as "commonplace." Compl. ¶ 18. Such "routine commercial behavior" cannot constitute a serious invasion of privacy. *Folgelstrom v. Lamps Plus, Inc*., 195 Cal. App. 4th 986, 992, 125 Cal.Rptr.3d 260, 265 (2011).

*Finally*, IXL's lawful and consensual data collection defeats Plaintiffs' claims for invasion of privacy and intrusion upon seclusion. *See supra*, § IV.A.3. The consent from Plaintiffs' schools pursuant to controlling federal and state laws is fatal to Plaintiffs' claims. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955–56 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018)

13

("Plaintiffs' consent ... bars their common-law tort claims [for intrusion upon seclusion] and their claim for invasion of privacy"). And Plaintiffs' failure to plausibly allege that IXL violated any laws undermines their only allegation purporting to establish a reasonable expectation of privacy. *See* Compl. ¶ 307 (alleging that Plaintiffs had a reasonable expectation of privacy because they "could not reasonably expect that IXL would commit acts in violation of federal and state civil and criminal laws"). Accordingly, these claims also should be dismissed with prejudice.

### D.    Plaintiffs' CDAFA and UCL Claims Fail as a Matter of Law

Plaintiffs do not state a claim under the CDAFA and UCL because they lack statutory standing by failing to plausibly allege economic harm, and because they only challenge lawful, consensual conduct. And their CDAFA claim fails for the additional reason that this statute is completely inapplicable to the theory of liability alleged in the Complaint.

### 1.    Plaintiffs Lack Statutory Standing Under the CDAFA and UCL

Plaintiffs fail to plausibly allege the economic harm required for their CDAFA and UCL claims. *See Williams v. Facebook, Inc*., 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (CDAFA requires "a showing of economic harm or loss"); *Hazel v. Prudential Fin., Inc*., No. 22-CV-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (UCL requires the plaintiff to allege that it "ha[s] lost money or property" because of the defendant's conduct). Plaintiffs allege that IXL's collection and sale of Plaintiffs' data "has caused loss to Plaintiffs" "in the form of diminution of the value of their private and personally identifiable data and content." Compl. ¶¶ 169, 294, 296, 327. But the Complaint contains no allegations as to *how* the data had any value to Plaintiffs. It does not allege that Plaintiffs intended to participate in a market for their data or had any means to do so.

Courts routinely hold that allegations like these are insufficient to establish statutory standing under the CDAFA and UCL. *See, e.g., Hazel*, 2023 WL 3933073, at *6 ("just because Plaintiffs' data is valuable in the abstract, and because [Defendant] might have made money from it, does not mean that Plaintiffs have 'lost money or property' as a result"); *Bass v. Facebook, Inc*., 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("As to the loss of value of the personal information, plaintiff … has provided no market for the personal information or the impairment of the ability to

participate in that market. This lack of specificity is fatal."). The same result should follow here.

### 2. IXL's Lawful, Consensual Conduct Dooms Plaintiffs' CDAFA and UCL Claims

As explained, Plaintiffs only challenge lawful, consensual conduct pursuant to controlling federal and state laws. *See supra*, § IV.A.3. Plaintiffs' CDAFA claims thus fail because they cannot allege that IXL acted "without permission." Cal. Penal Code § 502(c)(2). Their UCL claims likewise fail because IXL's lawful and consensual data collection practices cannot be "unlawful, unfair, or fraudulent." Cal. Bus. & Prof. Code § 17200.

### 3. The CDAFA Does Not Apply to Plaintiffs' Complaint

The provision of the CDAFA invoked in the Complaint applies only where the defendant "[k]nowingly accesses" a "computer, computer system, or computer network" and then "without permission takes, copies, or makes use of any data" stored there. Cal. Penal Code § 502(c)(2). The crux of the statute is accessing *a computer device*—not merely freestanding data. As the Supreme Court has explained when construing § 502's federal analog, a defendant must "obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend." *Van Buren v. United States*, 593 U.S. 374, 378 (2021); *see also Nowak v. Xapo, Inc.*, No. 5:20-cv-03643, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (explaining that Cal. Penal Code § 502's "necessary elements … do not differ materially" from its federal analog's).

The Complaint fails to plead facts showing that IXL knowingly accessed Plaintiffs' computer devices (their "school-issued device[s] and personally owned devices," *see, e.g.*, Compl. ¶ 11). The Complaint summarily asserts that IXL somehow "copied, took, analyzed, and used [data] from Plaintiffs' and Class members' computers. *Id.* ¶ 293, 295. But that "merely parrots the language of the statute;" it does not supply any well-pled factual allegations showing *how* IXL allegedly violated the law, as Fed. R. Civ. P. 8 demands. *James v. Veros Credit, LLC*, No. 3:19-cv-0094, 2019 WL 13102877, at *2 (S.D. Cal. Sept. 3, 2019). In short, § 502(c) "is an anti-hacking statute," *Galderma Lab'ys, L.P. v. Revance Therapeutics, Inc.*, No. 2:23-cv-02879, 2024 WL 3008860, at *5 (C.D. Cal. Mar. 29, 2024), but Plaintiffs allege no hacking here.

15

DEFENDANT IXL LEARNING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:24-CV-02724-RFL

1   **V.    <u>CONCLUSION</u>**

2          For all of the foregoing reasons, the Court should dismiss the Complaint with prejudice.

3   Dated: August 15, 2024                    ORRICK, HERRINGTON &
                                              SUTCLIFFE LLP
4

5                                             /s/ *David P. Fuad*
                                              Aravind Swaminathan (*pro hac vice*)
6                                             aswaminathan@orrick.com
                                              401 Union Street, Suite 3300
7                                             Seattle, WA 98101
                                              Telephone: (206) 639-9157
8
                                              David P. Fuad (SBN 265193)
9                                             dfuad@orrick.com
                                              Thomas Fu (SBN 325209)
10                                            tfu@orrick.com
                                              355 S. Grand Ave., Suite 2700
11                                            Los Angeles, CA 90017
                                              Telephone: (213) 629-2020
12
                                              *Attorneys for Defendant IXL Learning,*
13                                            *Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT IXL LEARNING, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT; MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 3:24-CV-02724-RFL