**EDTECH LAW CENTER PLLC**
Julie Liddell (*pro hac vice*)
P.O. Box 300488
Austin, TX 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law

**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Ryan J. McGee (*pro hac vice*)
John A. Yanchunis (*pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
rmcgee@forthepeople.com
jyanchunis@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S., AMY WARREN, on behalf of herself and her minor child B.W., and KIMBERLY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> IXL LEARNING, INC. <br><br> Defendant. | Civ. No. 3:24-cv-02724-RFL <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT IXL LEARNING, INC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** <br><br> Date: October 8, 2024 <br> Time: 10:00 a.m. <br> Court: Room 15, 18th Floor <br> Judge: Hon. Rita F. Lin |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARD ......................................................................................... 2

III. ARGUMENT ..................................................................................................... 3

   A.  California Law Applies to this Litigation .................................................. 3

   B.  There is No Enforceable Agreement to Arbitrate...................................... 4

      1.  IXL fails to present any evidence of the formation of a contract with Plaintiffs' school districts.... 4

      2.  IXL fails to present any evidence of the formation of a contract with the Plaintiffs ...................... 5

   C.  IXL's Agency Argument is Unsupported by the Law or Evidence ....................................... 6

      1.  The agency exception to the rule against binding non-signatories to arbitration agreements is narrow and its requirements are "exacting" ................................................................. 6

      2.  IXL's agency theory is draconian and misrepresents the law ........................................ 8

   D.  Plaintiff Children's Use of IXL's School-Provided Services Did Not Bind Them to Any Arbitration Provision ................................................................................................. 10

   E.  The Litigation Does Not Fall Within the Scope of Any Purported Agreement.................................. 12

      1.  Plaintiffs' claims are not contemplated by the purported arbitration agreement ........................... 12

      2.  California law prohibits arbitration of Plaintiffs' claims for public injunctive and equitable relief 13

   F.  Any Purported Arbitration Agreement is Unconscionable........................................... 13

      1.  Any purported arbitration agreement is procedurally unconscionable........................................... 14

      2.  The purported arbitration agreement is substantively unconscionable........................................... 15

   G.  The Court Should Not Stay This Action ................................................. 17

IV. CONCLUSION................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Aral v. EarthLink, Inc.*,
  134 Cal.App.4th 544, 36 Cal.Rptr.3d 229 (2005)..............................................15

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal.4th 83, 99 Cal.Rptr.2d 745 (2000).........................................14, 15, 16, 17

*Benasra v. Marciano*,
  92 Cal.App.4th 987, 112 Cal.Rptr.2d 358 (2001).................................................6

*Berman v. Freedom Financial Network, LLC*,
  30 F.4th 849 (9th Cir. 2022).........................................................2, 3, 5, 11

*Bono v. David*,
  147 Cal.App.4th 1055, 54 Cal.Rptr.3d 837 (2007)............................................12

*Chavarria v. Ralphs Grocery Co.*,
  733 F.3d 916 (9th Cir. 2013).....................................................................14

*Cohen v. TNP 2008 Participating Notes Program, LLC*,
  31 Cal.App.5th 840, 243 Cal.Rptr.3d 340 (2019)...........................................7, 8

*DK Joint Venture 1 v. Weyand*,
  649 F.3d 310 (5th Cir. 2011) .......................................................................7

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)....................................................................................2

*Gentry v. Super. Ct.*,
  42 Cal.4th 443, 64 Cal.Rptr.3d 773 (2007) ...................................................15

*Gannon v. State*,
  390 P.3d 461 (2017) ..................................................................................11

*Granite Rock Co. v. Int'l. Bhd. Of Teamsters*,
  561 U.S. 287 (2010)....................................................................................3

*Hovis v. Homeaglow, Inc.*,
  2023 WL 5003583 (S.D. Cal. Aug. 4, 2023)..................................................17

*In re Juul Labs, Inc., Antitrust Litig.*,
  555 F. Supp. 3d 932 (N.D. Cal. 2021) ..........................................................15

*InterGen N.V. v. Grina*,
  344 F.3d 134 (1st Cir. 2003) .........................................................................7

*International Bhd. Of Teamsters v. NASA Servs., Inc.*,
    957 F.3d 1038 (9th Cir. 2020) ................................................................................ 3

*Johnson v. Walmart, Inc.*,
    57 F.4th 677 (9th Cir. 2023) ........................................................................... 2, 5, 6

*Kilgore v. KeyBank, Nat'l Ass'n*,
    718 F.3d 1052 (9th Cir. 2013) .............................................................................. 13

*Knutson v. Sirius XM Radio, Inc.*,
    771 F.3d 559 (9th Cir. 2014) ......................................................................... 2, 5, 6

*Long v. Provide Commerce, Inc.*,
    245 Cal.App.4th 855, 200 Cal.Rptr.3d 117 (2016) ............................................... 3

*Lopez v. Terra's Kitchen, LLC*,
    331 F. Supp. 3d 1092 (S.D. Cal. 2018) ................................................................. 5

*Luis Obispo Loc. Agency Formation Comm'n v. City of Pismo Beach*,
    61 Cal.App.5th 595, 275 Cal. Rptr. 3d 837 (2021) ............................................. 11

*MacClelland v. Cellco P'ship*,
    2022 WL 2390997 (N.D. Cal. July 1, 2022) ....................................................... 13

*Massel v. SuccessfulMatch.com*,
    --- F. Supp. 3d ---, 2024 WL 802194 (N.D. Cal. 2024) ....................................... 5

*McBurnie v. RAC Acceptance East, LLC*,
    95 F.4th 1188 (9th Cir. March 14, 2024) ....................................................... 13, 15

*McGill v. Citibank, N.A.*,
    2 Cal.5th 945, 216 Cal.Rptr.3d 627 (2017) ........................................................ 13

*Nagrampa v. Mailcoups, Inc.*,
    469 F.3d 1257 (9th Cir. 2006) .............................................................................. 14

*Newton v. Am. Debt Servs.*,
    854 F. Supp. 2d 712 (N.D. Cal. 2012) ................................................................ 16

*Norcia v. Samsung Telecomm. Am., LLC*,
    845 F.3d 1279 (9th Cir. 2017) ................................................................................ 2

*Nguyen v. Barnes & Noble, Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................................................ 3

*OTO, LLC v. Kho*,
    8 Cal.5th 111, 251 Cal.Rptr. 714 (2019) ...................................................................... 15

*Pokorny v. Quixtar*,
    601 F.3d 987 (9th Cir. 2010) ........................................................................................ 15

*Rogers v. Roseville SH, LLC*,
    75 Cal.App.5th 1065, 290 Cal.Rptr.3d 760 (2022) ..................................................... 7, 9

*Sellers v. JustAnswer LLC*,
    73 Cal.App.5th 444, 289 Cal.Rptr.3d 1 (2021) ........................................... 3, 5, 6, 11

*Soltero v. Precise Distribution, Inc.*,
    102 Cal.App.5th 887, 322 Cal.Rptr.3d 133 (June 18, 2024) ......................................... 6

*Szetela v. Discover Bank*,
    97 Cal.App.4th 1094, 118 Cal.Rptr.2d 862 (2002) ..................................................... 15

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) ...................................................................................... 14

*Valentine v. Plum Healthcare Grp., LLC*,
    37 Cal.App.5th 1076, 249 Cal.Rptr. 905 (2019) ........................................................... 7

**Statutes**                                                                                                  **Page(s)**

15 U.S.C.A. § 6502(b) ...................................................................................................... 9, 10

16 C.F.R. 312.3–312.6 ........................................................................................................... 9

CAL. CIV. CODE § 1589 ................................................................................................... 11, 12

CAL. CIV. CODE § 2299-2300 ................................................................................................. 9

CAL. EDUC. CODE § 48200 ................................................................................................... 12

KAN. STAT. § 72-3120 ......................................................................................................... 12

UNIF. PROBATE CODE § 5-403 ............................................................................................... 9

**Other Authorities**                                                                                         **Page(s)**

Restatement (Third) of Agency, § 1 ....................................................................................... 9

144 Cong. Rec. S11657 (daily ed. Oct. 7, 1998) (Statement of Rep. Bryan) ..................... 10

## I.    INTRODUCTION

Children have a fundamental right to public education. Enjoyment of that right may not be conditioned upon agreement to arbitration—especially when it concerns a lawsuit that seeks redress against a company from secretly invading the privacy of those children. Yet that is precisely what IXL Learning, Inc. ("IXL") seeks to do here: instead of litigating this case in the public eye, IXL implores this Court to deny Plaintiffs their constitutional right to a jury trial and send this case to a private court with a private arbitrator away from the public's ability to view, understand, or participate in issues at the heart of this important litigation—and all because Plaintiffs attended school as is their legal right and duty. Dkt. 19 (the "Motion" or "Mot.").

There is no basis to grant IXL's motion, and the Court should find as a matter of law that the claims and relief Plaintiffs seek are not subject to arbitration for at least four reasons.

**First**, IXL has not produced *any evidence* to support its extraordinary request to arbitrate these claims and remedies. There are no executed agreements with any purported arbitration clause. There is no evidence that the school districts (who have the more direct relationship with IXL) had any knowledge of, let alone consented to, the arbitration agreements. There is no evidence of how Plaintiffs or their minor children purportedly agreed to any terms or other purported agreements that contain arbitration agreements. Put simply: IXL wholly failed to carry its burden for compelling arbitration.

**Second**, even if IXL had produced any of this required evidence, it wouldn't matter: its motion still fails as a matter of law. Contrary to IXL's argument, the Children's Online Privacy Protection Act ("COPPA") does not impose a conservatorship on parents or their children in favor of schools for any purpose—especially to bind those parents and children to secret arbitration. And IXL does not even argue the existence of an actual agency relationship between schools and parents for any purpose.

**Third**, Plaintiffs could not have directly consented to IXL's terms of service, as IXL alternatively suggests. Even if Plaintiffs did have actual knowledge of any purported arbitration

provision, their continued use of IXL's services cannot constitute an agreement to any such provision. Again, Plaintiffs have a fundamental right of access to public education; thus, using school services to which they are already legally entitled does not constitute consideration to support an agreement to IXL's terms of service, including any arbitration provision.

*Fourth*, even if there was an enforceable arbitration agreement (there is not), the claims and remedies at issue in this litigation do not fall within the scope of such a purported agreement. Any purported agreement was not entered into with consent (and thus the scope is limited). Further, Plaintiffs seek public injunctive relief, and California prohibits, as a matter of law, enforcement of arbitration agreements that include public injunctive relief within their scope.

This is an important case that implicates the rights of parents and children across the country. That process should not unfold in secret away from public scrutiny. Plaintiffs respectfully request that the Court deny IXL's Motion.

## II.    LEGAL STANDARD

When evaluating whether to compel arbitration, the Court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Johnson v. Walmart, Inc.*, 57 F.4th 677, 680 (9th Cir. 2023). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption *does not apply* to disputes concerning *whether an agreement to arbitrate has been made*." *Id.* at 680–81 (emphasis added). IXL thus "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Id.* at 681; *see also Norcia v. Samsung Telecomm. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). A party "cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit." *Knutson v. Sirius XM Radio, Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). "In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Indeed, "[a]rbitration is strictly a matter of consent" and meant to resolve "*only those disputes*" that "the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l. Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original). It is axiomatic that "the federal policy favoring arbitration is no substitute for party agreement, or lack thereof." *International Bhd. Of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1041–42 (9th Cir. 2020). Therefore, courts "must determine whether a contract *ever* existed; unless that issue is decided in favor of the party seeking arbitration, there is no basis for submitting any question to an arbitrator." *Id.* (emphasis in original; marks omitted). "[W]ether the terms [of a purported contract] appear on a physical piece of paper or a computer screen, California law is clear—an offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which [she] was unaware[.]" *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 461, 289 Cal.Rptr.3d 1 (2021) (marks omitted); *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 862, 200 Cal.Rptr.3d 117, 122 (2016). "Thus, in order to establish mutual assent for the valid formation of an internet contract, a provider *must first establish the contractual terms were presented to the consumer* in a manner that made it apparent the consumer was assenting to those very terms when checking a box or clicking on a button." *Id.* (citing *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (emphasis added)).

The Ninth Circuit has established the standard for enforcing an arbitration clause contained in a website's terms of service ("TOS"):

> Unless a web operator can show that a consumer has actual knowledge of an arbitration agreement, an enforceable contract will be found . . . only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.

*Berman*, 30 F.4th at 856. Importantly, the mere use of a product is insufficient to prove a consumer's assent to arbitration. *Id.* 857–58.

## III.    ARGUMENT

### A.    California Law Applies to this Litigation

California law governs this litigation. In its motion, IXL repeatedly refers to California courts'

interpretations of the law. *See, e.g.*, Mot. at 3 (citing standard for presumption under California law); Mot. at 4 (citing standard for agency relationship under California law). Indeed, IXL cites only one case from a Court outside of California or the Ninth Circuit. Mot. at 6. Plaintiffs agree that, regardless of their states of residence, California law should govern the entirety of this litigation.

**B.    There is No Enforceable Agreement to Arbitrate**

**1.    IXL fails to present any evidence of the formation of a contract with Plaintiffs' school districts**

IXL states that Plaintiffs' "school districts purchased access from IXL to their educational services, whereupon the districts were presented with and agreed to IXL's policies, including the Terms," citing its March 11, 2024 TOS. Mot. at 1. However, its corporate representative Joseph Zhou testified that Plaintiffs' districts purportedly contracted for services sometime in 2020, making it an inadmissible supposition that those districts received or agreed to the March 2024 TOS.

Further, Mr. Zhou does *not* attest that the districts agreed to those (or any) terms or how any such assent was provided. *See generally*, Zhou Decl. Instead, Mr. Zhou merely states that "IXL presented [the districts] with IXL's Terms and Conditions" at the time of purchase. Mot. at 1, Dkt. 19-3 at ¶ 2. Instead of producing the terms purportedly presented or the districts' purported acceptance of and agreement to them, Mr. Zhou states that it is his "understanding that IXL's services are always provided to its customers pursuant to IXL's then-operative Terms and Conditions of Sale, which incorporate IXL's Terms of Service." Mot at 1, Dkt. 19-3 at ¶ 4. Crucially, Mr. Zhou neither describes nor produces any operative Terms and Conditions of Sale or Terms of Service. Worse, he further fails to explain how such terms were "presented" or by whom. Mr. Zhou also fails to describe any negotiations or discussions that the school districts had with IXL before any of these purported contracts were possibly agreed to. Instead, IXL's motion assumes that the districts agreed by merely "access[ing] or otherwise us[ing] the Service," citing the March 2024 TOS. Mot. at 1–2. Assuming that was the purported manifestation of assent, that would render the agreement a so-called "browsewrap agreement"—at best—which courts are "reluctant to enforce" and will not enforce in the absence of conspicuousness and "unambiguous manifestation of assent" in the form of some

affirmative conduct beyond mere use.[1] *See Berman* 30 F.4th at 856; *see also Massel v. SuccessfulMatch.com*, --- F. Supp. 3d ---, 2024 WL 802194 (N.D. Cal. Feb. 27, 2024) (Pitts, J.) (denying motion to compel arbitration; links in online agreement did not provide user with reasonably conspicuous notice enough to bind him to arbitration agreement under California law); *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092 (S.D. Cal. 2018) (denying motion to compel arbitration based on browsewrap agreement where subscribers assent to terms and conditions simply by using website or purchasing subscription, without visiting terms and conditions webpage or even acknowledging that use of website constituted assent to terms and conditions).

In lieu of producing admissible, properly authenticated evidence from either party of the purported agreement (*i.e.*, IXL or the districts) showing all arbitration clauses relevant to the allegations set out in the complaint, IXL instead produces an affidavit from its lawyer purporting to show one (unauthenticated) TOS from 2018 that he purportedly retrieved from a third-party archiving website, and stating that all versions of IXL's TOS available through that website contain similar arbitration provisions (without further support). To the extent that such evidence has any probative value, it does not show that the purported 2018 TOS was the TOS with which the districts were "presented." Nor does it provide all subsequent applicable TOS, as is necessary for evaluation of the enforceability of an arbitration clause. *See Sellers*, 73 Cal.App.5th at 477.

Based on these failures alone, the Court is well within its discretion to find that IXL has failed to meet its burden of demonstrating that *any* contract existed with anyone. *Johnson*, 57 F.4th at 680; *Knutson*, 771 F.3d at 565.

### 2. IXL fails to present any evidence of the formation of a contract with the Plaintiffs

Courts have identified "at least four types of internet contract formation, most easily defined

---

[1] A browsewrap agreement is a form of a "contract of adhesion," which is "a standardized contract, which, is imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Sellers*, 73 Cal.App.5th at 464 (cleaned up). Courts have generally [found] . . . browsewrap agreements to be unenforceable." *Id.* at 466.

by the way in which the user purportedly gives their assent to be bound by the associated terms: browsewraps, clickwraps, scrollwraps, and sign-in wraps." *Sellers*, 73 Cal.App.5th at 463. Even if IXL had satisfied its initial burden by, at minimum, adequately identifying all the purportedly operative arbitration provisions it seeks to enforce and showing that the districts did agree to all such provisions, that does not establish that *Plaintiffs* are bound by those provisions. Indeed, IXL does not present *any evidence* of how Plaintiffs, their children, or any other person using their service could have even been aware of the arbitration clauses. *See, e.g.*, *Johnson*, 57 F.4th at 680 (lack of evidence forbids a finding of contract); *Knutson*, 771 F.3d at 565 (same). This further eviscerates IXL's suggestion that an agreement exists.

### C.    IXL's Agency Argument is Unsupported by the Law or Evidence

Because IXL cannot prove, and does not even argue, that Plaintiffs themselves ever agreed to any arbitration provisions—whether through a browsewrap, clickwrap, scollwrap, or sign-in wrap agreement—it advances a byzantine "agency as a matter of federal law" theory of consent. Mot. at 4. Specifically, IXL argues that: (1) school districts are "empowered" to act as parents' agent for purpose of binding them to arbitration agreements with private vendors; (2) Plaintiffs' school districts did in fact agree to all relevant arbitration provisions—and also purported to agree on behalf of Plaintiffs; (3) such acts were within the scope of the districts' purported authority; and (4) somehow children are also bound by those purported agreements. These arguments fail for numerous reasons.

#### 1.    The agency exception to the rule against binding non-signatories to arbitration agreements is narrow and its requirements are "exacting"

The general rule is that that only a party to an arbitration agreement may enforce it. *Soltero v. Precise Distribution, Inc.*, 102 Cal.App.5th 887, 898–99, 322 Cal.Rptr.3d 133, 142 (June 18, 2024). An exception may apply if a non-signatory was bound to such an agreement by an agent. *Id.* However, courts rarely permit a signatory to an arbitration agreement—like IXL—to enforce that agreement against a non-signatory—like Plaintiffs (or even the school districts)—under an agency theory. *See id.* (finding no agency relationship where no evidence that principal exerted control over the agent); *see also Benasra v. Marciano*, 92 Cal.App.4th 987, 991, 112 Cal.Rptr.2d 358, 361 (2001) ("it is one

thing to permit a non-signatory to relinquish his right to a jury trial, but quite another to compel him to do so"); *see also DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 318–19 (5th Cir. 2011) (holding existence of corporate agency relationship insufficient to bind individuals personally); *InterGen N.V. v. Grina*, 344 F.3d 134, 148 (1st Cir. 2003) (finding that, even that if agency relationship existed, it did not extend to bind principal to arbitration agreement contained in purchase orders). California courts have explained that the requirements for doing so are "exacting." *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal.App.5th 840, 864–65, 243 Cal.Rptr.3d 340, 362–63 (2019) ("The requirements for imposing arbitration on a non-signatory principal . . . [are] 'exacting.'" (quoting *InterGen*, 344 F.3d at 148). The evidence must show that the principal—Plaintiffs—had sufficient control over the activities of the agent—the district—such that the agent was a "mere agent or instrumentality" of the principal. *Id.*

Furthermore, the burden of proving that a purported agent had the authority to act for the purported principal in a particular circumstance lies with the party dealing with the agent. *Rogers v. Roseville SH, LLC*, 75 Cal.App.5th 1065, 1074–75, 290 Cal.Rptr.3d 760, 767 (2022). And the existence of an agency relationship, and an agent's authority to act thereto, must be proven by "evidence that the purported *principal's conduct* caused the agent or the third party to believe that the agent had the authority to bind the principal." *Id.* at 767–68 (emphasis added) (refusing to enforce arbitration agreement against non-signatory where signatory purported to act as non-signatory's agent but no evidence showed that non-signatory assented to that act). Even an *agent's* good faith belief that he has authority to bind a principal is inadequate. As one court explained,

> It must be shown that [an agent's] belief was engendered by conduct of the principal. To hold otherwise would give any agent, not the authority, but the *naked power* to bind his principal to any contract within the general scope of his duties, however fantastic or detrimental to the principal's interest such contract may be.

*Valentine v. Plum Healthcare Grp., LLC*, 37 Cal.App.5th 1076, 1087, 249 Cal.Rptr.3d 905 (2019) (emphasis added).

Despite these well-established principles, IXL presents *no* evidence showing that Plaintiffs

ever agreed that any district official could act as their agent for any purpose—let alone evidence that Plaintiffs had sufficient control over the district official that the district official was merely an instrumentality of plaintiffs in executing an arbitration agreement with IXL. *See Cohen*, 31 Cal.App.5th 864–65. In fact, IXL presents no evidence that the *district* even claimed to act as Plaintiffs' agent for any such purpose, producing instead only its own self-serving statements. In short, nothing in the facts or the basic tenets of agency law supports IXL's argument.

### 2.    IXL's agency theory is draconian and misrepresents the law

Instead of providing any argument or evidence under applicable agency law, IXL advances a radical "agency as a matter of law" theory, by which it claims that "federal law" *imposes* an agency relationship on students and their parents in favor of school administrators for purposes of contracting with private technology providers.

***First***, in support of this novel theory, IXL cites the federal Children's Online Privacy Protection Act ("COPPA"). Mot. at 4. However, IXL falsely and misleadingly states that COPPA and "the Federal Trade Commission's ("FTC") implementing rule, 16 CFR part 312, empower[] schools to act[] as intermediaries between [education technology providers] and parents' and '***serv[e] as the parents' agent*** *in the [notice and consent] process*' when the provider's services are used for an educational purpose." Mot. at 4–5 (emphasis in original). That statement is patently false: that language is *not* from the COPPA statute or any FTC rule. Rather, it is from the Statement of Basis and Purpose issued by the FTC in 1999 as part of the initial rulemaking process at the time COPPA was enacted.[2] Contrary to IXL's misleading characterization, such commentary is not "federal law." Mot. at 4–5. Indeed, IXL cites no authority that would permit a court to even *consider* the force and effect of such agency commentary, let alone treat it as binding law.

***Second***, IXL's recitation of that commentary itself is grossly misleading. The FTC did *not* state that COPPA "empowers schools to act as" parents' intermediaries or agents, as IXL falsely claims. Mot. at 4. The FTC merely expressed an uncontroversial view that COPPA "does not preclude

---

[2] *See* https://www.ftc.gov/sites/default/files/documents/cases/2008/12/081211appa0823071.pdf.

schools from acting as" parents' intermediaries or agents for the purpose of providing consent to a private vendors' data practices.[3] In other words, the FTC advised that schools may work with parents to obtain their informed consent which, as its use of the word "agent" implies, would require an agreement from parents that their school may do so and that the school actually obtain the informed consent COPPA requires.[4] And, of course, the FTC has said nothing of a school's ability to bind parents to an *arbitration agreement* with a technology provider for any purpose.

In fact, the language IXL invents plainly contradicts the express dictates of both the authorizing statute and the FTC's rules interpreting COPPA, which clearly and unequivocally require operators like IXL to obtain verified parental consent before they may collect or use children's data—in addition to complying with a host of other duties owed to parents under COPPA. *See* 15 U.S.C.A. § 6502(b); 16 C.F.R. 312.3–312.6. *That* is the "consent scheme" expressly contemplated by the text of COPPA, not the unprecedented involuntary-agency scheme proposed by IXL. Mot. at 5.

Despite the clarity of COPPA's dictates, IXL triples down on its deception, falsely stating that the FTC "recently articulated a basis for this rule[.]" Mot. at 5. But (1) again, no such rule exists, and (2) the language IXL next quotes is actually from the FTC's statement regarding a proposed rule change to COPPA.[5] And, again, IXL cites no authority suggesting that such statements have any legal significance whatsoever, especially in the absence of any statutory ambiguity.[6]

IXL's argument is especially perverse given the express purpose of COPPA, which is to place

---

[3] *Supra*, FN 2 at 59903.

[4] IXL cites no authority for its extraordinary "agency as a matter of law" theory because none exists. Indeed, such a concept is antithetical to the fundamental principles of agency, which require words or conduct indicating assent to an agency relationship by the principal. *Rogers*, 75 Cal.App.5th at 1074 ("[C]onduct by the principal is essential to create the agency."); Cal. Civ. Code § 2299-2300; Restatement (Third) of Agency, § 1. The scheme IXL proposes is more akin to a limited conservatorship imposed on parents and children in favor of school administrators and private companies, which is plainly unsupported by law or fact. *See*, *e.g.*, Unif. Probate Code § 5-403 (petition for appointment of conservator).

[5] The FTC has not adopted any of the rules it proposed and discussed in this statement, only a part of which deals with a school's authority to consent on behalf of parents to the collection and use of their children's information—and *not* to any arbitration provision.

[6] IXL also cites logistical difficulties it might face if forced to obtain verified parental consent, but such considerations are not grounds for refusing to comply with the law.

parents in control over what information is collected from their young children online. *See* 15 U.S.C.A. § 6502(b).[7] IXL asks this Court to transform COPPA from a statute that Congress intended to serve as a shield for children and parents against technology companies into a sword for those companies against children and parents—supported by nothing more than its own misrepresentations of law and fact.

The requirements governing when a non-signatory may be bound to an arbitration agreement are clear, and they are not met here. And nothing in the FTC's interpreting rules or guidance suggests that schools may bind students or their parents to arbitration with private companies without any agreement by, or even notice to, parents.

To put it all together: in addition to failing to produce any of the arbitration agreements it's attempting to enforce, IXL seeks to enforce a browsewrap arbitration agreement(s)—which courts generally don't enforce—against school children and their parents by way of an exception to the rule prohibiting enforcement of arbitration agreements against non-signatories in the form of a novel agency-as-a-matter-of-law theory it purports to have discovered in a children's privacy law, as supported only by its own flagrant misrepresentations of that law. Its motion must fail.

### D.     Plaintiff Children's Use of IXL's School-Provided Services Did Not Bind Them to Any Arbitration Provision

IXL alternatively argues that Plaintiffs agreed to its TOS(s) (including the arbitration provision) "by allowing their children's continued use of IXL's services with knowledge of the Terms."[8] Mot. at 6.  In support, IXL cites general "hornbook contract law" regarding offer and assent.

---

[7] Senator Richard Bryan (D-NV), a Congressional sponsor of COPPA, described the goals as follows: "(1) to enhance parental involvement in a child's online activities in order to protect the privacy of children in the online environment; (2) to enhance parental involvement to help protect the safety of children in online fora . . .; (3) to maintain the security of personally identifiable information of children collected online; and (4) to protect children's privacy by limiting the collection of personal information from children without parental consent." 144 Cong. Rec. S11657 (daily ed. Oct. 7, 1998) (Statement of Rep. Bryan).

[8] Even if an arbitration clause in the March 11, 2024 TOS is valid and enforceable against Plaintiffs as of the date of the complaint (which it is not), it *might* only be effective as to conduct *from that date forward*. IXL makes no argument that any such agreement would govern conduct preceding any such purported agreement.

Mot. at 6–7. California law specifically provides that "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." CAL. CIV. CODE § 1589.

*First*, as discussed herein, IXL has not demonstrated the existence of a contract—whether with the school districts or Plaintiffs. Indeed, IXL does not even argue that Plaintiffs ever had *Berman* notice of the arbitration clauses before they used the product.

*Second*, even assuming that Plaintiffs had actual knowledge of an arbitration clause at the time the complaint was filed, IXL fails to produce authenticated evidence of any such TOS, including the March 11, 2024 TOS, let alone the entire agreement so as to permit assessment of the arbitration clauses in "full context." *Sellers*, 73 Cal.App.5th at 478.

*Third*, IXL's argument fails as a matter of law because any assent Plaintiffs purportedly provided by "allowing" their children to continue IXL products lacks consideration. Plaintiffs use IXL products as made available to them through their school as an integral part of the school's public education services. Those are services to which Plaintiffs were already legally entitled. *See, e.g., Gannon v. State*, 390 P.3d 461, 501 (2017) (citing state law guaranteeing children the right to public education, explaining that "the people of Kansas have emphasized the importance of public education since territorial days"). IXL cites no authority that would require that Plaintiffs either: (1) forgo their fundamental rights to education services; or (2) receive those services on the condition that they consent to an arbitration clause with the private company that provides those services to the school. Rather, because Plaintiffs are already legally entitled to public-education services, availing themselves of those services cannot constitute consideration to support an agreement with the vendor that provides those services. *San Luis Obispo Loc. Agency Formation Comm'n v. City of Pismo Beach*, 61 Cal.App.5th 595, 600, 275 Cal.Rptr.3d 837, 840 (2021) ("Consideration consists of either a benefit to the promisor or a detriment to the promisee.").

*Finally*, even if using school services could constitute a "benefit" that could support consideration (which it cannot), for acceptance of a benefit to constitute consent, it must be voluntary.

1   *See* CAL. CIV. CODE § 1589. Plaintiffs' use of IXL is not voluntary. Plaintiff children are required to

2   attend school. KAN. STAT. § 72-3120. That is true of Californians (and all other jurisdictions) as well.

3   *See*, *e.g.*, CAL. EDUC. CODE § 48200. And the implication of IXL's arguments demonstrates that

4   parents (and their children) have no choice and must use its products and services. A parent should

5   not face fear of retaliation, or of being cast as adversarial to teachers and the school system, simply

6   because those parents do not want their children's data exploited for profit and sold by companies to

7   strangers. While a company may charge a school for services that facilitate schoolwork and help

8   teachers organize assignments, such an arrangement must be lawful. IXL's provision of services to

9   schools—and its attendant exploitation of children and their parents—is not.

10      IXL may not force families to endure or risk enduring these harms by refusing to use services

11  that their school provides and requires. Under these circumstances, Plaintiffs' use of IXL services

12  cannot be considered "voluntary" so as to support a finding that they implicitly agreed to IXL's

13  arbitration clause by participating in their own education.

14      **E.      The Litigation Does Not Fall Within the Scope of Any Purported Agreement**

15          **1.      Plaintiffs' claims are not contemplated by the purported arbitration
                agreement**

16

17      Even though there is no evidence that Plaintiffs (or their minor children) are parties to the

18  purported arbitration agreement(s), IXL still argues that their claims somehow fall within the scope

19  of that purported arbitration agreement. Mot. at 9. In determining the scope of an arbitration clause,

20  "[t]he court should attempt to give effect to the parties' intentions, in light of the usual and ordinary

21  meaning of the contractual language and the circumstances under which the agreement was made."

22  *Bono v. David*, 147 Cal.App.4th 1055, 1063, 54 Cal.Rptr.3d 837 (2007). It therefore logically follows

23  that "the terms of the specific arbitration clause under consideration must reasonably cover the dispute

24  as to which arbitration is requested." *Id.*

25      While that argument *might* apply to the school districts (if IXL could prove that they ever

26  agreed to any contract), it does not apply to Plaintiffs—parents of children who must use IXL's

27  product—who could have never knowingly agreed to that purported arbitration agreement simply by

28

using IXL's services or products so that their children could continue with their education.

### 2.    California law prohibits arbitration of Plaintiffs' claims for public injunctive and equitable relief

Even if the Court were to find that an arbitration agreement exists (it does not) and this litigation could fall within its scope (it cannot), Plaintiffs' claims for injunctive and equitable relief would still not be subject to arbitration. In a one-sided attempt to limit the scope of IXL's requirement to arbitrate, IXL carves out "claims for injunctive or other equitable relief." Dkt. 19-1 at 10. Plaintiffs here seek not only monetary relief, but also injunctive and equitable relief. Compl., ¶¶ 1, 262(g), 279, 290, 297, 312. Nevertheless, even with this one-sided provision, IXL cannot overcome Plaintiffs' pursuit of public injunctive and equitable relief. As the Ninth Circuit confirmed earlier this year: it is unlawful under California law to arbitrate claims for public injunctive relief. *McBurnie v. RAC Acceptance East, LLC*, 95 F.4th 1188, 1189 (9th Cir. March 14, 2024).

"A public injunction is a form of 'injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public.'" *Id.* at 1191 (quoting *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 216 Cal.Rptr.3d 627 (2017)). Here, Plaintiffs seek injunctive relief to redress IXL's prior conduct and forbid IXL from engaging in these practices going forward. Compl., ¶¶ 1, 262(g), 279, 290, 297, 312. What could threaten future injury to the general public more than violations of children's privacy—particularly those children who are exposed to those violations *because they attend public schools and are required to use technology that is exploiting their data in the name of profits*? That injury is certainly more pressing and affects more of the public than processing fees for rental-purchase agreements—the injury at issue in *McBurnie*. *McBurnie*, 95 F.4th at 1194.

### F.    Any Purported Arbitration Agreement is Unconscionable

California law holds that "a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *MacClelland v. Cellco P'ship*, 2022 WL 2390997, at *4 (N.D. Cal. July 1, 2022) (quoting *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013)). Both substantive and procedural unconscionability do not have to be the same degree, "[i]n other

1
2
3
4

words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745 (2000).

5
6
7
8

The foregoing makes clear that any of the arbitration provisions contained in whichever of IXL's TOS govern the complaint are not enforceable against Plaintiffs. To the extent the Court might find that any claim could fall within the scope of the arbitration agreement, enforcement of such provision would be procedurally and substantively unconscionable.

9

### 1.    Any purported arbitration agreement is procedurally unconscionable

10
11
12
13
14
15
16
17
18
19

Procedural unconscionability concerns the way a contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of "oppression" and "surprise" involved in the agreement. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). "Oppression" involves the weaker party's absence of meaningful choice and unequal bargaining power that results in no real negotiation. *Id*. "Surprise" analyzes the extent to which the contract clearly discloses its terms and the reasonable expectations of the weaker party. *Id*. "A contract is procedurally unconscionable if it is a contract of adhesion, *i.e.*, a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (citing *Armendariz*, 24 Cal.4th at 114).

20
21
22
23
24
25
26

***First***, the contract that IXL purports to have *presented* to the school districts (but that IXL has not presented any evidence that was executed) is a "take it or leave it" contract of adhesion. *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (finding an arbitration agreement adhesive where "the contract was non-negotiable" and plaintiff's "only choice was to sign it as written or to opt out"). As discussed above, IXL offers no reasonable opportunity to even review the extensive and convoluted terms of any purported contract, because here it cannot even identify which purported contract controls. *See Ting*, 319 F.3d at 1149 (an arbitration agreement is procedurally unconscionable

27
28

where it "impos[es]" on users "without opportunity for negotiation, modification, or waiver"). There is also no evidence or even argument from IXL that users are required to click on or otherwise review terms of service or other purported contracts so that they may view the arbitration provision before using IXL's services. *Cf. In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 953 (N.D. Cal. 2021) (finding no procedural unconscionability where there is evidence of "affirmative[] assent[]" to the terms).

*Second*, IXL provides users no opportunity to opt out or reject the provision—whenever it may have been added. *See Aral v. EarthLink, Inc.*, 134 Cal.App.4th 544, 557, 36 Cal.Rptr.3d 229, 238 (2005) (stating that there is "quintessential procedural unconscionability" where an arbitration agreement is presented on a take-it-or-leave-it basis with no opportunity to opt out); *see also Gentry v. Super. Ct.*, 42 Cal.4th 443, 472 (2007) (finding an arbitration agreement with opt-out provision procedurally unconscionable because it did not provide a "meaningful opportunity to opt out") *abrogation recognized by dissent on other grounds*, *OTO, LLC v. Kho*, 8 Cal.5th 111, 251 Cal.Rptr. 714 (2019).

### 2.     The purported arbitration agreement is substantively unconscionable

Substantive unconscionability exists where terms are "overly harsh" or "one-sided." *Armendariz*, 24 Cal.4th at 114; *Pokorny v. Quixtar*, 601 F.3d 987, 997–98 (9th Cir. 2010) ("[M]utuality is the 'paramount' consideration when assessing substantive unconscionability."); *see Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1101, 118 Cal.Rptr.2d 862 (2002) (finding a mutual prohibition on representative or class actions substantively unconscionable because credit card companies typically do not sue their customers in class action lawsuits, and thus this provision was clearly meant to prevent customers from seeking redress for relatively small amounts of money).

*First*, as discussed above, to the extent the arbitration agreement bans or otherwise covers public injunctive relief, the arbitration agreement is unconscionable. *McBurnie*, 95 F.4th at 1189.

*Second*, under the terms of the purported agreement, IXL can modify all terms, including the substantive terms. *See* Dkt. 19-1 at 4 ("IXL reserves the right to modify this Agreement so long as it

provides notice of these changes to you as described below"). As a threshold matter, IXL has not demonstrated that any notice was provided to the school districts or Plaintiffs as parents to their minor children. Further, IXL's suggestion that parents and their children "not use or access . . . the Service" if they do not agree to the revisions (Dkt. 19-1 at 8) is preposterous given the compulsory nature of these services, as well as Plaintiffs' legal right to education services. IXL also apparently argues that any change to the terms (*e.g.*, those made in 2024) would apply to prior conduct (*i.e.*, that subsequent use bars liability for IXL's prior conduct). This is inherently one-sided and does not allow the parties equitable bargaining power. *Armendariz*, 24 Cal.4th at 114.

IXL's own arguments further demonstrate the inherent unfairness of enforcing its arbitration clauses against children who use its products at the direction of their school:

- that schools can act as parents' agents without any evidence of assent by parents to an agency relationship;

- that schools can bind parents and children to an arbitration agreement with a massive private company without even notifying parents of any such agreement or explaining that they would be forfeiting their constitutional right to a jury trial;

- that an arbitration provision in a contract of adhesion pertaining to an education product used by a child's school binds the child who uses that product through the child's mere use of that product;

- that parents agree to such arbitration by failing to withdraw their children from school-required services and activities and demanding accommodations; and

- that a statute intended to protect children's privacy and parents' rights somehow diminishes both.

***Third***, IXL's limitation of liability and damages (Dkt. 19-1 at 9–10) significantly undermines the legal recourse available to users for any harm suffered, potentially leaving them without adequate remedy for their losses and disproportionately favoring IXL. *Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) ("Because the limitation of liability clause prevents customers from

receiving damages that they are entitled to under CROA, this term is substantively unconscionable."); *Armendariz,* 24 Cal.4th at 103-104 (an arbitration agreement limiting statutorily available remedies such as punitive damages and attorney's fees is "contrary to public policy and unlawful"); *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1995) (similar); *cf. Hovis v. Homeaglow, Inc.*, 2023 WL 5003583, *4 (S.D. Cal. Aug. 4, 2023) (no substantive unconscionability where defendant did not limit remedies).

Thus, for the foregoing reasons, IXL's purported contract is substantively unconscionable.

### G.    The Court Should Not Stay This Action

Finally, IXL argues that the Court should stay this action. Mot. at 9. For the reasons explained herein, IXL's arguments fail: there was no agreement to arbitrate, and Plaintiffs' claims do not fall within the scope of any arbitration clause, particularly the injunctive and equitable relief claims. Plaintiffs respectfully request that the Court deny the request for stay.

## IV.    CONCLUSION

This case concerns the privacy rights of children and their families, serves a great public interest, and should be litigated through public courts. The implication of IXL's arguments is draconian. A family's fundamental right to enjoy full access to education may not be controlled by a secret arbitration agreement with a private company, particularly where that company seeks to compel arbitration against families that did not sign, or were even aware of, any agreement, let alone an agreement to arbitrate.

Plaintiffs respectfully request that the Court deny as a matter of law IXL's Motion to Compel Arbitration and Stay Proceedings.

Dated: August 19, 2024

By: /s/ *Julie Liddell*

Julie Liddell (*pro hac vice*)
julie.liddell@edtech.law
**EDTECH LAW CENTER PLLC**
P.O. Box 300488
Austin, TX 78705
Telephone: (737) 351-5855

Respectfully submitted,

By: /s/ *Ryan J. McGee*

Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**

201 N Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 222-4736

Michael F. Ram (CA Bar No. 238027)
mram@forthepeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

*Attorneys for Plaintiffs*