Roberto Anguizola (IL Bar No. 6270874)
James Evans (VA Bar No. 83866)
Federal Trade Commission
600 Pennsylvania Ave., NW, Mailstop H-144
Washington, DC 20580
(202) 326-3284 / ranguizola@ftc.gov
(202) 326-2026 / james.evans@ftc.gov

Attorneys for Amicus Curiae
Federal Trade Commission

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **Gretchen Shanahan**, on behalf of herself and her minor children A.S. and B.S., **Amy Warren**, on behalf of herself and her minor child B.W., and **Kimberly Whitman**, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**IXL Learning, Inc.**,<br><br>Defendant. | No. 3:24-cv-02724-RFL<br><br>**Brief for Amicus Curiae Federal Trade Commission** |

## INTRODUCTION AND INTEREST OF THE FEDERAL TRADE COMMISSION

The Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. § 6501, *et seq.*, protects the online privacy of children under age 13, including by regulating the collection of personal information from children over the internet. Contrary to what IXL Learning, Inc. ("IXL") claims in its motion to compel arbitration [Doc. 19] ("Mot."), Mot. 4-6, whether parents and children are bound to mandatory arbitration and class action/jury trial waiver provisions when school districts agree to Terms of Service for software used in their classrooms is outside the scope of COPPA and its implementing rule.

The Federal Trade Commission ("FTC" or "Commission") is an independent agency of the United States Government that protects consumer interests by, among other things, enforcing consumer protection laws and conducting studies of industry-wide consumer protection issues.

The FTC was a driving force behind the enactment of COPPA and serves as the principal enforcer of COPPA and its implementing rule, which was promulgated by the Commission. The FTC therefore has a strong interest in the proper construction and application of COPPA.[1]

## BACKGROUND

### I. The Children's Online Privacy Protection Act (COPPA)

As the internet became more central to the lives of children and their families, concerns grew about whether kids were too exposed in this new online environment. Congress enacted COPPA in 1998 to better protect children's online privacy. An FTC study provided the basis for the legislative efforts that culminated in COPPA's enactment. *See* Federal Trade Commission, *Privacy Online: A Report to Congress* (June 1998); 144 Cong. Rec. S8482 (July 17, 1998) (Statement of Sen. Bryan). The legislation "drew heavily from the recommendations and findings of the [FTC]." *S. 2326: Children's Online Privacy Protection Act of 1998*, Hearing before Senate Subcommittee on Communications, S. Hrg. 105-1069 (Sept. 23, 1998) at 3 (Statement of Sen. Burns).

In the words of its principal sponsor, COPPA was designed "(1) to enhance parental involvement in a child's online activities in order to protect the privacy of children in the online environment; (2) to enhance parental involvement to help protect the safety of children in online fora such as chatrooms, home pages, and pen-pal services in which children may make public postings of identifying information; (3) to maintain the security of personally identifiable information of children collected online; and (4) to protect children's privacy by limiting the collection of personal information from children without parental consent." 144 Cong. Rec. S11657 (Oct. 7, 1998) (Statement of Sen. Bryan).

To meet those objectives, Congress directed the Commission to promulgate implementing regulations, including detailed regulations governing the collection and use of

---

[1] The FTC takes no position on questions of state-specific agency law involved in the Court's ultimate analysis of the issues IXL raises. For example, under state law, schools may be able to act as agents of the parent in a variety of ways outside the COPPA context. This amicus brief is limited to issues regarding COPPA, which is where the FTC has "unique information or perspective that can help the court." *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005).

personal information from children online. 15 U.S.C. § 6502(b)(1), 6502(c). Pursuant to Congress's instructions, the Commission promulgated the Children's Online Privacy Protection Rule ("COPPA Rule"), 16 C.F.R. Part 312; *see* 64 Fed. Reg. 59888 (Nov. 3, 1999) (final rule). COPPA declares it "unlawful for an operator of a website or online service directed to children, or any operator that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates [those FTC] regulations." 15 U.S.C. § 6502(a)(1).

Congress assigned principal responsibility for COPPA's enforcement to the Commission, authorizing the agency to bring enforcement actions for violations of the COPPA Rule in the same manner as for other Commission rules defining unfair or deceptive acts or practices under the FTC Act. 15 U.S.C. § 6502(c). Several other federal agencies help enforce the statute in specified areas. *Id.* § 6505(b). In addition, COPPA authorizes state attorneys general to enforce compliance with the COPPA Rule by filing actions in federal district courts after serving prior written notice upon the Commission when feasible. *Id.* § 6504(a). The statute does not include a private right of action.

## II.     The FTC's Enforcement of COPPA

Since the COPPA Rule took effect in April 2000, the FTC has brought numerous enforcement actions for violations of the rule. In a recent example, the FTC took action against the company formerly known as Weight Watchers, and a subsidiary called Kurbo, Inc., for marketing a weight loss app for use by children as young as eight and then collecting their personal information without parental permission (among other violations). The FTC reached a settlement with these defendants requiring them to delete personal information illegally collected from children under 13, destroy any algorithms derived from the data, and pay a civil penalty.[2] The Department of Justice filed the Complaint on behalf of the FTC in this Court, and the Court (Hixson, Mag. J.) subsequently entered the stipulated order.[3]

---

[2] *See*, FTC, *FTC Takes Action Against Company Formerly Known as Weight Watchers for Illegally Collecting Kids' Sensitive Health Data* (Mar. 4, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/03/ftc-takes-action-against-company-formerly-known-weight-watchers-illegally-collecting-kids-sensitive.

[3] *United States v. Kurbo, Inc. and WW International, Inc.*, No. 3:22-cv-00946 (N.D. Cal. 2022).

Even more recently, the FTC charged Epic Games, the maker of the video game Fortnite, with violating the COPPA Rule by collecting personal information from children without parental notice or consent and failing to comply with parental review and deletion requirements. Following a settlement with the FTC, Epic was ordered to pay $275 million for these violations, a new record for COPPA monetary penalties. *See United States v. Epic Games, Inc.*, No. 5:22-cv-00518 (E.D.N.C. 2023). The FTC also has recently brought COPPA enforcement actions against, among others, an online advertising platform, for collecting children's personal information without parental consent; online app developers, for similar violations; and an online video sharing platform, which allegedly made millions of dollars by using personal information collected from children (without first notifying parents and getting their consent) to deliver targeted ads to viewers of video channels directed at children.[4]

In addition to its enforcement work, in the last five years alone, the FTC has undertaken numerous other initiatives involving COPPA, including launching a regulatory review of the COPPA Rule, releasing a policy statement, conducting studies and workshops, and issuing a report relating to COPPA.[5]

---

[4] *See, e.g., United States v. OpenX Technologies, Inc.*, No. 2:21-cv-09693 (C.D. Cal. 2021); *United States v. Kuuhuub Inc., et al.*, No. 1:21-cv-01758 (D.D.C. 2021); *United States v. HyperBeard, Inc., et al.*, No. 3:20-cv-03683 (N.D. Cal. 2020); FTC and New York v. Google LLC and YouTube, LLC, No. 1:19-cv-02642 (D.D.C. 2019) (all consent decrees).

[5] *See, e.g.*, Request for Public Comment on the Federal Trade Commission's Implementation of the Children's Online Privacy Protection Rule, 84 Fed. Reg. 354852 (July 25, 2019), https://www.federalregister.gov/documents/2019/07/25/2019-15754/request-for-public-comment-on-the-federal-trade-commissions-implementation-of-the-childrens-online; FTC, Policy Statement of the Federal Trade Commission on Education Technology and the Children's Online Privacy Protection Act (2022), https://www.ftc.gov/system/files/ftc_gov/pdf/Policy%20Statement%20of%20the%20Federal%20Trade%20Commission%20on%20Education%20Technology.pdf; FTC, Federal Trade Commission Report to Congress on COPPA Staffing, Enforcement and Remedies (2022), https://www.ftc.gov/system/files/ftc_gov/pdf/p155401_coppa_general_project_report_2022.pdf; FTC Workshop, *The Future of the COPPA Rule* (2019), https://www.ftc.gov/news-events/events/2019/10/future-coppa-rule-ftc-workshop; FTC Workshop, *Student Privacy and Ed Tech* (2017), https://www.ftc.gov/news-events/events/2017/12/student-privacy-ed-tech; FTC, *FTC Issues Orders to Nine Social Media and Video Streaming Services Seeking Data About How They Collect, Use, and Present Information* (2020), https://www.ftc.gov/news-events/news/press-releases/2020/12/ftc-issues-orders-nine-social-media-video-streaming-services-seeking-data-about-how-they-collect-use (initiating a study relating to social media and video streaming companies' practices, including their impact on children and teens).

### III. This Case

In this case, Plaintiffs allege that IXL unlawfully collected, used, and sold their children's data in connection with their use of IXL's websites and software in school. Compl. ¶¶ 26-255. Based on this alleged misconduct, Plaintiffs filed this putative class action for violations of the Federal Wiretap Act, multiple California statutes and the common law. Compl. ¶¶ 256-329.

IXL argues that this Court should compel arbitration based on mandatory individual arbitration and class action/jury trial waiver provisions contained in the Terms of Service between IXL and the school districts where Plaintiffs' children attend school. Mot. 3-9.

### ARGUMENT

Nothing in COPPA, 15 U.S.C. § 6501 et seq., or the COPPA Rule, 16 CFR part 312, addresses whether parents and their children should be bound by every provision contained in a contract between an operator like IXL and a school district. Yet IXL argues that even though the complaint does not allege violations of COPPA, the school districts bound Plaintiffs to arbitration agreements by agreeing to Terms of Service containing mandatory individual arbitration and class action/jury trial waiver provisions. Mot. 2, 4. In making this argument, IXL claims COPPA created "an express agency" between "Plaintiffs and the relevant school districts as a matter of federal law." Mot. 4. However, as discussed below, in addressing schools' role in the COPPA context, neither the statute nor the Commission's interpretations of it support the invocation of COPPA.

IXL cites text in the Statement of Basis and Purpose accompanying the COPPA Rule as originally promulgated;[6] an FTC staff blog post;[7] and a notice of proposed rulemaking proposing modifications to the COPPA Rule.[8] Mot. 4-6. This commentary and guidance applies solely to COPPA's parental notice and consent requirements, however.

First, IXL relies on a mischaracterization of the Statement of Basis and Purpose ("SBP") accompanying the COPPA Rule, 64 Fed. Reg. 59888, 59903 (1999). IXL quotes selectively from

---

[6] 64 Fed. Reg. 59888, 59903 (1999).
[7] Lisa Weintraub Schifferle, "COPPA Guidance for Ed Tech Companies and Schools during the Coronavirus" (Apr. 9, 2020), *available at* https://www.ftc.gov/business-guidance/blog/2020/04/coppa-guidance-ed-tech-companies-and-schools-during-coronavirus.
[8] 89 Fed. Reg. 2034, 2055 (2024).

the SBP while omitting relevant language that narrowly limits that discussion to the COPPA-required notice and consent process. *See* Mot. 4-5. The language IXL quotes (highlighted in yellow in the block quote below) comes from a fuller "Response to Comments Requesting an Exception for Information Collection in the Educational Setting," which states:

> Numerous commenters raised concerns about how the Rule would apply to the use of the Internet in schools. Some commenters expressed concern that requiring parental consent for online information collection would interfere with classroom activities, especially if parental consent were not received for only one or two children. In response, the Commission notes that the Rule does not preclude schools from acting as intermediaries between operators and parents in the notice and consent process, or from serving as the parents' agent in the process. For example, many schools already seek parental consent for in-school Internet access at the beginning of the school year. Thus, where an operator is authorized by a school to collect personal information from children, after providing notice to the school of the operator's collection, use, and disclosure practices, the operator can presume that the school's authorization is based on the school's having obtained the parent's consent.

64 Fed. Reg. 59888, 59903 (footnotes omitted).

Similarly, the FTC staff blog post that IXL cites also does not support IXL's position. The blog post relates, again, to the school's role in the notice and consent process:

> COPPA generally requires companies that collect personal information online from children under age 13 to provide notice of their data collection and use practices and obtain verifiable parental consent. In the educational context, however, schools can consent on behalf of parents to the collection of student personal information - but only if such information is used for a school-authorized educational purpose and for no other commercial purpose.[9]

Finally, IXL points to language in a notice of proposed rulemaking proposing modifications to the COPPA Rule. Mot. 5-6. In addressing public comments the Commission had received about the COPPA Rule, the Commission stated:

> After careful consideration of the comments, the Commission proposes codifying in the Rule its long-standing guidance that

---

[9] Schifferle, *supra* n.7.

> schools, State educational agencies, and local educational agencies may authorize the collection of personal information from students younger than 13 in very limited circumstances; specifically, where the data is used for a school-authorized education purpose and no other commercial purpose.
>
> When a child goes to school, schools have the ability to act *in loco parentis* under certain circumstances. This is particularly the case when schools are selecting the means through which the schools and school districts can achieve their educational purposes, such as when deciding which educational technologies to use in their classrooms. The Commission finds compelling the concern that requiring parental consent in the educational context would impose an undue burden on ed tech providers and educators alike. As an initial matter, many ed tech providers have relied upon and structured their consent mechanisms based on the Commission's existing guidance. Requiring providers to reconfigure their systems to obtain parental consent directly from parents would undoubtedly create logistical problems that could increase costs and potentially dissuade some ed tech providers from offering their services to schools.
>
> The need for parental consent is also likely to interfere with educators' curriculum decisions. As a practical matter, obtaining consent from the parents of every student in a class often will be challenging, in many cases for reasons unrelated to privacy concerns. In situations where some number of parents in a class decline to consent to their children's use of ed tech, schools would face the prospect of foregoing particular services for the entire class or developing a separate mechanism for those students whose parents do not consent. Because the proposed school authorization exception restricts an operator's use of children's data to a school-authorized education purpose and precludes use for commercial purposes such as targeted advertising, it may ultimately be more privacy protective than requiring ed tech providers to obtain consent from parents.

89 Fed. Reg. 2034, 2055 (footnotes omitted). Here, again, the Commission's commentary was limited to addressing circumstances under which schools are acting as an agent for purposes of complying with COPPA's notice and consent requirements.

Thus, contrary to IXL's claims, the Commission and its staff's comments and guidance do not create an agency relationship between Plaintiffs and their school districts. As set forth above, in its comments and guidance, the Commission and its staff responded to concerns that

requiring parental consent to collect student's information could interfere with classroom activities, by noting that the COPPA Rule "*does not preclude* schools from acting as intermediaries between operators and parents in the notice and consent process, or from serving as the parents' agent in the process." 89 Fed. Reg. 2034, 2053 (emphasis added). The scope of any agency relationship is not determined by the parental "notice and consent process" required by COPPA, 89 Fed. Reg. at 2053.

## CONCLUSION

The Commission respectfully offers its "unique information or perspective" on COPPA in hopes that it will "help the court." *NGV Gaming*, 355 F. Supp. 2d at 1067. Nothing in COPPA's text, purpose, or legislative history, or the interpretation thereof by the Commission and its staff, addresses the arbitration issue in this case.

Dated: August 19, 2024

Respectfully submitted,

/s/ Roberto Anguizola
**Roberto Anguizola**, IL Bar No. 6270874
**James Evans**, VA Bar No. 83866
Federal Trade Commission
600 Pennsylvania Ave., NW, CC-6316
Washington, DC 20580
(202) 326-3284 / ranguizola@ftc.gov
(202) 326-2026 / james.evans@ftc.gov

**Attorneys for Amicus Curiae**
**Federal Trade Commission**