ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant*
IXL LEARNING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S., AMY WARREN, on behalf of herself and her minor child B.W., and KIMBERLEY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>IXL LEARNING, INC.,<br><br>　　　　　Defendant. | Case No. 3:24-cv-02724-RFL<br><br>**DEFENDANT IXL LEARNING, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date: October 8, 2024<br>Time: 10:00 a.m.<br>Court: Room 15, 18th Floor<br>Judge: Hon. Rita F. Lin<br><br>Complaint Filed: May 7, 2024 |

I.      **INTRODUCTION**

Plaintiffs' opposition does not dispute that Plaintiffs continued to use IXL's services with knowledge of the Terms. That is sufficient to bind Plaintiffs to arbitration under California law.[1] With respect to IXL's agency arguments, IXL understands that the FTC disputes IXL's interpretation of COPPA and its guidance. IXL's Motion advances a common-sense interpretation of COPPA's agency principles in the absence of FTC authority to the contrary. Plaintiffs' position, by contrast, is that they may use IXL's services without being bound by *any* terms of use relating to those services. Notably, neither Plaintiffs nor the FTC dispute that COPPA permits schools to consent to IXL collecting student data, which supports IXL's pending motion to dismiss.

As a threshold and dispositive matter, Plaintiffs' challenges to the agreement's validity and scope are delegated to the arbitrator. Dkt. 19 ("Mot.") p. 8. Plaintiffs do not dispute this. Thus, this Court should compel arbitration to resolve these issues with the arbitrator. But even if this Court considers Plaintiffs' arguments, they all fail. The remainder of Plaintiff's arguments are misguided and inapposite technical challenges to the agreement's formation that are not grounded in the law.

II.     **THE TERMS ARE PROPERLY BEFORE THIS COURT**

Plaintiffs first assert that IXL failed to "produce authenticated evidence" of the Terms "so as to permit assessment of the arbitration clauses in 'full context.'" *See* Dkt. 27 ("Opp.") pp. 4-5, 11. That is odd. Plaintiffs do not dispute the Terms' existence or what the Terms say. Indeed, the Terms are incorporated by reference in Plaintiffs' Complaint, which "refers extensively to the document" and which uses the Terms to "form[] the basis of [Plaintiffs'] claim[s]." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir. 2018). Plaintiffs repeatedly cite and quote the Terms throughout their Complaint. *See* Mot. p. 7; *see also* Dkt. 1 ("Compl.") ¶ 139 (the Terms are "located on [IXL's] website"), n. 2 (citing the Terms' URL). And Plaintiffs use the Terms to support their arguments, including this Court's jurisdiction over its claims, *id*. ¶ 5, IXL's purported lack of consent, *id*. ¶ 122, and the suitability of their claims for a class action. *Id*. ¶ 264. So, it is not at all clear what the point of this argument is. Plaintiffs cannot "select[] only portions

---

[1] IXL agrees that California law governs whether the parties entered into an arbitration agreement but reserves all rights and arguments as to the laws applicable to any other aspect of this litigation.

of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims." *Smith v. NetApp, Inc.*, No. 19-CV-04801-JST, 2021 WL 1233354, at *2 (N.D. Cal. Feb. 1, 2021) (citations and quotations omitted).

Moreover, the Declaration of David P. Fuad that IXL submitted with its Motion properly puts the Terms before this Court. Courts apply "a summary judgment type standard when ruling on a motion to compel arbitration," where they "may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony." *S.S. by & through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1045 (S.D. Cal. 2021) (citations omitted). Here, the Fuad Declaration attaches a copy of the relevant 2018 Terms and states that the arbitration provision does not differ from the terms cited in Plaintiffs' Complaint. *See* Dkt. 19.1. This declaration, "if offered in court, would otherwise be admissible." *Peloton Interactive*, 566 F. Supp. 3d at 1045; *see also Erickson v. Nebraska Mach. Co.*, No. 15-CV-01147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (courts have admitted web pages available through the Wayback Machine). Accordingly, Plaintiffs' evidentiary quibble falls flat and the Terms are properly before this Court.

### III.    IXL'S COPPA AGENCY ARGUMENT IS FULLY CONSISTENT WITH COPPA

IXL understands that the FTC disputes IXL's interpretation of COPPA and its guidance. But the FTC acknowledges that schools may "act[] as an agent for purposes of complying COPPA's notice and consent requirements." Dkt. 31 ("FTC Br.") p. 7. That acknowledgement is entirely consistent with the FTC's public statements about COPPA: "In the educational context [] schools can consent on behalf of parents to the collection of student personal information – but only if such information is used for a school-authorized educational purpose and not for other commercial purpose." *Id*. p. 6. The FTC does not dispute that the Terms satisfy these conditions. The FTC thus tacitly concedes that *some* agency was created by COPPA.

Plaintiffs and the FTC, however, leave unanswered what the *scope* of that agency is. *See id.* p. 8 ("[t]he scope of any agency relationship is not determined by the parental 'notice and consent process' required by COPPA."). It thus leaves it to other law to define the scope of that agency.

Under established agency principles, "actual authority to perform certain services on a

1  principal's behalf results in implied authority to perform the usual and necessary acts associated
2  with the authorized services." *Knape v. PeopleConnect, Inc.*, 38 F.4th 824, 834 (9th Cir. 2022)
3  (applying Washington agency law); *Avina v. Patenaude & Felix, APC*, No. 20-CV-0166-BAS-
4  MDD, 2021 WL 5990037, at *13 (S.D. Cal. Dec. 17, 2021) (implied authority includes authority
5  "to do what is necessary, usual, and proper to accomplish or perform an agent's express
6  responsibilities"). When licensing technology, it is both "usual and necessary" for there to be terms
7  and conditions of use that extend beyond mere consent to data gathering. Though the FTC is
8  purposefully mute about the actual scope of the agency created by COPPA, it would not be
9  consistent with the purpose of COPPA to say that schools cannot agree to *any* ancillary terms and
10 conditions and each such term must be approved by a poll of the parents. The purpose of allowing
11 the schools to function as intermediaries to provide educational technology services would be lost.
12 As the FTC states: "where some number of parents in a class decline to consent to their children's
13 use of [education technology], schools would face the prospect of foregoing particular services for
14 the entire class or developing a separate mechanism for those students whose parents do not
15 consent." FTC Br. p. 7. To the extent that Plaintiffs and the FTC dispute the scope of the agency,
16 there is disputed question of fact as to what is "usual and necessary" to provide educational
17 technology like that licensed from IXL. In a motion to compel, such disputed questions of fact must
18 be resolved after discovery or in a mini-trial. *Knapke*, 38 F.4th at 833 (holding that scope of agent's
19 authority to agree to arbitration in terms of service could not be resolved without discovery or an
20 evidentiary hearing).

21      In fact, under Plaintiffs' view, software vendors like IXL would be prevented from applying
22 *any* terms of use to their end users, such as restrictions on uploading infringing intellectual property,
23 prohibitions on sublicensing or reverse engineering, or indemnification for willful misuse of the
24 service. And, of course, neither Plaintiffs nor the FTC may take the position that some special, more
25 specific, authority is required to include an arbitration term. 9 U.S.C. § 2; *Buckeye Check Cashing,*
26 *Inc. v. Cardegna,* 546 U.S. 440, 443 (2006) (arbitration agreements must stand on "equal footing"
27 with other contracts).
28

## IV. PLAINTIFFS CONSENTED TO THE TERMS THROUGH THEIR CONTINUED USE OF IXL'S SERVICES

Even if this Court holds that COPPA does not encompass consent to arbitration provisions, Plaintiffs accepted the Terms by allowing their children's continued use of IXL's services with knowledge of the Terms. *See* Mot. 6-7. Plaintiffs do not contest that they saw the Terms before filing their Complaint. *See* Mot. p. 7. Certainly, they would have noticed the arbitration provision on its first page in bold, capital letters. *See id*. pp. 2, 7. And Plaintiffs do not contest that they continued using IXL's services, notwithstanding the Terms' statement to "not use or access (or continue to access) the Service" if a user does "not agree to any of the terms in this Agreement." Terms, § 13. As such, Plaintiffs "manifested consent to the arbitration agreement" by "continuing to use … [IXL's] services," which is "sufficient" to bind them thereto. *Trout v. Comcast Cable Commc'ns, LLC*, No. 17-CV-01912-RS, 2018 WL 4638705, at *4 (N.D. Cal. Mar. 15, 2018); *see also Knapke,* 38 F.4th at 835 (recognizing that that principal may ratify terms and conditions, including arbitration, if it accepts benefits of agreement by later conduct).

### A. Plaintiffs' Challenges to the Scope of this Agreement Fail

Plaintiffs argue (in a footnote) that the Terms' arbitration provision would only be effective as of the date Plaintiffs filed their Complaint, Opp. p. 10, n. 8, but this argument is delegated to the arbitrator. Plaintiffs do not contest that by incorporating JAMS' Optional Expedited Arbitration Procedures, the Terms clearly and unmistakably delegate issues of arbitrability to the arbitrator. *See* Mot. p. 8. This delegation includes the temporal scope of the Term's arbitration provision. *See Moss v. McLucas*, No. 12-CV-2368 BEN KSC, 2013 WL 1680483, at *3 (S.D. Cal. Apr. 16, 2013) (question over temporal application of agreement was delegated by incorporation of JAMS rules).

And even if this Court does consider the arbitration agreement's scope, it would still encompass Plaintiffs' claims. Plaintiffs' "contention that an agreement to arbitrate a dispute must pre-date the actions giving rise to the dispute is misplaced." *Salgado v. Carrows Rests., Inc*., 33 Cal. App. 5th 356, 361–62 (citations omitted). "[A]n arbitration agreement may be applied retroactively to transactions which occurred prior to execution of the arbitration agreement." *Id*. Here—and again, this is really a question for the arbitrator—the arbitration provision applies to

"any dispute with IXL," and encompasses "any claim, dispute, or controversy … arising out of or in connection with or relating to this agreement." Terms, § 22. Nothing in this provision limits its applicability solely to future disputes. *See Jones v. Déjà vu, Inc.*, 419 F. Supp. 2d 1146, 1150 (N.D. Cal. 2005) (arbitration provision encompassing disputes "arising out of this Contract" was not temporally limited); *Trujillo v. Gomez*, 2015 WL 1757870 at *2 (S.D. Cal. Apr. 17, 2015) (same).

Moreover, Plaintiffs allege that IXL's purportedly unlawful and harmful conduct occurs continuously. That means that the arbitration provision need not even apply retroactively to encompass Plaintiffs' claims. *See, e.g.*, Compl. ¶¶ 234 ("IXL has shared and continues to share Plaintiffs' data across its suite of products"); 203 ("The information IXL collects *is being used* in countless ways that infringe upon … privacy rights") (emphasis added); 186 ("IXL constantly surveils children"). Plaintiffs allege that IXL's "liability arises on a recurring basis," so their "cause[s] of action accrue[] each time a wrongful act occurs." *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1104 (C.D. Cal. 2016). Plaintiffs allege that IXL continuously violates their rights accrued through the date they filed their Complaint, and therefore the Terms' arbitration provision applies.

**B.    Plaintiffs' Challenges to this Agreement's Formation Fail**

Plaintiffs challenge the agreement's formation by asserting that the Terms are an unenforceable "browsewrap" agreement and that the agreement is not supported by consideration. All of their arguments fail.

Because Plaintiffs do not contest that they had actual notice of the Terms but continued using IXL's services, their attempt to cast the Terms as a "browsewrap arbitration agreement" that courts "generally don't enforce" is inaccurate. *See* Opp. p. 10. "[C]ourts have consistently enforced browsewrap agreements where the user had actual notice of the agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (collecting cases). Accordingly, Plaintiffs' undisputed use of IXL's services with knowledge of the Terms creates an enforceable agreement.

Plaintiffs' pre-existing consideration argument fares no better. Plaintiffs contend that "any assent" they "provided by 'allowing' their children to continue [using] IXL products lacks consideration" because they were "already legally entitled" to IXL's services through their "fundamental rights to education services." Opp. p. 11. That is, Plaintiffs contend that a right to

education under Kansas law entitles them to IXL's services. But Kansas' Constitution merely directs the legislature to "establish[] and maintain[] public schools." Kan. Const. art. VI, § 1. As Kansas' Supreme Court recognized, this does *not* establish a "fundamental right" to education. *See Unified Sch. Dist. No. 229 v. State*, 256 Kan. 232, 261, 885 P.2d 1170, 1189 (1994); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37 (1973) (public education not a fundamental right under United States Constitution). And even if it did, Plaintiffs do not—and could not—point to any authority giving Plaintiffs a pre-existing right to any specific service, especially one provided by a "private company" like IXL. Opp. p. 11. To the contrary, it is black-letter law that providing a service supports valid consideration. *See J.P. on behalf of R.P. v. Educ. Testing Servs.*, No. CV 20-4502 PSG (PVCX), 2020 WL 10693044, at *8 (C.D. Cal. Oct. 30, 2020) (service of administering and grading advanced placement exams supported consideration).

## V.   PLAINTIFFS' REMAINING CHALLENGES TO ARBITRATION FAIL

Plaintiffs also contend that even if the Parties entered into an agreement to arbitrate, such an agreement is invalid because it purports to ban public injunctive relief and because it is procedurally and substantively unconscionable. *See* Opp. pp. 13-17.[2] Again, however, because the Parties delegated threshold issues of arbitrability to the arbitrator, none of these arguments is properly before this Court. And even if this Court does consider Plaintiffs' arguments, they all fail.

### A.   Plaintiffs' Arguments Are Delegated to the Arbitrator

As explained above, Plaintiffs do not contest that the JAMS Optional Expedited Arbitration Procedures incorporated by IXL's Terms clearly and unmistakably delegate issues of arbitrability to the arbitrator. *See* Mot. 8; *supra* IV.A. Plaintiffs' arguments regarding public injunctive relief and unconscionability are therefore delegated and this Court need not address them.

Plaintiffs contend that their claims for injunctive and equitable relief are not subject to arbitration because it is "unlawful under California law to arbitrate claims for public injunctive

---

[2] A substantial portion of these arguments are on pages that exceed the 15-page length mandated by Judge Rita Lin's Standing Order for Civil Cases, effective May 17, 2024. Accordingly, while IXL addresses these arguments in this reply, this Court need not consider the arguments on pages 16 and 17 of Plaintiffs' brief. *See, e.g., Estes v. Kaiser Found. Health Plan, Inc*., Case No. EDCV 10-807-VAP, 2010 WL 11595713, at *2 n.3 (C.D. Cal. Aug. 6, 2010) (declining to consider excess pages of reply brief that failed to comply with page limits imposed in court's standing order).

relief." Opp. p. 13. Presumably, Plaintiffs are referring to *McGill v. Citibank N.A.*, 2 Cal. 5th 945 (2017), where the California Supreme Court held that arbitration provisions cannot waive a plaintiff's statutory right to seek public injunctive relief. If that is Plaintiffs' argument, it is for the arbitrator to consider and decide. "[C]ourts routinely hold that the resolution of a *McGill* rule challenge is a gateway issue subject to delegation." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 959 (2022) (collecting cases and holding that reference to JAMS rules delegated arbitrability); *Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1176 (N.D. Cal. 2021) ("application of the '*McGill* rule' is a gateway issue that may be delegated to the arbitrator") (collecting cases). In other words, this Court may not deny IXL's motion to compel for a purported *McGill* Rule violation, as it "possesses no power to decide [such] arbitrability issue[s]." *Marselian,* 514 F. Supp. 3d at 1177 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)).

Plaintiffs' unconscionability arguments are likewise for the arbitrator to decide. "[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc.*, at 449. And where, as here, "there has been delegation of gateway authority to the arbitrator, federal courts may not address a challenge to the validity of the arbitration agreement unless the challenge is specific to the delegation provision itself." *Madgrigal v. AT & T Wireless Servs., Inc.*, No. 1:09-CV-0033-OWW-MJS, 2010 WL 5343299, at *4 (E.D. Cal. Dec. 20, 2010) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010)).

It is clear that Plaintiffs' unconscionability arguments are not so tailored. Plaintiffs base their procedural unconscionability arguments on the Terms as a whole, arguing that the Terms constitute a "contract of adhesion" where users have no opportunity to "click on or otherwise review" the Terms. *See* Opp. pp. 14-15. Similarly, to support their substantive unconscionability argument, Plaintiffs challenge IXL's ability to "modify *all* terms" of the agreement. *Id*. pp. 15-16 (emphasis added). Indeed, Plaintiffs cite several provisions of the Terms in their argument, but *none* is from the arbitration clause itself. *See id*. pp. 14-16 (citing the Terms' limitation of liability provision, language from the Terms' preamble, and its notification procedures provision). That necessarily means that Plaintiffs' "arguments all go to the unconscionability of the Terms of

[Service] as a whole, … and thus do not invalidate the arbitrator deciding arbitrability in the first instance pursuant to the delegation clause." *In re BAM Trading Servs. Inc. Sec. Litig.*, No. 22-CV-03461-JSC, 2024 WL 2520432, at *13 (N.D. Cal. May 14, 2024).

### B. Plaintiffs Do Not Seek Public Injunctive Relief[3]

Plaintiffs incorrectly argue that their claims for injunctive or equitable relief are not subject to arbitration because they constitute public injunctive relief, which cannot be arbitrated under California law. *See* Opp. p. 13. Putting aside Plaintiffs' misstatement of the law, Plaintiffs bring no claims for public injunctive relief. At best, their claims are properly characterized as claims for private injunctive relief. A "request for public injunctive relief does not constitute the pursuit of representative claims or relief on behalf of others." *Hodges v. Comcast Cable Comm'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021) (quoting *McGill*, 216 Cal.Rptr.3d 627 at 635-36) (internal punctuation omitted). Rather, public injunctive relief "involves diffuse benefits to the 'general public' as a whole," which "fails to meet the class-action requirement of an ascertainable class." *Id*. Public injunctive relief thus stands "in contrast to private injunctive relief, which provides benefits … to a group of individuals similarly situated to the plaintiff" and is sought "for the benefit of a discrete class of persons." *Id*. at 542-43. Here, Plaintiffs bring claims on behalf of themselves and "all other similarly situated individuals," defined as "[a]ll individuals whose information was intercepted, received, or collected by IXL" during the class period. Compl. ¶¶ 1, 256. Plaintiffs attempt to cast the relief they seek as preventing "violations of children's privacy." Opp. p. 13. But that misses the mark. The relief they seek is limited to individuals who, like Plaintiffs, have used IXL's services. By definition, Plaintiffs are seeking private injunctive relief.[4]

---

[3] As noted in § IV.A, *supra*, the Court lacks the power to consider the merits of Plaintiffs' *McGill* and unconscionability arguments because arbitrability issues are committed to the arbitrator. Sections IV.B and IV.C, *supra*, are offered out of abundance of caution in the event that the court decides (incorrectly) to reach the merits.

[4] If this Court considers Plaintiffs' argument (which would be incorrect to do in the first instance) and holds that they do seek public injunctive relief, this Court should compel arbitration over Plaintiffs' claims that do not seek such relief, and any claims for public injunctive relief can be litigated in this Court after the completion of arbitration. *See Hope v. Early Warning Servs. LLC*, No. SA CV 22-04639-DOC-ADS, 2023 WL 5505020 at *10 (C.D. Cal. July 13, 2023) ("stay[ing] litigation of Plaintiffs' claims for public injunctive relief pending the outcome of arbitration with respect to all other claims for relief"). IXL further reserves all rights and arguments with respect to Plaintiffs' incorrect interpretation of *McBurnie v. RAC Acceptance East, LLC*, 95 F.4th 1188, 1189

### C. The Terms are Not Unconscionable

Plaintiffs contend that the Terms are also procedurally unconscionable because they are a "contract of adhesion" with no opportunity to opt out. Opp. 14-15. Even if true, "the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high." *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013). Plaintiffs make no such showing here.

Plaintiffs assert that the Terms are substantively unconscionable because they ban public injunctive relief, but as explained, Plaintiffs seek no such relief. *See supra*, § V.B. Plaintiffs next contend that IXL's ability to modify its own terms and conditions is unconscionable, but provide no support for their position other than their vague notions of "Plaintiffs' legal right to education services" and "the compulsory nature" of IXL's services. Opp. p. 16. In fact, "the presence of a unilateral modification provision, without more, does not render a separate arbitration clause at all substantively unconscionable." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024). Plaintiffs conclude by asserting that IXL's limitation of liability provision renders the arbitration provision unconscionable. Such provisions, however, "have long been recognized as valid in California." *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 675 (9th Cir. 2018) (limitation of liability provision not substantively unconscionable). Accordingly, Plaintiffs establish no substantive unconscionability, and the Terms are not unconscionable.

### D. Any Unlawful Terms Could Be Severed

Even if any of the provisions Plaintiffs challenge were unlawful, the Terms state that if "any provision of the Agreement is found by a court of competent jurisdiction to be invalid, … the other provisions of the Agreement remain in full force and effect." Terms § 25. If an offending term is "collateral to the main purpose of the contract," that provision can be severed, and the rest of the contract remains intact. *Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 996 (2008); *see also Trout,* 2018 WL 4638705, at *4 ("no reason to conclude that a prohibition on seeking public injunctive relief, if there were one, would not be severable" from arbitration agreement); *Junhan*

---

(9th Cir. March 14, 2024), which does not invalidate any aspect of the Terms. *See DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1158 (9th Cir. 2021).

*Jeong v. Nexo Cap. Inc.*, 2023 WL 2717255 at *10 (N.D. Cal. Mar. 29, 2023) (severing unlawful provision from arbitration agreement). The terms Plaintiffs challenge are peripheral to the arbitration provision, and Plaintiffs make no argument to the contrary.

## VI. PLAINTIFFS' CLAIMS FALL WITHIN THE SCOPE OF THE AGREEMENT

In arguing that their claims do not fall within the scope of the arbitration agreement, Plaintiffs merely re-hash their arguments as to the agreement's *formation*, which, as explained above, all fail. *See* Opp. p. 12; *supra* § IV.B. They do not, and could not, argue that their claims arising from their children's use of IXL's services do not fall within the scope of the Terms, which encompasses "any claim, dispute, or controversy … arising out of or in connection with or relating to this agreement." Mot. p. 9. And, again, the Terms' incorporation of the JAMS rules delegates issues of arbitrability to the arbitrator. Accordingly, the arbitrator must decide the question of whether the arbitration agreement encompasses Plaintiffs' claims. *Id*. p. 8.

## VII. CONCLUSION

For all of the foregoing reasons, the Court should compel arbitration and stay this case.

Dated: September 9, 2024                    ORRICK, HERRINGTON & SUTCLIFFE

/s/ *David P. Fuad*
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant IXL Learning, Inc.*