1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EDTECH LAW CENTER PLLC**
Julie Liddell (*pro hac vice*)
P.O. Box 300488
Austin, TX 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**
Ryan J. McGee (*pro hac vice*)
John A. Yanchunis (*pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
rmcgee@forthepeople.com
jyanchunis@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S., AMY WARREN, on behalf of herself and her minor child B.W., and KIMBERLY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>IXL LEARNING, INC.<br><br>    Defendant. | Civ. No. 3:24-cv-02724-RFL<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT IXL LEARNING, INC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: October 22, 2024<br>Time: 10:00 a.m.<br>Court: Room 15, 18th Floor<br>Judge: Hon. Rita F. Lin |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................... 1

II.   ARGUMENT ............................................................................................................. 1

  A.  IXL's Radical Involuntary-Agency Theory of Consent Is Not Supported By Any Law. ...................... 1

    1.  IXL misrepresents COPPA to fabricate a defense. ................................................ 1

    2.  FERPA is inapplicable to Plaintiffs' claims and IXL's purported defenses. ................................ 4

    3.  Kansas state law does not support IXL's argument. ................................................ 6

    4.  California's Privacy Laws Do Not Support IXL's Arguments ................................................ 6

  B.  Plaintiffs State a Claim Under the FWA. ................................................................ 8

    1.  The party exception does not apply. ................................................................ 8

    2.  Plaintiffs allege interception. ...................................................................... 9

    3.  IXL lacked effective consent to take and use Plaintiffs' data. ................................ 10

  C.  Plaintiffs State a Claim Under CIPA. ................................................................ 10

    1.  The presumption against exterritoriality does not apply because the alleged misconduct occurred in California by a California resident. ................................ 10

    2.  IXL fails to demonstrate that California law should not apply. ................................ 11

    3.  Plaintiffs' CIPA claim does not fail for other reasons. ........................................ 12

  D.  Plaintiffs State Claims Under Applicable Privacy Laws. ............................................ 12

  E.  Plaintiffs State a Claim Under CDAFA and UCL ................................................ 13

    1.  Plaintiffs allege economic harm. ................................................................ 13

    2.  IXL's data practices are not consensual. ........................................................ 14

    3.  CDAFA applies to Plaintiffs' allegations. ...................................................... 14

III.  CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*A.B. by & through Turner v. Google LLC*,
 2024 WL 3052969 (N.D. Cal. June 18, 2024) .................................................................. 14

*Alameda Health Sys. v. Centers for Medicare & Medicaid Services*,
 287 F. Supp. 3d 896 (N.D. Cal. 2017) ............................................................................... 2

*Brown v. Google LLC*,
 525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................................ 9, 15

*Brown v. Google LLC*,
 685 F. Supp. 3d 909 (N.D. Cal. 2023) .............................................................................. 14

*BRV, Inc. v. Superior Court*,
 143 Cal. App. 4th 742 (Cal. Ct. App. 2006) ........................................................... 4, 5, 7, 12

*Cody v. Boscov's, Inc.*,
 2024 WL 2228973 (C.D. Cal. May 6, 2024) ..................................................................... 10

*Collazo v. Wen by Chaz Dean, Inc.*,
 2015 WL 4398559 (C.D. Cal. July 17, 2015) .................................................................... 11

*D'Angelo v. FCA US, LLC*,
 2024 WL 1625771 (S.D. Cal. Mar. 28, 2024) ..................................................................... 9

*Diva Limousine, Ltd. v. Uber Technologies, Inc.*,
 392 F. Supp. 3d 1074 (N.D. Cal. 2019) ............................................................................ 11

*Ehret v. Uber Technologies, Inc.*,
 68 F. Supp. 3d 1121 (N.D. Cal. 2014) .............................................................................. 10

*El Comite Para El Bienestar de Earlimart v. Warmerdam*,
 539 F.3d 1062 (9th Cir. 2008) ........................................................................................... 2

*Flores v. Evergreen at San Diego, LLC*,
 148 Cal. App. 4th 581 (Cal. Ct. App. 2007) ....................................................................... 3

*Galderma Laboratories, L.P. v. Revance Therapeutics, Inc.*,
 2024 WL 3008860 (C.D. Cal. Mar. 29, 2024) .................................................................. 15

*Henry Schein, Inc. v. Cook*,
 2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ...................................................................... 15

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................ 15

*In re Facebook, Inc. Internet Tracking Litigation*,
    956 F.3d 589 (9th Cir. 2020) ....................................................... 8, 9, 13, 14

*In re Google Assistant Privacy Litigation*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................ 13

*In re Meta Pixel Healthcare Litigation*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) .................................................................. 9

*In re Meta Pixel Tax Filing Cases*,
    2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ...................................................... 14

*In re Vizio, Inc., Consumer Privacy Litigation*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017)............................................................. 9, 10

*Kellman v. Spokeo, Inc.*,
    599 F. Supp. 3d 877 (N.D. Cal. 2022) ................................................................ 12

*Licea v. American Eagle Outfitters, Inc.*,
    659 F. Supp. 3d 1072 (C.D. Cal. 2023)............................................................... 10

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ...................................................................... 11, 12

*Mirabelli v. Olson*,
    691 F. Supp. 3d 1197 (S.D. Cal. 2023) ................................................................ 4

*NovelPoster v. Javitch Canfield Group*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ................................................................ 10

*Peabody Coal Co. v. Director, Office of Workers' Compensation Programs*,
    746 F.3d 1119 (9th Cir. 2014) ............................................................................. 2

*People ex rel. DuFauchard v. U.S. Financial Management, Inc.*,
    169 Cal. App. 4th 1502 (Cal. Ct. App. 2009)...................................................... 10

*R.C. v. Walgreen Co.*,
    --- F. Supp. 3d ---, 2024 WL 2263395 (N.D. Cal. May 9, 2024) ........................... 9

*River Runners for Wilderness v. Martin*,
    593 F.3d 1064 (9th Cir. 2010) ............................................................................. 2

*Rogers v. Roseville SH, LLC,*
    75 Cal. App. 5th 1065 (Cal. Ct. App. 2022) .......................................................... 3

*Safer Chemicals, Healthy Fams. v. U.S. Environmental Protection Agency,*
    943 F.3d 397 (9th Cir. 2019) ................................................................................ 2

*Smith v. Google, LLC,*
    2024 WL 2808270 (N.D. Cal. June 3, 2024) ......................................................... 9

*Valentine v. Plum Healthcare Group, LLC,*
    37 Cal. App. 5th 1076 (Cal. Ct. App. 2019) .......................................................... 3

*Vigil v. Leavitt,*
    381 F.3d 826 (9th Cir. 2004) ................................................................................ 2

*Wang v. OCZ Technology Group, Inc.,*
    276 F.R.D. 618 (N.D. Cal. 2011) .................................................................... 10, 11

*Washington Mutual Bank, FA v. Superior Court,*
    15 P.3d 1071 (2001) ............................................................................................ 11

*Williams v. What If Holdings, LLC,*
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ..................................................... 8

*United States v. Christensen,*
    828 F. 3d 763 (9th Cir. 2015) ............................................................................. 15

**Statutes & Other Materials**                                                       **Page(s)**

5 U.S.C. § 553(c) .................................................................................................... 2

34 C.F.R. § 99.30(a) ............................................................................................... 5

34 C.F.R. § 99.31(a)(1)(i) .................................................................................... 5–6

120 Cong. Rec. 39,862 (1974) .......................................................................... 5, 12

144 Cong. Rec. S8483 (daily ed. July 17, 1998) .................................................... 2

California Educational Code § 49060(a) ................................................................. 7

California Educational Code § 49073.1(a)(2) .......................................................... 7

California Comprehensive Computer Data Access and Fraud Act,
    Cal. Penal Code § 502, *et al.* .............................................................................. 14

California's Student Online Personal Information Protection Act ("SOPIPA"),
Cal. Bus. & Prof. Code §§ 22584, *et seq.* ........................................................... 6–7

Children's Online Privacy Protection Act,
15 U.S.C. §§ 6501, *et seq.* .................................................................................*passim*

Children's Online Privacy Protection Rule,
16 CFR part 312 ....................................................................................................... 2

Children's Online Privacy Protection Rule
64 Fed. Reg. 59888, 59903 (1999) ....................................................................... 2, 3

Children's Online Privacy Protection Rule, Statement of Basis and Purpose,
89 Fed. Reg. 2034 (2024) ...................................................................................... 2, 3

Electronic Communications Privacy Act of 1986,
18 U.S.C. § 2511(2)(d) ........................................................................................... 8, 9

Family Educational Rights and Privacy Act,
20 U.S.C. § 1232g .................................................................................................. 4, 5

Kansas Statute Annotated § 72-6314(c) ....................................................................... 6

Restatement 3d of Agency, § 3.01 ................................................................................. 3

## I.    INTRODUCTION

The allegations in this case describe privacy and property rights violations by Defendant IXL Learning, Inc. ("IXL") against students and their parents ("Plaintiffs") in the compulsory setting of K–12 education. Consistent with its invasive data practices, IXL's motion to dismiss Plaintiffs' complaint ("Motion" or "Mot.") treats children as a resource to be mined and exploited for profit. It argues that laws enacted to enhance children's privacy actually undermine their privacy—specifically by letting a private company take and use any data from them and their parents by any means, so long as those acts are performed under the auspices of an agreement with a school. That is a radical position unsupported by any law, especially laws enacted to protect children's personal information and parents' rights over that information. Further, IXL's arguments are replete with fact questions that may not be decided at this stage. Its Motion should thus be denied in its entirety.

## II.    ARGUMENT

### A.    IXL's Radical Involuntary-Agency Theory of Consent Is Not Supported By Any Law.

Plaintiffs' arguments are based primarily on the fact that IXL never obtained their consent to take or use their personal information. IXL does not dispute that fact; rather, IXL argues that it is "immaterial" because federal and state privacy laws purportedly absolve IXL of its duty to obtain their consent. Mot. at 5. But IXL mischaracterizes the text, scope, and purpose of those laws and fails to distinguish them from non-binding, extratextual agency statements.

#### 1.    IXL misrepresents COPPA to fabricate a defense.

IXL first argues that the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq.*, provides a complete defense to Plaintiffs' claims by allowing schools to consent to IXL's collection of any data from students without providing notice to parents or obtaining consent from them. IXL arrives at this conclusion by flagrantly misrepresenting the COPPA statute and the FTC's implementing COPPA rule ("Rule"), arguing that they "allow[] schools to consent to a provider's collection of student data on behalf of the students' parents when the data is used for an educational purpose." Mot. at 1. But COPPA *does not even mention schools*. The Court may therefore

easily reject IXL's argument that COPPA authorizes schools to consent to the collection and use of children's data without parental involvement—or, as IXL suggests, even over parents' objections.

Unable to ground its arguments in the law itself, IXL misrepresents what the law is. This time, IXL mischaracterizes non-binding agency statements about COPPA as being part of COPPA itself:

> Under COPPA, 15 U.S.C. §§ 6501, *et seq*.; 16 CFR part 312, schools may "act[] as intermediaries between [education technology providers] and parents" and "serv[e] as the parents' agent in the [notice and consent] process" when the provider's services are used for an educational purpose. 64 Fed. Reg. 59888, 59903 (1999).

Mot. at 3. But IXL's selectively quoted language appears, not in COPPA, but in the Rule's Statement of Basis and Purpose ("SBP"). The SBP—or the "preamble" to the Rule, *see* 89 Fed. Reg. 2034 (2024)—was issued by the FTC in 1999 as part of the initial rulemaking process following COPPA's enactment. *See* 64 Fed. Reg. 59888, 59903 (1999); *see also* 5 U.S.C. § 553(c).

The SBP is not part of the COPPA statute or Rule, nor does it have the force of law. *See Peabody Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 746 F.3d 1119, 1125 (9th Cir. 2014) ("A regulatory preamble . . . is not legally binding."); *River Runners for Wilderness v. Martin*, 593 F.3d 1064, 1071–72 (9th Cir. 2010). Nor does the SBP modify or otherwise affect COPPA. *See Alameda Health Sys. v. Centers for Medicare & Medicaid Servs*., 287 F. Supp. 3d 896, 917 (N.D. Cal. 2017). Nor is the SBP entitled to judicial deference. *See Vigil v. Leavitt*, 381 F.3d 826, 835 (9th Cir. 2004). In fact, such commentary may not even be *considered* in the absence of regulatory ambiguity. *Safer Chemicals, Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 420 (9th Cir. 2019); *El Comite Para El Bienestar de Earlimart v. Warmerdam*, 539 F.3d 1062, 1070 (9th Cir. 2008). IXL cites no ambiguity in COPPA, and none exists: COPPA unambiguously requires a company to obtain parental consent before taking children's personal information. *See* 15 U.S.C. § 6502(b)(1)(A)(ii); 16 C.F.R. § 312.5(a)(1). Indeed, that is its entire purpose. *See* 144 Cong. Rec. S8483 (daily ed. July 17, 1998) (statement of Sen. Bryan, explaining that COPPA provides "safeguards against the online collecting of information from children without a parent's knowledge or consent.").

Further, even if the SBP could be considered, its text does not support IXL's argument. IXL (again) strays from the law, this time by omitting vital context from the language it selectively quotes.

In full, the SBP comment IXL cites states only that "the Rule *does not preclude* schools from acting as intermediaries between operators and parents in the notice and consent process, or from serving as parents' agent in the process." *See* 64 Fed. Reg. at 59903 (emphasis added). Thus, far from imbuing schools with any new authority—let alone authority at the expense of parents' rights under COPPA or any other law—the SBP comment merely explains that the Rule does not *abridge* any existing rights between schools and parents, including the potential creation of an agency relationship between them. But, as basic agency law compels, any such relationship would require an express agreement between the school (as agent) and parent (as principal). *See*, *e.g.*, Restat. 3d of Agency, § 3.01. Thus, had IXL alleged the existence of an actual agency relationship, it would have the burden of proving that a school had authority to act as a parent's agent for that purpose—which would require a showing of words or conduct by the *parent*, not just the school. *Rogers v. Roseville SH, LLC*, 75 Cal. App. 5th 1065, 1074–75 (Cal. Ct. App. 2022); *Flores v. Evergreen at San Diego*, *LLC*, 148 Cal. App. 4th 581, 588 (Cal. Ct. App. 2007). An agent's beliefs and representations about his purported authority alone cannot bind a principal, even under a theory of ostensible agency: "To hold otherwise would give any agent, not the authority, but the *naked power* to bind his principal to any contract within the general scope of his duties, however fantastic or detrimental to the principal's interest such contract may be." *Valentine v. Plum Healthcare Grp., LLC*, 37 Cal. App. 5th 1076, 1087 (Cal. Ct. App. 2019) (cleaned up, emphasis added). Nothing in COPPA grants schools naked power to bind parents or their children to contracts with IXL.

IXL continues, (again) misrepresenting that the FTC "recently articulated [a] basis for this rule." Mot. at 3. But the SBP is not a "rule," as previously explained, and the quoted statements appear in a notice of *proposed* rulemaking—they do not pertain to any existing rule. *See* 89 Fed. Reg. 2034 (2024). Finally, IXL contends that, "under COPPA, schools 'may act as the parent's agent and can consent under COPPA to the collection of [student] information on the parent's behalf.'" Mot. at 9. Yet again, IXL does not cite COPPA but instead, this time, an FTC staff blog post.

A comment in a regulatory preamble, a notice of proposed rulemaking, and a blog post: none

of IXL's cited authority may even be considered by the Court. And none of it refutes the obvious: COPPA does not support any of IXL's arguments that Plaintiffs have failed to state a claim based on IXL's nonconsensual, secret collection and use of their data.[1]

### 2.    FERPA is inapplicable to Plaintiffs' claims and IXL's purported defenses.

#### a.    FERPA does not provide a defense against claims for violations of other state and federal laws.

IXL next invokes the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, as a defense to Plaintiffs' allegations. Specifically, IXL argues that FERPA "recognizes a school's authority to authorize educational technology providers to access student data." Mot. at 3. FERPA, however, is wholly inapplicable to Plaintiffs' claims: FERPA regulates *schools*, not private companies. Further, it may only be enforced by the Department of Education. *Id*. at § 1232g(f). It provides only one enforcement mechanism—the withholding of federal funding from schools if they disclose student education records without written parental consent. *Id*.; *see also BRV, Inc. v. Superior Ct*., 143 Cal. App. 4th 742, 752 (Cal. Ct. App. 2006). Nothing in FERPA purports to directly regulate the conduct of school vendors, much less provide them with a defense against claims brought under other laws.

Far from abridging Plaintiffs' rights, FERPA explicitly safeguards children's privacy in their own information in education records, as well as parents' rights over that information. Indeed, "[t]he constitutional right of parents to direct their child's education is [] *protected* through Congressional policy, as *exemplified* by [FERPA]." *Mirabelli v. Olson*, 691 F. Supp. 3d 1197, 1211 (S.D. Cal. 2023) (emphasis added). IXL's proposed interpretation of FERPA would grossly undermine the express purpose of that statute: Congress enacted FERPA to *codify* children's and parents' expectation of privacy in their own education records, specifically, "to assure parents of students . . . access to their educational records and to protect such individuals' rights to privacy by limiting the transferability of

---

[1] Even if IXL's involuntary-agency theory of consent had any basis in the law, on a motion to dismiss, the defendant has the burden to show consent. *See*, *e.g*., *Doe v. FullStory, Inc*., No. 23-CV-00059, 2024 WL 188101, at *2 (N.D. Cal. Jan. 17, 2024). IXL has not shown, or even alleged, that any school actually consented to any of its data practices or actually acted as parent's agent for any such purpose.

their records without their consent," which, with few exceptions, requires "written parental consent prior to releasing students' records or information derived therefrom. *BRV*, 143 Cal. App. 4th at 751–52 (cleaned up); *see also* 120 Cong. Rec. 39,862 (1974) (joint statement of Sens. Pell and Buckley explaining major amendments to FERPA).

No court has ever held that FERPA preempts state or federal laws that are more protective of students' information. IXL implicitly asks this Court to be the first, though notably it stops short of expressly making the argument. Put simply: FERPA broadly prohibits schools from disclosing student education records to third parties, including IXL and its affiliates and partners. FERPA does *not* grant schools sweeping authority to agree to invasive data practices on behalf of students and their parents without notice or consent—or even, as IXL's argument implies, over parents' express objections.

> **b.    Even if FERPA were relevant to the analysis of Plaintiffs' claims, IXL does not meet the school-official exception to parental consent.**

Even accepting IXL's argument—that the "school official" exception to FERPA provides a private companies like IXL a defense against, and preempts other, more privacy-protective law—IXL does not meet that exception. *See* Mot. at 3. That exception permits a school to "release [] education records" without parental consent to "other school officials, including teachers within the educational institution or local educational agency, who have been determined by such agency or institution to have legitimate educational interests, including the educational interests of the child for whom consent would otherwise be required[.]" 20 U.S.C. § 1232g(b)(1)(A).

While it is possible for a contractor to qualify as a "school official" under strictly limited circumstances, IXL simply asserts that it is a school official without showing how it meets that definition. To be a school official, however, IXL must show that it: (1) performs an institutional service or function for which the school would otherwise use employees; (2) is under the direct control of the school as to the use and maintenance of education records; and (3) does not redisclose any personally identifiable information from education records without prior parental consent. *See* 34 C.F.R. §§ 99.30(a), 99.31(a)(1)(i). Further, a school must ensure those receiving records under this exception obtain access only to records in which they have legitimate educational interests. *Id*. §

99.31(a)(1)(ii). IXL fails on each count. Taking Plaintiffs' allegations as true, (1) schools do not control the maintenance and use of the data IXL collects from children and their parents, including education records, Compl. ¶¶ 124–136; (2) IXL does not perform an institutional service or function for which the school would otherwise use employees, *id*. ¶¶ 33–36, 46–75; (3) IXL collects data in excess of student education records, *id*. ¶¶ 32, 35; (4) IXL collects and uses data in excess of "legitimate educational interests," *id.* ¶¶ 46–75; and (5) IXL rediscloses personal information to many third parties without parental consent, *id*. ¶¶ 44–48, 61–65, 76, 78, 85, 118–150. IXL cannot avoid liability by invoking an exception that it does not meet for a student-privacy law that does not apply.

Once again, IXL seeks to transform a law enacted as a shield to protect children's privacy into a sword for destroying it. Nothing supports such a perverse interpretation of FERPA.

### 3. Kansas state law does not support IXL's argument.

IXL next contends that a Kansas law relieves a school technology vendor from having to obtain parental consent before collecting and using student data. Yet again, IXL selectively and misleadingly quotes from a Kansas statute as providing that "'[s]tudent data may be disclosed […] to a service provider of a state agency, educational agency or school who is engaged to perform a function of instruction.'" Mot. at 4 (quoting KSA 72-6314(c)). IXL omits that this disclosure is permitted only if there is a detailed data-sharing agreement between the educational agency and service provider that satisfies a number of strict requirements. And IXL does not produce any such agreement—or even allege that one exists. Even still, Plaintiffs' complaint details how IXL neither discloses nor provides access to this data. Compl. ¶¶ 244–46. This provision thus does not support IXL's arguments.

### 4. California's Privacy Laws Do Not Support IXL's Arguments.

#### a. SOPIPA does not obviate the need for parental consent.

Continuing its pattern of misrepresenting federal and state law, IXL next falsely contends that California's Student Online Personal Information Protection Act ("SOPIPA"), Cal. Bus. & Prof. Code §§ 22584, *et seq.*, relieves IXL of its duty to obtain parental consent before it collects and uses

children's information. Mot. at 4, 9, 10. IXL (again) selectively quotes from that law as "allowing disclosure of student information '[i]n furtherance of the K-12 purpose of the site, service, or application'" while omitting essential context in order to misconstrue the meaning and purpose of SOPIPA. *Id.* at 4 (quoting Cal. Bus. & Prof. Code § 22584(b)(4)(A)).

SOPIPA says *nothing* about consent, and it certainly does not state that parental consent is not required before a company make take or use their child's data. Rather, as the entirety of the statute makes clear, SOPIPA is a privacy law that was enacted to provide *greater* protection of student data by limiting its use by private companies. *See generally* Cal. Bus. & Prof. Code § 22584. Specifically, SOPIPA was designed to put "[children's] personal information above private profit" by "clos[ing] loopholes that can be exploited by Internet companies for profit through collecting and sharing students' personal information obtained through online services marketed to schools."[2] IXL attempts to convert SOPIPA into the very type of internet-company loophole that the statute was expressly enacted to *eliminate*. The Court should reject IXL's pernicious efforts.

### b. California's education-records privacy law does not eliminate the need for companies to obtain parental consent.

IXL next falsely contends California's law governing schools' use of student education records relieves it of its burden to obtain parental consent. Mot. at 4. IXL (again) selectively plucks language from that law, entirely devoid of context, as permitting a school to "'enter into a contract with a third party . . . to provide digital educational software that authorizes a third-party provider of digital educational software to access, store, and use pupil records . . . .'" *Id.* (quoting Cal. Educ. Code § 49073.1(a)(2)). The law IXL cites is California's "statutory response to Congress's adoption of [FERPA]." *BRV*, 143 Cal. App. 4th at 751. "The California Legislature adopted a statutory scheme to eliminate potential conflicts between FERPA and state law . . . ." *Id.* at 751; *see also* Cal. Edu. Code § 49060(a). IXL's arguments relying on the California implementation of FERPA fail for the same reasons as its arguments about FERPA fail, as discussed in section II.A.2., *supra*.

---

[2]    Senate    Bill    Analysis,    SB    1177    (introduced    Feb.    20,    2014); https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201320140SB1177.

1
2
3
4

In sum, IXL grossly mischaracterizes and contorts a host of federal and state laws in an effort to avoid liability for its nonconsensual data collection and use practices. But IXL fails to cite a single case in which a company has even attempted such gymnastics, let alone a decision permitting it. The Court should reject IXL's invitation to be the first.

5

**B.    Plaintiffs State a Claim Under the FWA.**

6
7

IXL argues that the FWA claim fails because: (1) IXL is a party to the communications; (2) Plaintiffs fail to allege interception; and (3) IXL had Plaintiffs' consent. IXL is wrong on each.

8

**1.    The party exception does not apply.**

9
10
11

IXL first invokes the so-called "party exception" to the Wiretap Act, 18 U.S.C. § 2511(2)(d), which IXL suggests applies here because it is a party to all communications by Plaintiffs with its website. It does not. Under IXL's interpretation, the party exception would swallow the rule.

12
13
14
15
16
17
18
19
20
21
22
23
24

"The party exception must be considered in the technical context of this case." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). And the fact that IXL was able to access a communication does not mean that IXL was the intended recipient. Indeed, Plaintiffs clearly allege that IXL was not an authorized party to the communications on which the Wiretap Act claim is based. Compl. at ¶ 276. And Plaintiffs likewise allege that IXL has embedded numerous tracking mechanisms on users' computers and web browsers, allowing IXL and third parties to track users' browsing histories and correlate them with user, device, browser IDs—and ultimately people. *Id.* at ¶ 35, 142, 146, 154–156, 187, 199, 223, 242. The party exception does not apply to companies that embed such mechanisms for the purposes of causing a browser or device to redirect communications. *Facebook Tracking*, 956 F.3d at 608. Plaintiffs' allegations are a far cry from the communications alleged in *Williams v. What If Holdings, LLC*, which involved "four seconds of plaintiff's interaction" with a single page on the defendant's website: an interaction consisting of confirming user-inputted information from prior pages by checking a box. 2022 WL 17869275, *3 (N.D. Cal. Dec. 22, 2022).

25
26
27

Even if IXL could qualify as a party, Plaintiffs have alleged that IXL intercepted the communications for an unlawful purpose. *See* 18 U.S.C. § 2511(2)(d) ("It shall not be

28

unlawful . . . unless such communication is intercepted for the purpose of committing any criminal or tortious act"). When IXL intercepts Plaintiffs' communications, it does so in service of the several other tortious acts, including, as Plaintiffs allege, invading Plaintiffs' privacy, violating CDAFA and the UCL, and procuring unjust enrichment. *See R.C. v. Walgreen Co.*, --- F. Supp. 3d ---, 2024 WL 2263395 at *15 (N.D. Cal. May 9, 2024) (crime-tort exception can apply based on allegations that defendant's conduct violated state law, including state privacy claims) (citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021), and *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022)).

Finally, Plaintiffs' wiretap claims can also proceed based on their allegations that IXL has intercepted their communications with other websites. IXL concedes it is not a party to these communications, arguing only that the allegations are insufficiently detailed, but courts regularly reject similar efforts.[3] *Smith v. Google, LLC*, 2024 WL 2808270, *5 (N.D. Cal. June 3, 2024); *D'Angelo v. FCA US, LLC*, 2024 WL 1625771, *11 (S.D. Cal. Mar. 28, 2024).

### 2. Plaintiffs allege interception.

IXL has not denied the facts of Plaintiffs' case—that it is accessing information from Plaintiffs and others nationwide.[4] Rather, IXL suggests that Plaintiffs have not alleged sufficient detail to survive dismissal. IXL parrots that same defense with respect to interception, arguing that Plaintiffs' allegations are not sufficiently clear. Mot. at 8. However, IXL's case law is clear that it is not *whether* accessing the information imputes liability, but instead *which* claim *captures* that liability: "Access to information maintained in electronic storage is governed by the Stored Communications Act, while the Wiretap Act regulates access to information acquired contemporaneously to its transmission." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1226 (C.D. Cal. 2017).

The complaint provides the requisite notice of IXL's liability in this case with respect to the

---

[3] Although *Smith* said this while analyzing CIPA claims, courts perform the same analysis for claims under Section 631 and 18 U.S.C. § 2511(2)(d). *See Facebook Tracking.*, 956 F.3d at 607.
[4] *See, e.g.*, Mot. at 2 (arguing that its "data collection practices are perfectly legal" while erroneously relying on a misapplication of COPPA and FERPA to excuse liability).

wiretap acts. Compl. ¶¶ 35–36 (IXL using technologies to capture non-student data); ¶¶ 44–45 (using third-party data-sharing agreements to capture data); ¶¶ 58–60 (using platforms to gather and compile data for use with unauthorized third parties); ¶ (describing surveillance technology agreements with Canvas by Instructure, Inc., Schoology by PowerSchool, LLC, and other companies); ¶¶ 65–66 (allowing unauthorized third parties to access troves of data from users and the associated devices); ¶¶ 151–156 (detailing how the IXL website enables extensive data mining). That Plaintiffs could not provide extensive detail makes Plaintiffs' point: IXL denied Plaintiffs that access. *Id.* at ¶¶ 244–46.

Nevertheless, should the Court find the interception allegations insufficient, the law is clear that amendment should be permitted. *Vizio*, 238 F. Supp. 3d at 1226 (granting leave to amend); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) (same); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) (same); *cf. Cody v. Boscov's, Inc.*, 2024 WL 2228973, at *3 (C.D. Cal. May 6, 2024) (denying leave after third amendment).

### 3.    IXL lacked effective consent to take and use Plaintiffs' data.

For the reasons discussed in section II.A., *supra*, IXL's novel argument that theoretical school consent is a valid substitute for actual, informed, voluntary parental consent to the collection and use of their and their children's personal information under federal and state law fails. Mot. at 9–11.

## C.    Plaintiffs State a Claim Under CIPA.

### 1.    The presumption against exterritoriality does not apply because the alleged misconduct occurred in California by a California resident.

IXL first argues that California law should not apply because the Plaintiffs are not California residents, thus triggering the presumption against extraterritorial application of California law. Mot. at 11. But its argument misstates the law. That the injury was suffered by an out-of-state plaintiff does not alone trigger application of the presumption against extraterritoriality. *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 629 (N.D. Cal. 2011). Rather, the presumption applies only when the alleged *conduct* occurs outside of California. *Id.*; *see also Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131 (N.D. Cal. 2014); *People ex rel. DuFauchard v. U.S. Fin. Mgmt., Inc.*, 169 Cal. App. 4th 1502, 1517–18 (Cal. Ct. App. 2009). Extraterritoriality is not implicated where out-of-state plaintiffs

allege misconduct by a California defendant in California that causes harm out of state. *Diva Limousine, Ltd. v. Uber Techs., Inc.*, 392 F. Supp. 3d 1074, 1094 (N.D. Cal. 2019).

Although the Plaintiffs are not California residents and were harmed out of state, IXL's headquarters are located in California, it does business in California, all relevant decisions were made in California, and Plaintiffs' injuries emanate from IXL's conduct in California. Compl. ¶¶ 3, 4, 13, 264, 285. Thus, the alleged conduct supporting Plaintiffs' claims occurred in California. That the injury was suffered out of state is not dispositive. *See Wang*, 276 F.R.D. at 630 (applying California law where misconduct alleged was "conceived, reviewed, approved or otherwise controlled from [defendant's] headquarters in California"); *Collazo v. Wen by Chaz Dean, Inc.*, 2015 WL 4398559, at **3–4 (C.D. Cal. July 17, 2015). In fact, IXL's own Terms of Service calls for application of California law, demonstrating that IXL itself believes that California law should govern the instant dispute as to all Class members. *Id.* ¶ 264. IXL may not selectively and unilaterally decide when it may avail itself of California law, and avoid that same law as IXL sees fit.

### 2.    IXL fails to demonstrate that California law should not apply.

IXL next contends that CIPA should not govern Plaintiffs' claims under applicable choice-of-law considerations. Mot. at 11–12. In a class action, the plaintiff bears the initial burden of showing that California has "significant contact or significant aggregation of contacts" to the claims of each class member. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012). The burden then shifts to the defendant to show that foreign law, rather than California law, should apply to class claims under a three-step test, which asks: (1) are the laws at issue materially different; (2) does any material difference create a true conflict; and (3) which state's interest would be more impaired if the other state's law was applied. *Id.* at 590. Only when one step is met does a court move to the next step. *See Washington Mut. Bank, FA v. Superior Court*, 15 P.3d 1071, 1080–81 (2001). A separate inquiry must be made regarding each issue. *Id.* at 1081. Further, the choice-of-law analysis is generally conducted "at class certification, not the pleadings stage," especially when discovery is necessary to clarify relevant fact issues such as the location of relevant decisionmakers and data

processes alleged. *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 894 (N.D. Cal. 2022).

Because Plaintiffs have alleged facts demonstrating sufficient contacts between California and Plaintiffs' claims, as previously discussed, IXL has the burden to prove that California law should not apply. *See Mazza*, 666 F.3d at 590. However, IXL fails to even *identify* the law it contends should apply instead of CIPA, let alone demonstrate that it should apply under the three-part test. Instead, IXL states only generally that courts have recognized that "there are material differences between CIPA and the wiretapping statutes of the other 49 states." Mot. at 11. Such a conclusory statement does not satisfy IXL's burden to show that a different law should govern a company headquartered and doing business in California with Terms of Services requiring the application of California law.

### 3. Plaintiffs' CIPA claim does not fail for other reasons.

IXL argues that Plaintiffs' CIPA claims fail for the same reasons as their FWA claims, as discussed in section II.B, *supra*. Mot. at 12.

### D. Plaintiffs State Claims Under Applicable Privacy Laws.

IXL argues that Plaintiffs fail to allege that IXL intruded on a protected privacy interest. It contends that the complaint "contains only conclusory allegations as to what, when, and to whom any private information was disclosed." Mot. at 12–13. But Plaintiffs allege numerous categories of information collected by IXL without effective consent. Compl. ¶¶ 32, 47, 69, 199, 222. And IXL cites no law requiring that Plaintiffs allege specifically when that information was collected or with whom it was shared; Plaintiffs do not allege fraud, thus Rule 9 does not apply. Further, only IXL has access to that information, which it has refused to share with Plaintiffs. *Id*. ¶¶ 30, 31, 240, 241, 245. IXL cannot avoid liability by intentionally obscuring the details of its conduct.

Further, as to personal information contained in education records, the very existence of FERPA refutes IXL's argument that Plaintiffs have no protected privacy interest in that information. As explained in section II.A.2.a, *supra*, Congress enacted FERPA for the express purpose of codifying that privacy right. *See BRV*, 143 Cal. App. 4th at 751–52; 120 Cong. Rec. 39,862. Similarly, COPPA codifies a child's right to privacy in her or his own personal information, which the statute and rule

define expansively. 15 U.S.C. § 6501(8); 16 C.F.R. § 312.2. These laws categorically demonstrate the privacy interest that IXL continues to invade without hesitation.

IXL next contends that Plaintiffs do not plausibly allege that IXL's purported conduct is offensive because "the collection and sale of data is not offensive as a matter of law." Mot at 13. But the cases on which it relies are inapposite, as they do not involve: (1) children; (2) in compulsory education environments; (3) whose data (including non-technical data) was taken through their use of school-provided services; (4) was shared with untold third parties; (5) where parents had no knowledge; and (6) where parents did not provide consent—facts that are each critical to the analysis of Plaintiffs' claims. IXL cites no authority that holds that *any and all* collection of use of *everyone's* data is not offensive as a matter of law, and none exists. Rather, "determining whether an intrusion is highly offensive requires a fact-intensive inquiry that examine[s] all of the surrounding circumstances." *In re Google Assistant Priv. Litig*., 457 F. Supp. 3d 797, 831 (N.D. Cal. 2020). This inquiry cannot be resolved at the motion to dismiss stage when there are open factual questions. *Id*.; *see also Facebook Tracking*, 956 F.3d at 606. And although IXL contends that surreptitious data collection has become "commonplace," these practices are "unconscionable when used against school-age children in the compulsory setting of K-12 education." Compl. ¶ 18, 169, 170, 209.

IXL's final argument is that its practices are lawful because IXL obtained consent from schools to take and use Plaintiffs' data, Mot. at 13, which fails for the reasons discussed in section II.A., *supra*.

**E.    Plaintiffs State a Claim Under CDAFA and UCL**

Plaintiffs have more than sufficiently alleged the economic harm and non-consensual conduct necessary to state a claim under CDAFA and the UCL, and further, that CDAFA applies.

**1.    Plaintiffs allege economic harm.**

IXL argues that Plaintiffs fail to allege economic harm. Mot. at 14. Not so. The complaint is replete with allegations that IXL caused Plaintiffs to lose money or property by taking and using their data without their consent. Compl. ¶¶ 169, 170, 213, 220, 221, 225-228, 251, 289, 294, 296, 327. And IXL cites no authority for its argument that Plaintiffs were required to allege they intended to

participate in the data market. Mot. at 14. Rather, allegations of loss of personal information through data collection alone are enough to support a UCL claim in this District. In June, for example, a court held that "'[p]rivacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL.'" *A.B. by & through Turner v. Google LLC*, 2024 WL 3052969, at *7 (N.D. Cal. June 18, 2024) (quoting *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *24 (N.D. Cal. Mar. 25, 2024)). As in that case, "[b]ecause Plaintiffs allege that they can 'no longer realize the full economic value of their Personal Information' due to the data collection by defendants, they adequately plead an economic injury resulting from defendants' purported misconduct." *Id.*; *see also Brown v. Google LLC*, 685 F. Supp. 3d 909, 940 (N.D. Cal. 2023); *Facebook Tracking*, 956 F.3d at 600. Indeed, the information at issue in this case is *so sensitive* that Plaintiffs *never consented* to its collection and use. To require a plaintiff to participate in such a market would require that Plaintiff *not to value* her or his privacy. That logic is nonsensical, and IXL's legal authorities do not require such.

### 2. IXL's data practices are not consensual.

For the reasons discussed in section II.A., *supra*, IXL's argument regarding consent fails.

### 3. CDAFA applies to Plaintiffs' allegations.

IXL argues that Plaintiffs failed to plead facts showing that IXL knowingly accessed Plaintiffs' computer devices. Mot. at 15. Although a plain reading of IXL's Motion demonstrates that IXL does not dispute that it is engaged in this conduct, IXL misreads CDAFA and Plaintiffs' complaint.

CDAFA does not require, as IXL erroneously suggests, "accessing a *computer device*—not merely freestanding data." Mot. at 15 (emphasis in original). CDAFA prohibits much more, including the unpermitted taking, copying, or use "of any data . . . , whether existing or residing internal or external to a computer." Cal. Penal Code § 502(c)(2). And CDAFA defines "data" to include data "*in any form*, in storage media, or as stored in the memory of the computer or in transit or presented on a display device." *Id.* § 502(b)(8) (emphasis added).

Further, the Ninth Circuit has held that "access" under CDAFA includes "logging into a

database with a valid password and subsequently taking, copying, or using the information in the database improperly." *United States v. Christensen*, 828 F. 3d 763, 789 (9th Cir. 2015); *see also Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017). That Plaintiffs' data may have been shared for one purpose, does not absolve IXL of liability where the data has been taken and used for other purposes (*e.g.*, to build dossiers and disclose it to third parties). *Id.*; Compl. ¶¶ 27–36.

The complaint details how IXL violates CDAFA by taking Plaintiffs' data without their permission. For example, IXL's technologies harvest more information than what IXL discloses, but IXL refuses to provide parents and their children access to what other of their data is taken without their knowledge or permission. Compl. ¶ 30. And when parents and children use any device that has IXL's technologies on them, IXL harvests that data *regardless* of whether the child is logged into IXL's services—in other words, unauthorized access. *Id.* ¶¶ 34–36, 46–75. These allegations have been deemed sufficient in this District, particularly where "'hidden' software that transmitted data without notice and without providing an opportunity to opt out of its functionality." *Brown*, 525 F. Supp. 3d at 1075 (citing *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015)).

And despite IXL's efforts to characterize the CDAFA as an "anti-hacking statute," Mot. at 15 (citing *Galderma Lab'ys, L.P. v. Revance Therapeutics, Inc.*, 2024 WL 3008860, at *5 (C.D. Cal. Mar. 29, 2024)), IXL yet again intentionally excludes the remainder of the quote: that the statute is "intended to *prohibit the unauthorized use* of any computer system *for improper or illegitimate purpose*." *Galderma*, 2024 WL 3008860, at *5 (cleaned up, emphasis added). Just because CDAFA has been colloquially coined an "anti-hacking" statute does not render the statute inapplicable to IXL's improper and illegitimate conduct.

## III.    CONCLUSION

Plaintiffs have sufficiently pled allegations supporting each of their claims and intend to hold IXL to account for operating as though their rights do not exist. The Court should deny IXL's Motion to Dismiss in its entirety. To the extent the Court finds any deficiencies, Plaintiffs respectfully request leave to amend under Rule 15, Federal Rules of Civil Procedure.

1    Dated: September 23, 2024                Respectfully submitted,

2    By:  /s/ *Julie Liddell*                By:  /s/ *Ryan J. McGee*

3    Julie Liddell (*pro hac vice*)          Ryan J. McGee (*pro hac vice*)
     julie.liddell@edtech.law                rmcgee@forthepeople.com
4    **EDTECH LAW CENTER PLLC**               John A. Yanchunis (*pro hac vice*)
     P.O. Box 300488                         jyanchunis@forthepeople.com
5    Austin, TX 78705                        **MORGAN & MORGAN**
     Telephone: (737) 351-5855               **COMPLEX LITIGATION GROUP**
6                                            201 N Franklin Street, 7th Floor
                                             Tampa, FL 33602
7                                            Telephone: (813) 223-5505
                                             Facsimile: (813) 222-4736
8

9                                            Michael F. Ram (CA Bar No. 238027)
                                             mram@forthepeople.com
10                                           **MORGAN & MORGAN**
11                                           **COMPLEX LITIGATION GROUP**
                                             711 Van Ness Avenue, Suite 500
12                                           San Francisco, CA 94102
                                             Telephone: (415) 358-6913
13                                           Facsimile: (415) 358-6923

14                                           *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28