ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant*
IXL LEARNING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S., AMY WARREN, on behalf of herself and her minor child B.W., and KIMBERLEY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IXL LEARNING, INC.,<br><br>Defendant. | Case No. 3:24-cv-02724-RFL<br><br>**DEFENDANT IXL LEARNING, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Date: October 22, 2024<br>Time: 10:00 a.m.<br>Court: Room 15, 18th Floor<br>Judge: Hon. Rita F. Lin<br><br>Complaint Filed: May 7, 2024 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

    A. The Complaint Fails to Allege a Violation of the Federal Wiretap Act or CIPA ................................................................................................................... 1

        1. Plaintiffs' allegations are fact-free and conclusory ..................................... 1

        2. Plaintiffs do not adequately allege real-time interception ........................... 2

        3. The Complaint challenges lawful, consensual conduct .............................. 3

            a. IXL's alleged conduct is lawful under COPPA ............................. 3

            b. IXL's alleged conduct is lawful under FERPA .............................. 5

            c. IXL's alleged conduct is lawful under state law ............................ 6

    B. Plaintiffs' CIPA Claims Separately Fail For Lack Of Standing ............................ 7

    C. Plaintiffs Fail to State a Claim for Common Law Privacy Torts ............................ 7

    D. Plaintiffs' CDAFA and UCL Claims Fail ............................................................... 8

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahringer v. LoanDepot, Inc.*,
   No. SACV 23-00186-CJC, 2024 WL 1135683 (C.D. Cal. Feb. 6, 2024) .................................. 7

*Auer v. Robbins*,
   519 U.S. 452 (1997) .................................................................................................................. 4

*B.K. v. Eisenhower Med. Ctr.*,
   No. EDCV 23-2092 JGBKKX, 2024 WL 878100 (C.D. Cal. Feb. 29, 2024) .......................... 8

*New Mexico ex rel. Balderas v. Google, LLC*,
   489 F. Supp. 3d 1254 (D.N.M. 2020) .................................................................................. 3, 4

*Bass v. Facebook, Inc.*,
   394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................................................................... 9

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ................................................................................. 10

*D'Angelo v. FCA US, LLC*,
   2024 WL 1625771 (S.D. Cal. 2024) ........................................................................................ 2

*Doe v. Kaiser Found. Health Plan, Inc.*,
   No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ................................. 7

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................................... 2

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
   323 F.3d 1219 (9th Cir. 2003) ................................................................................................. 7

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) ..................................................................................... 9

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ............................................................................................................. 4

*Licea v. Am. Eagle Outfitters, Inc.*,
   659 F. Supp. 3d 1072 (C.D. Cal. 2023) ................................................................................... 2

*Navarro v. Ski Data, Inc.*,
   No. 2:20-CV-07370-SVW-SK, 2021 WL 4355353 (C.D. Cal. Aug. 12, 2021) ...................... 1

*Pena v. GameStop, Inc.*,
   670 F. Supp. 3d 1112 (S.D. Cal. 2023) .................................................................................... 1

*Pruchnicki v. Envision Healthcare Corp.*,
   845 F. App'x 613 (9th Cir. 2021) .................................................................................. 9

*Smith v. Google, LLC*,
   2024 WL 2808270 (N.D. Cal. 2024) ........................................................................... 1, 2

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ....................................................................................... 9

*Van Buren v. United States*,
   593 U.S. 374 (2021) .................................................................................................. 10

*In re Vizio, Inc. Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................................................................... 2

**Statutes**

15 U.S.C. 6501(9) ........................................................................................................... 3

18 U.S.C. § 2511(2)(d) ................................................................................................... 1

Cal. Bus. & Prof. Code § 22584 ..................................................................................... 6

Cal. Bus. & Prof. Code § 22584(b)(4)(E)(c) .................................................................. 6

Cal. Bus. & Prof. Code § 22584(f)(2) ............................................................................ 6

Cal. Bus. & Prof. Code § 22584(g) ................................................................................ 6

Cal. Educ. Code § 49073 ................................................................................................ 6

Cal. Penal Code § 502 ................................................................................................ 9, 10

Cal. Penal Code § 502(c)(2) ........................................................................................... 9

Cal. Penal Code § 631 .................................................................................................... 1

California Comprehensive Computer Data Access and Fraud Act ("CDAFA") .......... 8, 9, 10

California Invasion of Privacy Act ("CIPA") ........................................................... 1, 3, 7

California Unfair Competition Law ("UCL") .......................................................... 8, 9, 10

Children's Online Privacy Protection Rule ("COPPA") .............................................. 3, 4, 8

Family Educational Rights and Privacy Act ("FERPA") ......................................... 5, 6, 8, 10

Federal Wiretap Act ("FWA") ............................................................................... *passim*

Student Online Personal Information Protection Act ("SOPIPA") ................................ 6

**Other Authorities**

64 Fed. Reg. at 59903 ................................................................................................... 3, 4, 5

I.   **INTRODUCTION**

Plaintiffs' Opposition does not meaningfully address the numerous pleading deficiencies IXL identified in its opening Motion. For the reasons provided below, dismissal is warranted.

II.  **ARGUMENT**

   A.  **The Complaint Fails to Allege a Violation of the Federal Wiretap Act or CIPA**

      1.  **Plaintiffs' allegations are fact-free and conclusory**

Plaintiffs' wiretapping claims under the Federal Wiretap Act ("FWA") and California Invasion of Privacy Act ("CIPA") are based on a sliver of the allegations in their Complaint.[1] While the vast majority of their allegations describe communications directly between users and IXL, Plaintiffs' wiretapping claims are premised solely on something else: IXL's supposed interception "of electronic communications made from the Plaintiffs and Class members to websites and other web properties other than Defendant's." Compl. ¶ 272; *see id.* ¶ 276 ("IXL intercepted the communications between the Plaintiffs and web properties other than IXL's"); ¶ 286 (reiterating claimed "interception" of " internet communications").[2] The problem, as the Motion explained, is that these allegations are entirely conclusory. Plaintiffs never identify *which* third-party "websites" or "web properties" were subject to IXL's purported interception. Mot. 7-8. Nor do Plaintiffs offer any detail whatsoever about *how* IXL supposedly intercepted communications with those sites or properties. *Id.* (citing *Navarro v. Ski Data, Inc.,* No. 2:20-CV-07370-SVW-SK, 2021 WL 4355353, at *2 (C.D. Cal. Aug. 12, 2021)).

Plaintiffs assert that courts "regularly" reject similar arguments, citing two decisions. Opp. 9. But both cases simply highlight the Complaint's deficiencies. The plaintiffs in *Smith v. Google, LLC*, 2024 WL 2808270 (N.D. Cal. 2024), stated (barely) an interception claim against Google

---

[1] The requirements to state a claim under Cal. Penal Code § 631 are "the same as . . . under the federal Wiretap Act," *Pena v. GameStop, Inc.,* 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023), and Plaintiffs' claims under the two statutes fail for the same reasons.

[2] IXL would not qualify as a party to such communications between users and third-party websites, so there is no reason to consider the FWA's provision that a party may unlawfully intercept communications if it acts "for the purpose of committing any criminal or tortious act." Opp. 8-9 (quoting 18 U.S.C. § 2511(2)(d)).  In any event, that provision would not apply here because, as explained below, Plaintiffs fail to state a claim against IXL for any tortious act.

1  only because they named the specific companies whose user communications Google purportedly
2  intercepted ("H&R Block, TaxAct, and TaxSlayer") and detailed "the mechanism for
3  transmission." *Id.* at *5. Similarly, the plaintiff in *D'Angelo v. FCA US, LLC*, 2024 WL 1625771
4  (S.D. Cal. 2024), identified SalesForce as the entity that had intercepted "chat communications"
5  between users and Dodge's website, using code that "routed" transcripts. *Id.* at *11. These are
6  precisely the sorts of allegations missing here.

Plaintiffs attempt to defend their wiretapping claims by invoking allegations "that IXL has embedded numerous tracking mechanisms" operated by "third parties" who then "track users'" activity. Opp. 8. Those allegations are plainly not a basis for the Complaint's wiretapping claims. *See* Compl. ¶¶ 272, 276. Plaintiffs suggest they could have *separate* claims against those unnamed *third parties* because the FWA's "party exception does not apply to companies that embed such mechanisms for the purposes of causing a browser or device to redirect communications." Opp. 8 (citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020), which held the party exception inapplicable to third-parties "that surreptitiously duplicate transmissions between two parties"). But speculation about unpled claims against third parties does nothing to salvage the Complaint's conclusory wiretapping claims against IXL.

**2.     Plaintiffs do not adequately allege real-time interception**

Plaintiffs do not dispute that they must adequately allege that IXL intercepted the contents of their communications in real time, rather than after transmission was complete. Mot. 8. Once again, however, the Complaint is entirely conclusory on this point, stating without further explanation that "IXL's interception of internet communications that the Plaintiffs and Class members were sending and receiving was done contemporaneously with the Plaintiffs' and Class members' sending and receipt of those communications." Compl. ¶ 271. Although Plaintiffs point to additional paragraphs in the Complaint, Opp. 10, none says anything about the timing or mechanics of IXL's purported interception. IXL explained that courts have dismissed comparable allegations as insufficient. Mot. 8 (citing *Licea v. Am. Eagle Outfitters, Inc.,* 659 F. Supp. 3d 1072, 1085 (C.D. Cal. 2023) and *In re Vizio, Inc. Consumer Priv. Litig.,* 238 F. Supp. 3d 1204, 1226, 1227-28 (C.D. Cal. 2017). (Indeed, Plaintiffs' insinuation that IXL performed this purported

1   misconduct at its place of business suggests it *never* intercepted communications at *any* point, but
2   simply received communications that users directed to it.)  Dismissal is equally warranted here—
3   not because the Complaint lacks "extensive detail," Opp. 10, but because it pleads no facts
4   whatsoever.

### 3.     The Complaint challenges lawful, consensual conduct

#### a.     IXL's alleged conduct is lawful under COPPA

As authorized by COPPA and consistent with FTC rules and guidance, IXL's alleged data collection and use is lawful because the school districts consented to these practices as agents of their students' parents. *See, e.g.*, Mot. 9 (explaining that communications may be divulged under the FWA with consent and parties are not subject to FWA liability for acts under the "color of law"); Compl. ¶ 286 (alleging only "non-consensual" interception under CIPA). COPPA expressly defines "verifiable parental consent" to include "*any reasonable effort* . . . to ensure that a parent of a child receives notice of," and "authorizes," an ed tech provider's data collection. 15 U.S.C. § 6501(9); *see also New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1261 (D.N.M. 2020) ("[COPPA] only requires operators to 'make any reasonable effort' to provide notice and obtain consent."). That ambiguity in the statute invites FTC guidance:  Which efforts, exactly, are reasonable in a given context? For decades, the FTC has explained that in the school context, reasonable efforts include schools consenting to ed tech data collection as an agent for parents. That strikes a sensible balance between notice and effective school administration, ensuring that educational technology companies are not left directly chasing parental consent in ways that could be practically impossible and that would enable individual holdouts to derail a curriculum. IXL permissibly relied on exactly that form of consent here.

Plaintiffs' view that COPPA unambiguously requires direct parental consent before collection of personal information is thus incorrect as a matter of law. Opp. 2. The FTC has made clear that "where an operator is authorized by a school to collect personal information from children, after providing notice to the school . . . , the operator can presume that the school's authorization is based on the school's having obtained the parent's consent." 64 Fed. Reg. at 59,903. The FTC reaffirmed this position in subsequent guidance: "Many school districts contract with

third-party website operators to offer online programs solely for the benefit of their students and for the school systems . . . . In these cases, the schools may act as the parent's agent and can consent to the collection of kids' information on the parent's behalf." FTC, Complying with COPPA: Frequently Asked Questions, § N.1, https://www.ftc.gov/business-guidance/resources/complying-coppa-frequently-asked-questions (last accessed October 7, 2024). In this "educational context," the "operator collects personal information from students for the use and benefit of the school, and for no other commercial purpose." *Id*. The FTC's common-sense guidance reflects the close relationships between schools and parents. *See Google, LLC*, 489 F. Supp. 3d at 1261 ("Local schools have relationships with parents and guardians, formed through countless conferences, meetings and communications, which no online operator can reasonably replicate.").

The FTC's position that schools may act as agents in this context and that operators may "presume" that school authorizations are "based on the school's having obtained the parent's consent" warrants deference. *See generally Auer v. Robbins*, 519 U.S. 452 (1997); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2418 (2019) (giving agencies "significant leeway to say what its own rules mean"). The FTC's guidance reflects its "fair and considered judgment," it is not a "new interpretation" that would "create[] unfair surprise to regulated parties," and deferring to the FTC here will not "impose[] retroactive liability on parties for longstanding conduct that the agency had never before addressed." *Kisor*, 139 S. Ct. at 2417-18. To the contrary, it is *Plaintiffs* whose position creates unfair surprise and attempts to impose retroactive liability for longstanding conduct. If the Court allows these claims to proceed it will throw into chaos the legal arrangements between tens of thousands of schools and companies like IXL. To sustain the Plaintiffs' claims, the Court would have to both reject the FTC's longstanding guidance and hold that IXL did not undertake "reasonable efforts" to obtain "verifiable parental consent" when it followed that guidance.

Moreover, courts have considered FTC's guidance in the Statement of Basis and Purpose for the COPPA regulations—the guidance Plaintiffs assert IXL misrepresents, Opp. 2—with *Skidmore* deference and concluded that "direct notice to and consent by parents . . . is not what the law and regulatory framework require," and schools therefore have a "legitimate role" as "agent and intermediary" "in the notice-and-consent process." *Google, LLC*, 489 F. Supp. 3d at 1261-62

(citing, in part, 64 Fed. Reg. at 59903 and 2020 COPPA FAQs as persuasive authority). Plaintiffs resist this conclusion by claiming that IXL fails to establish an agency relationship between the schools and parents, making this issue inappropriate for resolution on a motion to dismiss. Opp. 3. But Plaintiffs' allegations, combined with FTC guidance, demonstrate such a relationship.

Plaintiffs allege that IXL provides its services to Plaintiffs' children through an arrangement with their schools, Compl. ¶¶ 6-7, 9, 11, and incorporate IXL's privacy policy into their complaint, which describes IXL's approach to providing notice and obtaining consent for its services, consistent with FTC guidance. *See, e.g.*, Privacy Policy § 9 (IXL "collect[s], retain[s], use[s] and disclose[s] Student Data only for or on behalf of our School customers for the purpose of providing the Services specified in [IXL's] agreement with the School and for no other commercial purpose."); Compl. ¶ 82 (IXL's "collection, use and sharing of Student Data is governed by [its] contracts with the School."); Compl. ¶ 91 (IXL does "not collect, maintain, use or share Student PII beyond that needed for authorized educational/school purposes."). Consistent with the FTC's guidance, IXL presumes that schools authorizing access to IXL's services have obtained the requisite parental consent. *See* 64 Fed. Reg. at 59,903. Accordingly, the Complaint merely describes lawful consent, which is fatal to all of Plaintiffs' causes of action. *See* Mot. 10-11.

### b.   IXL's alleged conduct is lawful under FERPA

Plaintiffs' FWA claims fail for the additional reason that IXL's conduct is permissible under FERPA. *See* Mot. 9-10. While Plaintiffs are correct that FERPA regulates schools, the statute also clearly contemplates and outlines lawful conduct for education technology providers: FERPA allows schools to disclose personal information from education records without consent to school officials, including service providers like IXL. *See* Mot. 3-4, 9. IXL is not arguing that FERPA preempts Plaintiffs' claims, nor is it trying to enforce FERPA. IXL is simply explaining that its actions are lawful under FERPA, and because it is lawful, this is a defense to several of Plaintiffs' causes of action.[3]

---

[3] Plaintiffs also invoke the legislative history of FERPA to argue that it was codified to protect parents' and students' expectations of data privacy, so IXL's interpretation would undermine that purpose. Opp. at 4. IXL's compliance with applicable privacy laws certainly does not undermine

Plaintiffs' conclusory statements of law from their Complaint that IXL is not a "school official" are inapposite. *See* Opp. 6. Again, Plaintiffs allege that their children use IXL's services as part of their public schooling, Mot. 10, and IXL's Privacy Policy states that "IXL provides the Services to Schools as a 'School Official.'" *Id.* at 10-11; *see also* Mot. 3-4 (explaining that under FERPA, schools may share certain personal information without parental consent to "outsourced institutional services" like IXL).

### c. IXL's alleged conduct is lawful under state law

And finally, Plaintiffs' FWA claim also fails because IXL's conduct is explicitly permitted by Kansas and California law. Mot. 9-10. Plaintiffs' Complaint states that their minor children "access[ed] and use[d] IXL products and services" as "part of [their] public schooling" in their respective Kansas school districts. Compl. ¶¶ 6-7, 9, 11. Taking Plaintiffs' allegations as true, IXL has clearly entered into an arrangement with Plaintiffs' children's schools. Plaintiffs cite no authority for their assertion that under Kansas law disclosure is permitted only pursuant to a "detailed" contract, and they make no mention of what the "strict requirements" are for these contracts. Opp. 6. And although Plaintiffs contend that IXL does not give them access to certain data, as explained in its opening Motion and stated in its Privacy Policy, IXL properly directs such inquiries to the schools as the owners of student data. Mot. 10 (citing Privacy Policy § 11).

IXL's conduct is also permissible under California law, including California's law implementing FERPA, Cal. Educ. Code § 49073, and Cal. Bus. & Prof. Code § 22584 ("SOPIPA"). Plaintiffs repeatedly contend that IXL is misrepresenting the law, arguing that SOPIPA says nothing about consent, which Plaintiffs support with a "see generally" citation to the code. Opp. 6-7. It is unclear what the Court is supposed to "see generally," but regardless, IXL's conduct is lawful under SOPIPA because the law plainly allows ed tech entities like IXL to use student data in the exact ways Plaintiffs allege is unlawful. *See* Mot. 10 (citing Cal. Bus. & Prof. Code § 22584(b)(4)(E)(c), (f)(2), (g)). Again, Plaintiffs' objection seems to be to the text of the laws themselves. Plaintiffs assert that IXL's reliance on Cal. Educ. Code § 49073 fails for the same

---

FERPA's purpose. In any event, as Plaintiffs are aware, *see* Opp. at 2, because they do not identify any statutory ambiguity legislative intent is irrelevant.

1  reasons IXL's FERPA arguments fail, Opp. 7-8, but as discussed above, IXL's conduct is lawful
2  under FERPA and is therefore lawful under California's implementing law. *See supra* II.A.3.b.

### B.  Plaintiffs' CIPA Claims Separately Fail for Lack of Standing

On top of the legal deficiencies already identified, Plaintiffs' CIPA claims must be dismissed because Plaintiffs lack standing under CIPA: only California residents—not Kansas residents, like Plaintiffs—can bring a CIPA claim. Mot. 11. Plaintiffs make no argument to rebut this well-established jurisdictional limit on CIPA. Instead, Plaintiffs contend that the presumption against the extraterritorial application of California law does not apply here, and they may therefore benefit from CIPA's protections. Opp. 10-11. But the presumption against extraterritoriality is not relevant here because the statute contains express geographical limitations. *See*. Mot. 11. These are distinct issues that Plaintiffs confuse. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003) (holding that statute "does not implicate issues of extraterritoriality," then separately stating that when "a law contains geographical limitations on its application, however, courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply").

And IXL's California residence does not change that the application of CIPA turns on the residence of the *user*. *Compare* Mot. 11-12 *with* Opp. 11-12. Plaintiffs protest this argument as conclusory, but IXL's Motion cites cases conducting the relevant choice-of-law analysis, including, for example, *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024). *See* Mot. 11-12; *see also Ahringer v. LoanDepot, Inc.*, No. SACV 23-00186-CJC (JDEX), 2024 WL 1135683, at *6 (C.D. Cal. Feb. 6, 2024) (holding that Plaintiffs could only pursue CIPA claims on behalf of California residents because the "fact that LoanDepot is headquartered in California does not produce a strong enough interest to tip the balance in favor of applying California law to residents of all other states when their injury occurred in other states").

### C.  Plaintiffs Fail to State a Claim for Common Law Privacy Torts

Plaintiffs fail to adequately allege the common law privacy torts of invasion of privacy or intrusion upon seclusion because they do not allege that IXL intruded on a protected privacy interest or that IXL's purported conduct is highly offensive. Mot. 12-13. In response, Plaintiffs first contend

that they have alleged "numerous categories" of protected privacy interests that IXL has infringed. Opp. 12.[4] According to Plaintiffs, IXL cites "no law requiring that Plaintiffs allege specifically when that information was collected or with whom it was shared," and that they are not required to do so because they are not alleging fraud. *Id*. But this is untrue – IXL cites a case in its opening Motion with this exact language, which Plaintiffs completely ignore. *See* Mot. 13. And that case did not involve fraud's heightened pleading standards – Plaintiffs' allegations here fail even basic notice pleading requirements. *See B.K. v. Eisenhower Med. Ctr.*, No. EDCV 23-2092 JGBKKX, 2024 WL 878100, at *6 (C.D. Cal. Feb. 29, 2024). Plaintiffs further argue that they cannot provide sufficiently detailed pleadings because IXL refuses to share the relevant information. Opp. 12. But again, Plaintiffs ignore IXL's argument that, pursuant to controlling laws, including FERPA, the school owns the data, not IXL, so they must direct their inquiries to the schools as the owners of the student data. Mot. 10.

IXL's purported conduct—alleged by Plaintiffs to be "commonplace"—is also not highly offensive as a matter of law. Mot. 13. Plaintiffs contend there are open factual issues here, Opp. 13, but they do not identify what those issues are. And while Plaintiffs attempt to distinguish IXL's caselaw by noting that these cases do not involve children in compulsory education settings, *id*, they do not provide any caselaw to the contrary suggesting that children's data is treated any differently from any other data. Indeed, Plaintiffs challenge nothing more than routine business conduct, and their assertion that IXL's purported conduct is "unconscionable," *see id*, which is a quote *from their own Complaint*, is an entirely irrelevant legal conclusion.

Finally, Plaintiffs' common law claims are also defeated because, as discussed, IXL's data collection is consensual and otherwise lawful. Mot. 13; *see supra* II.A.3.

### D.  Plaintiffs' CDAFA and UCL Claims Fail

Plaintiffs' CDAFA and UCL claims both fail because they do not plausibly allege the economic harm required for statutory standing under these laws. Mot. 14-15. Although Plaintiffs

---

[4] Plaintiffs also argue that FERPA's and COPPA's "very existence" undermines IXL's argument that it did not infringe a protected privacy interest. Opp. 12. This misses the point – IXL is simply arguing that Plaintiffs do not allege a violation of any privacy interests, not that privacy interests do not exist.

1  contend in response that IXL cites no authority requiring them to allege an intent to participate in
2  a data market, Opp. 13-14, this is not true. *See* Mot. 14-15 (citing *Bass v. Facebook, Inc.*, 394 F.
3  Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("As to the loss of value of the personal information, plaintiff
4  . . . has provided no market for the personal information or the impairment of the ability to
5  participate in that market. This lack of specificity is fatal.")). To support their contention that data
6  market allegations are unnecessary for CDAFA and UCL claims, Plaintiffs rely on outlier
7  decisions. *Compare* Opp. at 14 (discussing cases) *with Katz-Lacabe v. Oracle Am., Inc.*, 668 F.
8  Supp. 3d 928, 943 (N.D. Cal. 2023) ("The weight of the authority in the district and the state [hold
9  that] 'the mere misappropriation of personal information does not establish compensable
10 damages.'" (citing *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021)
11 and collecting cases)). Plaintiffs conclude by stating that because their data is so sensitive, "[t]o
12 require a plaintiff to participate in such a market would require that Plaintiff not to value her or his
13 privacy." Opp. 14. Thus, Plaintiffs concede that they either do not value their privacy (because they
14 have to allege participation in a data market), or they would never sell their data, which makes any
15 harm stemming from its decrease in value illusory.

16       Plaintiffs' CDAFA claim fails for the separate reason that Plaintiffs do not plead facts
17 showing that IXL knowingly accessed Plaintiffs' computer devices. Mot. 15. Cal. Penal Code §
18 502 applies, in relevant part, only where the defendant "[k]nowingly accesses" a "computer,
19 computer system, or computer network" and then "without permission takes, copies, or makes use
20 of any data" stored there. Cal. Penal Code § 502(c)(2). As Plaintiff notes, the access itself must be
21 "knowing" but not necessarily "unauthorized," which means § 502 technically covers more than
22 "hacking." Opp. 14-15 (citing *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015)).
23 However, "[w]hat makes that access unlawful is that the person 'without permission takes, copies,
24 or makes use of' data *on the computer*." *Christensen*, 828 F.3d at 789 (emphasis added).

25       Plaintiff's response distorts § 502's clear text by suggesting that IXL somehow "misreads"
26 the statute—which expressly requires access to "a computer, computer system, or computer
27 network," Cal. Penal Code § 502(c)(2)—to require that IXL "accessed Plaintiffs' computer
28 devices." Opp. 14. Plaintiff's view appears to be that § 502 outlaws access to any "data," wherever

located, that in some sense originated on a computer. *Id.*[5] That is not what the law says. The Supreme Court has emphasized when construing § 502's federal analog that a defendant must "obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend." *Van Buren v. United States*, 593 U.S. 374, 378 (2021); *see also* Mot. 15. Plaintiffs simply ignore that dispositive case law, just as they ignore § 502's plain text.

Plaintiffs CDAFA and UCL claims fail for the final reason that, as explained, Plaintiffs only challenge lawful, consensual conduct. Mot. 15; *see also supra* II.A.

### III.  CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated: October 7, 2024

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *David P. Fuad*
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant IXL Learning, Inc.*

---

[5] Plaintiffs' allegations of continual tracking by IXL, Opp. 15, are unsupported and conclusory. *See* Mot. 5, 6-8, 12-13. They again claim that IXL has refused access to the relevant data, Opp. 15, but as noted, schools are the owners of student data under FERPA, so inquiries must be directed to the schools. Mot. 10. And Plaintiffs' quote from *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1075 (N.D. Cal. 2021) is inapposite. Opp. 15. There, the court was discussing a software system that could "render ineffective any barriers that [the plaintiffs] must wish to use to prevent access to their information," *id.*, which is not alleged here.