**EDTECH LAW CENTER PLLC**
Julie Liddell (*pro hac vice*)
P.O. Box 300488
Austin, TX 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law

**MORGAN & MORGAN**
Ryan J. McGee (*pro hac vice*)
John A. Yanchunis (*pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
rmcgee@forthepeople.com
jyanchunis@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S., AMY WARREN, on behalf of herself and her minor child B.W., and KIMBERLY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IXL LEARNING, INC.<br><br>Defendant. | Civ. No. 3:24-cv-02724-RFL<br><br>**PLAINTIFFS' MOTION TO CERTIFY AS FRIVOLOUS THE INTERLOCUTORY APPEAL OF IXL LEARNING, INC.**<br><br>Judge: Hon. Rita F. Lin<br><br>Hearing Date: February 11, 2025<br><br>Time: 10:00 a.m. |

## I.     INTRODUCTION

Plaintiffs seek to certify as frivolous the interlocutory appeal of Defendant IXL Learning, Inc. ("IXL") from the Court's order denying its motion to compel arbitration ("Motion"). This Court retains jurisdiction to issue such an order under *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). Plaintiffs are mindful that, at oral argument, the Court expressed doubt that IXL's appeal would meet the standard for frivolousness, but during that hearing Plaintiffs did not have the opportunity to present the factual and legal bases to support their argument, and respectfully provide those below.

This case involves allegations of significant privacy and property violations by IXL against school-aged children and their parents in the compulsory setting of education. Since the inception of this lawsuit, IXL has engaged in dilatory pretrial tactics, including intentionally misleading Plaintiffs' counsel in order to procure an extension of time to respond to the complaint and then initially refusing to move on any Rule 12 grounds; filing a baseless motion to compel arbitration, supported only by blatant misrepresentations of the law and without producing any of the purported arbitration agreements it seeks to enforce; and refusing to participate in any discovery.

IXL and its counsel have behaved as though, after *Coinbase*, the mere existence of an arbitration clause in one version of IXL's Terms of Service ("Terms") entitles it to an automatic stay of proceedings in this Court pending final resolution of its Motion, including appeal. But the *Coinbase* holding is not that broad or absolute. Responding to the dissent's concerns that an automatic stay in every case would encourage frivolous appeals that would improperly delay district court proceedings, the *Coinbase* majority explained that district courts may certify appeals as frivolous and decline to stay the proceedings, thereby keeping a case on schedule for trial as the appeal proceeds concurrently:

> The courts of appeals possess robust tools to prevent unwarranted delay and deter frivolous interlocutory appeals. For example, a party can ask the court of appeals to summarily affirm, to expedite an interlocutory appeal, or to dismiss the interlocutory appeal as frivolous. *In addition, nearly every circuit has developed a process by which a district court itself may certify that an interlocutory appeal is frivolous.*"

*Coinbase*, 599 U.S. at 745 (emphasis added); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009) ("Appellate courts can streamline the disposition of meritless claims and even authorize

the district court's retention of" a case "when an appeal is certified as frivolous").

If a student was nearing the end of kindergarten when this case was filed in May 2024, she is now halfway through first grade. IXL's course of conduct in this case reveals an intent to unduly delay the proceedings, and a stay pending appeal will only delay things further. Because IXL's appeal will be founded on patently meritless arguments unsupported by any competent evidence, Plaintiffs respectfully request the Court certify IXL's appeal as frivolous and refrain from staying these proceedings during the pendency of that appeal.

I.     **FACTUAL BACKGROUND**

    A.     **IXL and its counsel have unduly delayed and refused to participate in litigation.**

Plaintiffs filed their complaint in this case on May 7, 2024. *See* Dkt. 1.

IXL's initial deadline to respond under Federal Rules of Procedure Rule 12 was May 31, 2024 but the parties agreed by stipulation to reset that deadline by 42 days to July 12, 2024. *See* Dkt. 15. On a May 17 videoconference, IXL's counsel represented to Plaintiffs' counsel that this extension was necessary for IXL to prepare a Rule 12 motion to dismiss, and Plaintiffs' counsel agreed to an extension on that basis. *See* Declaration of Julie Liddell ("Liddell Decl."), Ex. A (May 17, 2024 email).

On June 12, 2024, IXL requested arbitration of Plaintiffs' claims, which Plaintiffs promptly declined. *See* Liddell Decl., Ex. B (IXL's arbitration letter), Ex. C (Plaintiffs' response). Plaintiffs' counsel also requested that IXL's counsel provide their availability for a Rule 26(f) conference. *See* Ex. C.  IXL's counsel did not respond to Plaintiffs' counsel's request.

One month later, on July 12, 2024, Plaintiffs—still believing that IXL was preparing to file its Rule 12 motion, which was due that day—contacted IXL in an ongoing effort to schedule a Rule 26(f) conference. *See* Liddell Decl., Ex. D (July 12, 2024 email). IXL's counsel refused to provide its availability, stating that it believed any such conference was "premature in light of the motion we are filing." *See id.* That same day—the agreed-upon extended responsive deadline—IXL filed *only* a motion to compel arbitration. IXL did not file any pleading or motion under Rule 12, did not ask the Court to treat its Motion as a Rule 12 motion, and did not request that the Court stay litigation pending

adjudication of its Motion. *See* Dkt. 19.

Plaintiffs' counsel pressed for a Rule 26(f) conference—indicating that they planned to seek relief from the Court if IXL refused to participate—and, on July 16, 2024, IXL's counsel finally agreed to participate in that conference on July 23. *See* Liddell Decl., Ex. E (July 16, 2024 email). But IXL's counsel continued to insist that "a litigation schedule or discovery or disclosures are premature until our motion is decided[.]" *Id*.

On July 23, 2024, counsel for the parties met for what IXL's counsel had led Plaintiffs' counsel to believe would be a Rule 26(f) conference. *See id*. Counsel for IXL, however, refused to participate. They confirmed that IXL did not intend to file a Rule 12 pleading or motion until after full adjudication of its Motion, or seek the Court's leave to treat its Motion as an unenumerated Rule 12(b) motion. Counsel for IXL further asserted that, merely by filing its Motion, the case was stayed for all purposes, relieving IXL of its obligations to: (1) answer or otherwise respond to Plaintiffs' complaint as required by Rule 12, and (2) comply with its obligations under Rule 26. IXL's counsel refused to discuss any of the matters contemplated by Rule 26(f). Plaintiffs' counsel informed IXL's counsel that they intended to seek an order from the Court compelling a response to their complaint under the Federal Rules and IXL's participation in litigation.

On July 30, 2024, Plaintiffs' counsel sent counsel for IXL authority showing that filing a motion to compel arbitration, without more, does not toll the default deadline and again indicated their intent to seek relief from the Court. *See* Liddell Decl., Ex. F (July 30, 2024 email). IXL relented and agreed to file a Rule 12(b) motion. *See id.* (July 31, 2024 email). The parties entered a stipulated schedule. Accordingly, on August 15, 2024—an additional 34 days after the parties' originally agreed-upon July 12, 2024 deadline for IXL to answer or file a Rule 12 motion in response to Plaintiffs' complaint, and 76 days after it would have originally been due under the Federal Rules—IXL filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). Dkt. 24.

On August 19, 2024, Plaintiffs filed a response to IXL's Motion. Dkt. 27. That same day, the Federal Trade Commission ("FTC") entered an appearance in the case and sought leave to file an amicus brief responding to IXL's Motion. Dkt. 26. Neither IXL nor Plaintiffs opposed the FTC's brief,

and the Court accepted it. *See* Dkt. 30, 31. That brief—filed with the unanimous support of the FTC's five Commissioners—wholly refuted IXL's primary argument in support of its Motion, namely, that the FTC had issued binding guidance permitting schools to consent to arbitration on behalf of parents without their informed consent, pursuant to the FTC's authority under the Children's Online Privacy Protection Act ("COPPA"). Dkt. 31.

Undeterred by the FTC's unequivocal refutation of its position, IXL did not withdraw its motion and, on September 9, 2024, filed its reply brief. Dkt. 32. In addition to arguing that the FTC misunderstood its own guidance, IXL also raised new theories of consent for the first time.

On October 22, 2024, the Court held a hearing on IXL's Motion. At the hearing, IXL orally raised still new arguments in support of its Motion. On November 1, 2024, this Court denied IXL's Motion on every ground that IXL argued, irrespective of whether it was properly before the Court.

> **B.     IXL's two preserved arguments for enforcing the arbitration clause in its Terms are baseless, and IXL's remaining arguments are waived.**

The primary argument IXL advanced in its opening brief—that COPPA creates an "agency" relationship as a matter of law through which schools may waive the constitutional rights of students and their parents without their knowledge and over their objections—was so baseless that it prompted the FTC to file a rare, and perhaps unprecedented, early amicus brief disavowing it in unequivocal terms. IXL alternatively argued that Plaintiffs had consented to the arbitration agreements by being aware of IXL's Terms and allowing their children to continue to attend public schools where IXL's services are part of the curriculum.

IXL raised other arguments in its reply brief and at the hearing, but the Court properly held that those arguments were waived as untimely. Nevertheless, the Court addressed the merits of every argument IXL made and expressly rejected each one in turn.

> **1.     <u>Preserved</u>: IXL's argument that COPPA authorizes schools to consent to arbitration on behalf of students and their parents as a matter of law.**

IXL first argued in its opening brief that, under COPPA, Plaintiffs' school districts acted as parents' agents and consented to its Terms, including an agreement to arbitrate. Dkt. 19 at 3–6.

As a threshold matter, and as Plaintiffs argued, IXL did not produce properly authenticated

evidence of each version of the arbitration clause it sought to enforce. Dkt. 27 at 4–5. Instead, IXL relied on one unauthenticated version of the 2018 TOS purportedly retrieved by its lawyer from the Internet Archive's Wayback Machine, along with a declaration from an IXL corporate representative testifying to his "understanding that IXL's services are always provided to its customers pursuant to IXL's then-operative Terms and Conditions of Sale, which incorporate IXL's Terms of Service." Dkt. 19-1 at ¶ 2, 19-3 at ¶4. While the Court would have been within its discretion to find that IXL failed to demonstrate that a contract existed with *anyone*, the Court generously concluded that "[w]hile IXL's evidence is not a model of clarity, . . . there is sufficient proof to demonstrate the school districts' assent to the Terms." *Shanahan v. IXL Learning, Inc*., No. 24-CV-02724-RFL, 2024 WL 4658276, at *1, n. 1 (N.D. Cal. Nov. 1, 2024).

In addition to failing to provide the agreements it sought to enforce, IXL grossly mischaracterized applicable law, including representing to the Court that certain nonbinding agency guidance was law.

The COPPA statute and its implementing rule are silent as to whether school districts may serve as parents' agents when signing contracts with technology vendors. 15 U.S.C. §§ 6501 *et seq*.; 16 C.F.R part 312. In fact, COPPA does not mention schools at all. *See id*. Thus, in support of its radical theory that COPPA, not only permits, but *imposes* an agency relationship on students and their parents in favor of school districts, IXL falsely and misleadingly characterized language from the FTC, including responses to comments published in the rule's Statement of Basis and Purpose, a blog post by an agency staffer, and a notice of proposed rulemaking as language from the COPPA statute and rule themselves. Dkt, 19 at 4–5; Dkt. 27. at 6–10. In response, *the FTC itself* voted unanimously to submit an amicus brief to refute IXL's misrepresentations. Dkt. 31. It denied that COPPA created an "express agency" between "Plaintiffs and the relevant school districts as a matter of law," observing that IXL had "relie[d] on a mischaracterization of" the FTC's statements. *Id*. at 5–8. A concurring statement issued by Commissioner Andrew Ferguson went further, stating that "IXL's argument does not pass the smell test" and constitutes a "brutal misreading of COPPA." Liddell Decl., Ex. G (Concurring Statement of Commissioner Andrew N. Ferguson).

The Court concluded that neither the FTC's statements during the notice-and-comment process for the COPPA rule nor a blog post from an agency staffer creates "a legally enforceable agency relationship that is not discussed in the governing statute or its implementing regulation." *Shanahan*, 2024 WL 4658276, at *3.

The Court also considered IXL's prudential argument that "the reasoning behind COPPA's data-collection consent scheme—specifically, that it would be infeasible to obtain consent from each parent individually—supports school districts' authority to also consent to arbitration on behalf of students." *Id*. at *4. The Court concluded that the FTC did not intend its nonbinding statement, "which is not reproduced in the COPPA rule itself or any other binding authority, to reach beyond the student data collection context and authorize school districts to consent to any and all provisions in a vendor agreement on behalf of parents." *Id*. "Indeed, the FTC's amicus brief repeatedly disclaims any such intent." *Id*. (citing Dkt. 31 at 5–8). Given the clear dictates of COPPA and the FTC's explanation of its own statements, no other conclusion was permissible.[1]

> **2.    Preserved: IXL's argument that parents consented to IXL's Terms by allowing their children to use IXL's services at school.**

The second argument IXL advanced in its opening brief—and the only other argument properly raised and preserved for appeal—was that Plaintiffs consented to IXL's Terms, including the arbitration provision, by continuing to use IXL's services. Dkt. 19 at 6–7; Dkt. 32 at 5–6.

The Court rejected that argument, citing black-letter contract law. It held that, "[w]hile it may be true that Plaintiffs had knowledge of the Terms at least by the time they decided to file the present suit, their children's continued use of IXL services in school did not constitute assent to the Terms." *Shanahan*, 2024 WL 4658276 at *6. The Court explained that, under California law, the "'voluntary acceptance of the benefit of a transaction'" constitutes consent to all obligations arising from it. *Id*. (quoting Cal. Civ. Code § 1589). However, it was IXL's burden "'to prove each and every element of a valid contract—including mutual assent,'" and "IXL produce[d] no evidence that this ongoing use

---

[1] Further, COPPA applies only to children under 13, 15 U.S.C. § 6501(1), and IXL made little effort to explain how any of its COPPA-related theories of consent, even if meritorious, would compel arbitration of claims brought by the Plaintiffs who are over the age of 13. IXL suggested in a footnote that a school's consent under COPPA forever binds children, even after they turn 13. Dkt. 19, at 5 n.3.

is voluntary for either the students or their parents." *Id*. (quoting *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020)). In other words, IXL made *no* effort to produce evidence in support of its alternative consent-by-use theory, as was its burden. The Court thus concluded that "a parent's decision to not pull their child out of public school or tell them to stop using a platform that is part of the curriculum does not constitute voluntary acceptance of the benefits—and burdens—of using IXL products." *Id*.

        3.    **Waived: IXL's argument that some mix of FTC guidance and common-law agency principles allows districts to bind all students and their parents to arbitration.**

Because the FTC debunked IXL's argument that the FTC had created binding law that permitted schools to bind children and parents to arbitration without their consent, IXL advanced a new theory on reply: it argued that the FTC did not understand the scope of its own guidance, and that some combination of that guidance and common-law agency principles impliedly authorizes school districts to enter into arbitration agreements on behalf of students and their parents as a matter of law. Dkt. 32 at 2–3. The Court noted that, at oral argument, IXL vacillated as to whether it was still advancing that theory, but nevertheless held that IXL waived the argument because it was raised for the first time on reply. *Shanahan*, 2024 WL 4658276 at *5. The Court considered it nonetheless.

The Court held that IXL failed to demonstrate that a common-law agency relationship existed under well-established agency principles. *Id*. Crucially, the Court observed that agency requires control of the agent by the principal: "A relationship is not one of agency within the common-law definition unless the agent consents to act on behalf of the principal, and the principal has the right throughout the duration of the relationship to control the agent's acts." *Id*. (citing *Hernandez v. Meridian Mgmt. Servs.*, LLC, 87 Cal. App. 5th 1214, 1220–21 (2023) and Restatement (Third) of Agency § 1.01 cmt. (c)). IXL provided no evidence that Plaintiffs "directed or controlled the school districts' decisionmaking as to how to provide educational services, which educational vendors to engage, or what terms should be included in their vendor contracts." *Id*. Thus, even had IXL properly raised this argument, the Court rejected it on the basis of undisputed facts and black-letter law.

The Court addressed yet another argument IXL raised for the first time on reply: that common-

law agency principles grant an agent "implied authority to perform the usual and necessary acts associated with the authorized services." Dkt. 32 at 3. For the sake of that argument, the Court observed that, even if COPPA had imposed an agency relationship on parents for purpose of consenting to data collection, "consenting to an arbitration agreement is in no way a 'necessary' component of consenting to data collection on behalf of parents and students." *Shanahan*, 2024 WL 4658276 at *4. IXL failed to cite evidence or law showing otherwise.

    **4.**    <u>**Waived**</u>**: IXL's argument that it is entitled to discovery on the scope of the agency relationship purportedly created by COPPA.**

  IXL also requested, for the first time in its reply brief, an opportunity to conduct discovery to resolve any "disputed question of fact as to what is 'usual and necessary' to provide educational technology like that licensed from IXL." Dkt. 32 at 4. As before, the Court held that IXL also waived this argument, but nevertheless thoughtfully considered it on the merits.

  The Court held that "even factual findings that would be most favorable to IXL's position—*i.e.*, that all educational technology vendors would refuse to provide services unless the arbitration agreements in their contracts also bound parents and students—would not change the outcome" because IXL has not demonstrated that school districts acted as parents' agents when procuring educational technology. *Shanahan*, 2024 WL 4658276 at *6. The Court concluded that, because IXL did not produce, and cannot produce, any evidence that schools have acted as parents' agents, discovery as to the scope of any such agency is futile. *Id*. Once again, even if it wasn't waived, IXL's argument failed on procedural, evidentiary, and substantive-law grounds.

    **5.**    <u>**Waived**</u>**: IXL's argument about districts' representations as purported agents of students (under 13) and their parents.**

  At oral argument, IXL raised another new theory of consent: it argued that districts do, in fact, represent to IXL that they are authorized to act as parents' agents. In support, IXL cited one sentence in its Terms stating that, by providing IXL's services to children under 13, school districts represent that they have authority to consent to data collection on behalf of parents. *Id*. at *4. As with IXL's other waived arguments, the Court considered and rejected it, again citing black-letter law.

  The Court held that, "even if the argument were preserved, IXL cannot rely on the school

districts' apparent authority to consent on behalf of parents. To bind the parents to the arbitration agreement, IXL must show that the *parents*' conduct caused the school districts or IXL to believe that the school districts had authority to bind the parents." *Shanahan*, 2024 WL 4658276, at *4 (citing *Rogers v. Roseville SH, LLC*, 75 Cal. App. 5th 1065, 1074–75 (2022)) (emphasis in original). IXL produced no such evidence and—given that the entire purpose of Plaintiffs' lawsuit is to challenge IXL's conduct as lacking their consent—no such evidence exists.

## II. LEGAL STANDARD

### A. Only *non-frivolous* interlocutory appeals from the denial of a motion to compel arbitration warrant an automatic stay of litigation.

The Federal Arbitration Act governs arbitration agreements. "In 1988, Congress passed and President Reagan signed an amendment to the Act; the amendment is codified at 9 U.S.C. § 16(a)." *Coinbase*, 599 U.S. at 740 (2023). "Under § 16(a), when a district court denies a party's motion to compel arbitration, that party may take an interlocutory appeal." *Id*. "Section 16(a) creates a rare statutory exception to the usual rule that parties may not appeal before final judgment." *Id*. (citing *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 108–09, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009)).

Under the *Griggs* rule, an appeal, including an interlocutory appeal, "divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). The *Griggs* "rule is not based upon statutory provisions or the rules of civil or criminal procedure. Instead, it is a judge made rule originally devised in the context of civil appeals to avoid confusion or waste of time resulting from having the same issues before two courts at the same time." *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984).

In *Rodriguez v. Cnty. of Los Angeles*, the Ninth Circuit observed that although *Griggs* referred to the divestiture rule as jurisdictional, the Supreme Court has since made clear that only Congress may determine a lower federal court's subject-matter jurisdiction. 891 F.3d 776, 790–91 (9th Cir. 2018). Accordingly, "jurisdictional" rules derived from sources other than Congress are more accurately characterized as "mandatory claim-processing rules" that may be applied in a "less

stern" manner than true jurisdictional rules. *Id*.

Consistent with this authority, the Ninth Circuit has created an exception to the divestiture rule. *Id*. Recognizing the importance of avoiding uncertainty and waste, but concerned that the appeals process might be abused to run up an adversary's costs or to delay trial, the Ninth Circuit has authorized the district court to go forward in appropriate cases by certifying that an appeal is frivolous or waived. *Id.* Absent this certification, the district court is divested of its authority to proceed with trial pending appeal. *Id*. at 791. Thus, a district court *is not* automatically divested of authority or jurisdiction over a matter when a notice of appeal is filed. *See id.*

### B. An appeal is frivolous when it is wholly without merit or the result is obvious.

"A notice of appeal may be so baseless that it does not invoke appellate jurisdiction." *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989). Adopting the Seventh Circuit's "*Apostol* rule," the Ninth Circuit has recognized a district court's power to certify an interlocutory appeal as frivolous and to continue with proceedings without waiting for the outcome of that appeal. S*ee Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (recognizing the district court's power in the context of an interlocutory appeal from a qualified-immunity ruling); *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 791 (9th Cir. 2018) (same); *US v. LaMere*, 951 F.2d 1106, 1109 (9th Cir. 1991) (interlocutory appeal from double jeopardy ruling); *US v. Claiborne*, 727 F.2d 842, 851 (1984) (interlocutory appeal on separation-of-powers grounds). If the district court certifies an appeal as frivolous, the appellant may apply to the appellate court for a discretionary stay. *See Chuman*, 870 F.2d at 105 n.1.

The Ninth Circuit has adopted the procedure outlined in *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (en banc)). *See Coinbase*, 599 U.S. at 742 n.4 (citing, inter alia, *LaMere*, 951 F.2d at 1108 (9th Cir. 1991) (adopting *Dunbar*)). Under *Dunbar*, "the trial court itself" should attempt to balance the conflicting interests and "make written findings determining whether the motion is frivolous or nonfrivolous." 611 F.2d at 988; *Chuman v. Wright*, 960 F.2d 104, 104 (9th Cir. 1992).

An appeal is frivolous when it is "wholly without merit," *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1003 (9th Cir. 2002), or when the result of the appeal is "obvious," *Wilcox v. C.I.R.*, 848 F.2d 1007, 1009 (9th Cir. 1988). In other words, a frivolous appeal is one that is "so baseless that it

does not invoke appellate jurisdiction such as when the disposition is so plainly correct that nothing can be said on the other side." *Dagdagan v. City of Vallejo*, 682 F. Supp. 2d 1100, 1116 (E.D. Cal. 2010) (citation omitted). A court may also consider the circumstances surrounding an appeal in determining whether it is pursued for dilatory purposes. *See Dunbar*, at 611 F.2d at 988 (observing that "Dunbar made no effort to halt the trial by obtaining a stay or issuance of a writ" and that the timing of his appeal, in addition to its baselessness, were evidence of dilatory purposes); *Arthur v. Arthur*, 452 A.2d 160, 162–63 (D.C. 1982) (although denial of order was appealable, circumstances showed that appeal was pursued for "purely dilatory purposes").

### III. ARGUMENT

IXL's arguments in support of its appeal are entirely frivolous, and its conduct throughout litigation shows that it is pursuing an appeal solely for dilatory purposes.

**A.  IXL's two preserved arguments are so lacking in merit that its appeal warrants certification as frivolous.**

IXL has preserved only two arguments for appeal, both of which are utterly without merit.

IXL's first preserved argument—that COPPA imposes an agency relationship on parents and children in favor of schools as a matter of law—finds no support in the language of the COPPA statute or its implementing rule. *See* 15 U.S.C. §§ 6501, *et seq.*; 16 C.F.R part 312. It was only by flagrantly misrepresenting nonbinding FTC statements as part of the COPPA law and selectively quoting from those statements that IXL could make this argument, as the FTC itself observed. Dkt. 26-3 at 8 (detailing IXL's misrepresentations); Liddell Decl., Ex. G (Ferguson Concurring Statement.); Dkt. 27 at 8–9. And even if COPPA did create such an agency scheme, which it unambiguously does not, IXL failed to show either that the districts did agree to waive Plaintiffs' constitutional right to a jury trial, or that any such agreement would have been within the scope of the districts' purported authority.

COPPA is silent as to schools, agency, and arbitration. An appeal will not change that. And the factual record lacks evidence that Plaintiffs agreed to schools acting as their agent for any purpose, let alone to waive their right to a jury trial. An appeal will not change that, either. IXL's argument is thus "wholly without merit," and the result is "obvious": the Ninth Circuit will affirm the Court's

denial of IXL's Motion on this ground. *See Kitsap*, 314 F.3d at 1003; *Wilcox*, 848 F.2d at 1009.

IXL's second preserved argument—that Plaintiffs agreed to arbitration by "allowing" their children to continue using IXL's services at school after becoming aware of its Terms—is equally baseless. A party seeking to enforce a contract has the initial "burden to prove each and every element of a valid contract." *Stover*, 978 F.3d 1082. One such element is consent that is free, mutual, and communicated by each party. Cal. Civ. Code §§ 1550, 1565. While voluntary acceptance of a benefit may constitute consent, *id*. § 1589, Plaintiffs used IXL's services at school, which they are compelled to attend. Kan. Stat. § 72-3120.[2] If IXL sought to prove that Plaintiffs consented to its Terms by accepting a benefit (*i.e.*, by using its services), then IXL had the burden to show that the acceptance was voluntary. But IXL produced *no* evidence that Plaintiffs' use of IXL's products—in a compulsory environment—was voluntary. Furthermore, Plaintiffs expressly conveyed their *lack* of consent to IXL's Terms and conduct by filing this lawsuit. *See* Dkt. 1, *passim*. Thus, IXL's second argument is also wholly without merit and the result obvious: the Ninth Circuit will affirm the Court's holding that "a parent's decision to not pull their child out of public school or tell them to stop using a platform that is part of the curriculum does not constitute voluntary acceptance of the benefits—and burdens—of using IXL products." *Shanahan*, 2024 WL 4658276, at *6.

Few courts since the *Coinbase* decision have addressed the circumstances in which an appeal from an order denying a motion to compel arbitration may be certified as frivolous, but at least one is instructive. *Columbia Gas Transmission, LLC v. RDFS, LLC* involved a dispute as to whether plaintiff Columbia had the authority to enter the defendants' property to perform subsidence mitigation work. No. 5:23-CV-364, 2024 WL 973114, at *2–3 (N.D.W. Va. Feb. 27, 2024). The parties had entered into a Right of Way Agreement containing an arbitration provision that stated:

> The Landowner and the Company have agreed as a part of the consideration hereof that any damages to crops, trees or fences on said premises, the amount of which cannot be mutually agreed upon, shall be determined by a panel of arbitrators composed of three disinterested persons, of whom the Landowner and the Company shall appoint one each and the two arbitrators so appointed shall appoint the third, the

---

[2] Indeed, every state has compulsory education laws. *See* National Center for Education Statistics, "Compulsory school attendance laws," https://nces.ed.gov/programs/statereform/tab1_2-2020.asp (accessed December 11, 2024).

award of any two of whom shall be final and a condition precedent to the institution of any legal proceedings hereunder.

The court held that the arbitration provision did not apply because the dispute was not about "damage to crops, trees or fences," and instead concerned whether the plaintiff had the authority to enter the property to perform subsidence mitigation work. *Id*. Because the plaintiff persisted in enforcing an arbitration agreement that, by its express terms, did not purport to cover the dispute, the court certified that the appeal of the arbitration decision was "in fact, frivolous and taken in bad faith." *Id*. at *3.

In *Columbia Gas Transmission*, the parties did not dispute that they had entered into a binding arbitration agreement, but the court deemed the plaintiff's argument frivolous because it plainly exceeded the scope of that agreement. *Id*. Here, by contrast, IXL has failed to produce evidence of *any* binding agreement between the parties. Further, its agency-as-a-matter-of-law argument rests on fabrications with no basis in the text of COPPA, and its consent-by-acceptance-of-a-benefit argument ignores the fundamental requirement that IXL must prove that any such acceptance was voluntary. The patent baselessness of these arguments alone warrant certification of its appeal as frivolous.

**B.     IXL's conduct throughout the course of litigation demonstrates that it pursues a frivolous appeal solely for delay.**

IXL's meritless arguments should be considered alongside its dilatory tactics, namely, its refusal to participate in litigation and its failure to seek a stay of the proceedings from the Court, while effectively helping itself to one. As previously discussed, IXL requested an extended briefing schedule on the false pretense that it needed time to investigate Plaintiffs' claims to prepare a substantive Rule 12 motion. *See* Section I.A., *supra*. IXL also refused to timely participate in a Rule 26(f) conference and, despite filing a notice of appeal, has yet to seek a stay in this case. Perhaps IXL assumes the Court must stay the proceedings *sua sponte*, but it hasn't made that argument. *Id*.

IXL failed to produce any evidence supporting its arguments, persistently misrepresented the nature and language of its cited authority so flagrantly that the FTC filed an amicus brief to correct IXL's misrepresentations, and has engaged in delay tactics at every turn. Further, IXL has flooded the Court with competing byzantine theories, several of which are not timely asserted, to advance the shocking position that a company may force children and their parents to forgo their constitutional

MOTION TO CERTIFY AS FRIVOLOUS         13

right to a jury trial simply by selling its products into schools. This is precisely the kind of bad-faith behavior that the *Coinbase* majority contemplated when it observed that district courts may certify an interlocutory appeal as frivolous "to prevent unwarranted delay and deter frivolous interlocutory appeals." *See Coinbase*, 599 U.S. 736 at 745.

IXL's baseless appeal will serve only to further delay the proceedings, as is IXL's intent, at the expense of school-aged children and their parents. By certifying the appeal as frivolous, the Court will not deprive IXL the opportunity to pursue an appeal; it will simply ensure that this case proceeds and that Plaintiffs' claims will be adjudicated without further undue delay.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court exercise its discretion under Coinbase, certify this appeal as frivolous, and refrain from staying these proceedings during the pendency of IXL's appeal.

Dated:  December 20, 2024                    Respectfully submitted,

By: */s/ Ryan J. McGee*

Julie Liddell (*pro hac vice*)  
julie.liddell@edtech.law  
**EDTECH LAW CENTER PLLC**  
P.O. Box 300488  
Austin, TX 78705  
Telephone: (737) 351-5855  

Michael F. Ram (CA Bar No. 238027)  
mram@forthepeople.com  
**MORGAN & MORGAN**  
711 Van Ness Avenue, Suite 500  
San Francisco, CA 94102  
Telephone: (415) 358-6913  
Facsimile: (415) 358-6923  

Ryan J. McGee (*pro hac vice*)  
rmcgee@forthepeople.com  
John A. Yanchunis (*pro hac vice*)  
jyanchunis@forthepeople.com  
**MORGAN & MORGAN**  
201 N Franklin Street, 7th Floor  
Tampa, FL 33602  
Telephone: (813) 223-5505  
Facsimile: (813) 222-4736  

*Attorneys for Plaintiffs*