ORRICK, HERRINGTON & SUTCLIFFE LLP
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant*
IXL LEARNING, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S., AMY WARREN, on behalf of herself and her minor child B.W., and KIMBERLEY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IXL LEARNING, INC.,<br><br>Defendant. | Case No. 3:24-cv-02724-RFL<br><br>**DEFENDANT IXL LEARNING, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY INTERLOCUTORY APPEAL AS FRIVOLOUS**<br><br>Date: February 11, 2025<br>Time: 10:00 a.m.<br>Court: Room 15, 18th Floor<br>Judge: Hon. Rita F. Lin<br><br>Complaint Filed: May 7, 2024 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The Federal Arbitration Act "promote[s] appeals from orders barring arbitration" and stays district court proceedings while those appeals play out. *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1118 (9th Cir. 2020) (citation omitted); *see* 9 U.S.C. § 16(a). That interlocutory review scheme is essential to Congress's "national policy favoring arbitration," ensuring that parties invoking arbitration clauses have a full opportunity to litigate their applicability before trial proceedings begin. *Langere*, 983 F.3d at 1118. All of that hinges on the automatic stay; without it, "Congress's decision in § 16(a) to afford a right to an interlocutory appeal would be largely nullified" because "many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost," opening the door for "blackmail settlements"—particularly "in class actions." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023).

Plaintiffs in this putative class action seek to unravel the FAA's interlocutory review scheme in precisely that way. And they do so by seeking to certify as frivolous an appeal that this Court ***already*** described as ***not*** "at all … frivolous." Oct. 22, 2024 Hearing Tr. at 43:6-12. Not surprisingly, Plaintiffs come nowhere close to carrying their "extremely high burden" on this issue. *Microsoft Corp. v. Commonwealth Sci. & Indus. Rsch. Org.*, No. C 05-01894 MJJ, 2005 WL 8165886, at *2 (N.D. Cal. Nov. 11, 2005). An appeal is not frivolous merely because it is unlikely to succeed, or even because it "almost necessarily … lacks support." *O'Connell v. Smith*, No. CV-01905-MWF (PJWx), 2014 WL 12819563, at *2 (C.D. Cal. Jan. 07, 2014). Rather, an appeal may be certified as frivolous only if it is so "wholly without merit," *Microsoft*, 2005 WL 8165886, at *2, that "***nothing*** can be said on the other side," *O'Connell*, 2014 WL 12819563, at *2 (citation omitted). That is a "quite high" bar in any case. *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, No. C 12-04634 SI, 2013 WL 3458215, at *1 (N.D. Cal. July 9, 2013). And courts are "especially mindful not to overstep" where, as in § 16(a), "Congress has expressly conferred a statutory right to take an interlocutory appeal." *Hitachi Constr. Mach. Co. v. Weld Holdco, LLC*, No. 23 Civ. 490 (NRB), 2024 WL 263229, at *2 (S.D.N.Y. Jan. 23, 2024).

There is much to be said in favor of IXL's appeal, and those arguments are not merely non-

frivolous—they are meritorious. To begin with, IXL's position is that the order denying IXL's motion to compel, ECF No. 41 ("Order"), applied the wrong legal standard to one of IXL's lead arguments. IXL explained that, at minimum, Plaintiffs assented to the arbitration clause in IXL's Terms of Service by continuing to use IXL's products with actual knowledge of the clause. The Order did not dispute that such conduct would ordinarily create a binding contract, since "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Order 11 (quoting Cal. Civ. Code § 1589). The Order held only that no contract formed here because "***IXL* has failed to show that Plaintiffs' continued use of IXL was voluntary.**" *Id.* (emphasis added). IXL will argue that California law imposes no obligation to submit evidence of voluntariness, and that Plaintiffs instead had the burden to prove their use was involuntary—a burden they plainly failed to carry. That robust appellate issue suffices to defeat Plaintiffs' motion.

Although the Court need not go further, IXL has several more appellate arguments that easily exceed the minimal threshold for non-frivolousness. IXL has a strong argument, for instance—indeed, an argument already endorsed by another district court—that COPPA authorizes education technology providers to "lawfully presume" that when a school contracts to use services involving data collection, "the school's authorization is based on the school having obtained the parent's consent." *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1260 (D.N.M. 2020). And California agency law gives IXL grounds to argue—echoing another district court decision, *Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*, 478 F. Supp. 3d 919, 927 (C.D. Cal. 2020)—that the schools' authority to consent to data collection necessarily implies further authority to consent to arbitration. Still more, IXL has a strong argument that even if COPPA itself did not authorize IXL to treat the schools as parents' agents, California common law did—as evidenced by IXL's Terms of Service, in which the schools expressly represented that such an agency relationship existed.

IXL thus has multiple, independent appellate arguments that far exceed the low bar for non-frivolousness. Accordingly, the Court should deny Plaintiffs' request to take the unprecedented step of depriving IXL of its right to a stay while the appeal plays out.

## II. ARGUMENT

### A. IXL Has A Meritorious Argument That Plaintiffs Assented To The Arbitration Clause Through Continued Use Of IXL's Services

The Order correctly recognized that "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Order at 11 (quoting Cal. Civ. Code § 1589). And there is no dispute that (1) Plaintiffs accepted the benefits of IXL's services by continuing to use them; and (2) by the time their Complaint was filed, at the latest, Plaintiffs were doing so with full, actual knowledge of the governing Terms of Service, including the arbitration clause (as demonstrated by the Complaint's discussion thereof).[1] That means Plaintiffs consented through their conduct to IXL's arbitration provisions—just as they consented to the Terms' neighboring choice-of-law provisions, which they expressly invoked in filing this lawsuit. ECF No. 1 ("Compl.") ¶ 5.

The Order held otherwise only by misallocating the burden of proof regarding the voluntariness of Plaintiffs' conduct. The Order implicitly ruled that IXL was obligated to affirmatively prove voluntariness, rejecting IXL's argument solely because it "produce[d] no evidence that this ongoing use is voluntary for either the students or their parents." Order at 11. IXL's position is that California law imposes no such obligation, as state courts have emphasized that "the party *opposing* enforcement of a contract"—here, Plaintiffs—"generally has the burden to show his or her assent was involuntary." *Saheli v. White Mem'l Med. Ctr.*, 21 Cal. App. 5th 308, 324 (2018) (citations omitted); *see Doe v. Steele*, Case No. 20-cv-1818-MMA (MSB), 2021 WL 927363, at *8 (S.D. Cal. 2021) ("The party asserting that an agreement was formed under duress bears the burden of proof by a preponderance of the evidence."); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997) ("a party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense"). Put simply, IXL has a strong argument that voluntariness is not an "element" that IXL is obligated prove, Order at 11 (quoting *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020));

---

[1] The test for imputing constructive knowledge of contract terms set out in decisions like *Berman v. Freedom Fin. Network,* LLC, 30 F.4th 849 (9th Cir. 2022), has no bearing where, as here, the party had actual knowledge. *Cf.* Order 11.

3
DEFENDANT IXL LEARNING, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO CERTIFY INTERLOCUTORY APPEAL AS FRIVOLOUS

instead, involuntariness is a defense on which Plaintiffs bore the evidentiary burden.[2]

That distinction is critical here. Plaintiffs offered no evidence whatsoever that their continued use of IXL's services was involuntary. Indeed, Plaintiffs never even invoked (let alone attempted to meet) the exacting legal standard for involuntariness. At most, they submitted a few sentences of unfounded attorney argument speculating that Plaintiffs who declined to use IXL's services might have "face[d] fear of retaliation, or of being cast as adversarial to teachers and the school system." ECF No. 27 ("Arb. Opp.") at 11-12. That is not any sort of evidence; "contract defenses require more" than "attorney argument." *Steele*, 2021 WL 927363 at *9; *see Olivas v. Hertz Corp.*, Case No. 17-cv-01083-BAS-NLS, 2018 WL 1306422, at *8 (S.D. Cal. 2018) (compelling arbitration where the party opposing arbitration "provide[d] no substantiation for his unsworn allegations or the inferences he suggests this Court draw from his pleading"). And in any event, a vague "fear" of being considered "adversarial" is not the sort of extreme condition that might render continued use of IXL's services involuntary. *Cf., e.g.*, *Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C 11-01036 JSW, 2012 WL 2917450, at *3 (N.D. Cal. 2012) ("To render a contract unenforceable for duress, a party must establish (1) that it involuntarily accepted the other party's terms, (2) that circumstances permitted no other alternative, and (3) that such circumstances were the result of the other party's coercive acts." (citation omitted)). Plaintiffs' only other argument on this front was that "children are required to attend school." Arb. Opp. at 12 (citing Kan. Stat. § 72-3120). But that statute mandates only "compulsory school attendance," Kan. Stat. § 72-3120, not the use of any particular educational tool. And Plaintiffs offered no evidence that parents who declined to have their children use IXL's services would have suffered any adverse action from their school.

On appeal, therefore, IXL has grounds to argue that the Order applied the wrong legal standard and that Plaintiffs failed to establish involuntariness under the correct rule. That is a far cry from frivolous—which, again, is why the Court already told Plaintiffs' counsel that IXL's appeal would not be "at all … frivolous." Oct. 22, 2024 Hearing Tr. at 43:6-12.

---

[2] Even if IXL had born a burden of establishing voluntariness, moreover, the Court should have permitted discovery on that fact issue before "dispos[ing]" of IXL's "motion to compel arbitration." *Knapke v. PeopleConnect, Inc*, 38 F.4th 824, 831 (9th Cir. 2022) (citations omitted).

**B.     IXL Has A Meritorious Argument That COPPA Authorized It To Treat The Schools As Plaintiffs' Agents For Purposes Of Assenting To The Arbitration Clause**

IXL's second meritorious—and certainly non-frivolous—argument is that even before Plaintiffs assented through their conduct, COPPA had already authorized IXL to treat the schools as Plaintiffs' agents in assenting to the Terms of Service, including the arbitration clause. Plaintiffs label this argument "radical" and accuse IXL of having "falsely and misleadingly" presented FTC commentary as relevant authority. Mot. 5. Hardly. A federal court has already construed COPPA to mean that education technology providers "can *lawfully presume*" that when a school contracts to use services involving data collection, "the school's authorization is based on the school having obtained the parent's consent." *Balderas*, 489 F. Supp. 3d at 1260 (emphasis added). So IXL's argument that COPPA authorized it to treat schools as parents' agents on certain issues is far from "radical"—it is endorsed by a published federal court opinion. And that court afforded *Skidmore* deference to the very FTC commentary that Plaintiffs impugn, which "persuasive[ly]" confirmed that education technology providers make a "reasonable *effort*" to verify parental consent (as the COPPA Rule requires) by presuming that schools act as authorized agents. *Id.* at 1259, 1261 (quoting 16 C.F.R. § 312.2). In short, IXL's argument for presumptive agency under COPPA closely tracks the *Balderas* decision and is far from "wholly without merit," *Microsoft*, 2005 WL 8165886, at *2, even if the Order took a contrary view.

IXL likewise has a strong argument that the scope of the schools' presumptive agency extended to agreeing to the arbitration clause. To be sure, the FTC's COPPA commentary directly addressed schools' agency to secure education technology services by agreeing to providers' data collection, without mentioning arbitration. But under California law, that agency carries with it implied authority "to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities." *Avina v. Patenaude & Felix, APC*, Case No. 20-cv-0166-BAS-MDD, 2021 WL 5990037, at *13 (S.D. Cal. Dec. 16, 2021). Accordingly, where an agent has authority to, say, make a purchase on the principal's behalf, that agent perforce also has authority to "[s]ign[] an arbitration agreement [that is] a necessary step in making that purchase." *Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*, 478 F. Supp. 3d 919, 927 (C.D. Cal. 2020). So, too, here: If schools are

1  authorized (whether by operation of COPPA or some other legal principle) to consent to data
2  collection on parents' behalf, then under California law those schools are also authorized to consent
3  to an arbitration agreement that is a necessary step in providing that consent.

4  Far from finding that argument frivolous, the Court *agreed* with most of the above analysis.
5  The Order acknowledged, for instance, that "[a]n agent has implied authority to do everything
6  'necessary or proper and usual, in the ordinary course of business, for effecting the purpose of their
7  agency.'" Order at 6 (quoting 2B Cal. Jur. 3d Agency § 65). And it agreed that, under that rule, an
8  agent with "authority to purchase [cryptocurrency] tokens" would have "implicit authority to sign
9  an arbitration agreement during that transaction." *Id.* (citing *Crypto Asset Fund*, 478 F. Supp. 3d
10 919). The legal basis for IXL's argument is thus not only non-frivolous, but has been affirmatively
11 ratified by the Court.

12 Indeed, the only point of substantive disagreement between IXL and the Court was purely
13 factual in nature—namely, whether "consenting to an arbitration agreement is … a 'necessary'
14 component of consenting to data collection." Order at 6. Whereas IXL had contended that "[w]hen
15 licensing technology, it is both 'usual and necessary' for there to be terms and conditions of use
16 that extend beyond mere consent to data gathering," ECF No. 32 at 4, this Court rejected that
17 argument on the ground that—unlike a cryptocurrency transaction, in which "sign[ing] an
18 arbitration clause" would be necessary—a "school district does not need to sign an arbitration
19 agreement in order to consent to collection of data about a student." Order at 6. IXL's position is
20 that no evidence in the record supports that finding.

21 That lack of evidence to support the Order's factual conclusion not only means that IXL's
22 contrary position is non-frivolous, but also provides an independent basis for IXL's challenge to
23 the Order. As the Ninth Circuit recently explained, where (as here) there exists "a factual dispute
24 about the scope of [a purported agent's] authority," courts cannot simply proceed to deciding a
25 motion to compel. *Knapke*, 38 F.4th at 833. Indeed, courts are "not authorized to dispose of a
26 motion to compel arbitration until after [material] factual disputes have been resolved." *Id*. at 831
27 (citations omitted). Accordingly, IXL has grounds to argue that rather than denying the motion to
28 compel, the Order should have permitted "discovery" on the question of whether consenting to an

1 arbitration clause was necessary in this case, to be followed by a motion for "summary judgment"
2 on the matter, "followed by a mini-trial, if necessary." *Id.* at 833.

3   Here, too, IXL's argument is far from frivolous, as the Court largely did not disagree with the substance of the above argument, but instead set aside IXL's arguments as waived. Order at 10.[3] In the Court's view, all of IXL's arguments based on "a common-law agency relationship between the school districts and parents" were waived because they were "raised for the first time on reply." *Id.* at 7-8. But IXL has grounds to challenge that waiver finding on appeal for at least three reasons.

   *First*, "[a]s the Supreme Court has made clear, it is claims that are deemed waived or forfeited, not arguments," so "[a]ppellants can make any argument in support of their claim on appeal—they are 'not limited to the precise arguments they made below.'" *Allen v. Santa Clara Cnty. Corr. Peace Officers Ass'n*, 38 F.4th 68, 71 (9th Cir. 2022) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)). Here, IXL's argument that the common law gave the school districts authority, as the parents' agents, to consent to the arbitration agreement "is not a new claim but is, instead"—at most—"a new argument in support of [IXL's] consistent claim" that the school districts acted as the parents' agents when agreeing to arbitration. *Id.*

   *Second*, IXL in fact raised these arguments in its opening brief before this Court—including by citing the very caselaw discussed above. *See* ECF No. 19. at 12-13 (citing, e.g., *Crypto Asset Fund*, 478 F. Supp. 3d at 927).

   *Third*, even if IXL had raised these arguments only in reply, they would still not be waived because they were raised "in response" to "opposition" briefing. *Remington v. Mathson*, No. CV 09-4547 NJV, 2010 WL 1233803, at *2 n. 3 (N.D. Cal. Mar. 26, 2010); *Schwendeman v. Health Carousel, LLC*, Case No. 18-cv-07641-BLF, 2019 WL 6173163, at *5 (N.D. Cal. Nov. 20, 2019) (reply arguments made in response to challenges to scope of agreement in plaintiff's opposition not waived). Specifically, IXL made these points in response to the FTC's argument in opposition that

---

[3] The Court briefly added that discovery into "the scope of [the school districts'] agency [would be] futile," because IXL did not "demonstrate[] that the school districts acted as parents' agents" at all. Order at 10. But as demonstrated both above and below, IXL has non-frivolous arguments that the Court's finding of no agency relationship was incorrect, and hence a non-frivolous basis for disputing this ground as well.

"[t]he scope of any agency relationship is not determined by the parental 'notice and consent process' required by COPPA," and hence must be decided as a matter of state law. ECF No. 31 at 8. Thus, with this argument too, IXL has a more than reasonable basis for appealing this Court's decision.[4]

### C. IXL Has A Meritorious Argument Under State Law That The Schools Acted As Plaintiffs' Agents For Purposes Of Assenting To The Arbitration Clause

Even if COPPA itself created no agency between Plaintiffs and their schools, IXL has a strong argument that an agency existed under California law, as evidenced by IXL's Terms of Service. As this Court held, IXL submitted "sufficient proof to demonstrate the school districts' assent to the Terms." Order at 2, n. 1. And through that assent, the school districts expressly "represent[ed] and warrant[ed] that [they] ha[d] the authority to provide consent on behalf of parents for IXL to collect information from students under 13 before allowing such students to access [IXL's] Service." *See* ECF No. 19.1 at 4. That express representation of authority to act on the parents' behalf—i.e., as the parents' agent—is powerful evidence that such an agency relationship in fact existed.

The Court rejected this argument because it understood IXL to be making a point about "apparent authority."[5] Order at 7. Specifically, the Court invoked the rule that apparent authority may be created only by an act of the principal, not the apparent agent. *Id.* (citing *Rogers v. Roseville SH, LLC*, 75 Cal. App. 5th 1065, 1074–75 (2022)). And it reasoned that no such authority existed here because agreeing to the Terms of Service was an act of the schools (the agents), not the parents (the principals). *Id.* But IXL will contend on appeal that its point was different: Rather than showing

---

[4] Curiously, Plaintiffs ultimately cite the FTC's participation as an amicus on these issues as evidence that IXL's side of the dispute is so meritless as to be frivolous. Mot. 5. To the contrary: The FTC weighs in only selectively on difficult or uncertain issues that the agency feels would benefit from its "unique information or perspective." ECF No. 31 at 8. That the FTC did so here simply underscores that the dispute over the scope of agency under COPPA is far from frivolous and warrants § 16(a)'s automatic stay while the Ninth Circuit considers the issue.

[5] The Court rejected this argument primarily because it believed (incorrectly) that "[t]h[e] argument is waived because it was never raised in the briefs." Order at 7. As explained above, however, "arguments" cannot be waived, only "claims." *Allen*, 38 F.4th at 71. And IXL's "argument" (this Court's term) about the Terms of Service was "not a new claim," but instead an "argument in support of [IXL's] consistent claim" that the school districts acted as the parents' agents when agreeing to arbitration. *Id.* Said otherwise, the relevant issue—which IXL has plainly preserved—is whether the school districts acted as the parents' agents; IXL "was not required to invoke … by name" at the outset the source of law by which that agency relationship was created. *See Bement v. Cox*, 689 F. App'x 491, 492 (9th Cir. 2017) (citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014)) (reserving grant of summary judgment based on non-movant's failure to invoke, by name, the statute providing a legal basis for his claim).

*apparent* authority, the Terms provide evidence of ***actual*** authority. Just as a document describing an event is relevant (even if not necessarily conclusive) evidence of that event having occurred, the Terms' description of the schools' having obtained authority to act on parents' behalf is relevant evidence of that authority having been obtained. Indeed, that evidence is especially powerful here not just because the record is utterly devoid of any evidence to the contrary, but also because there is no reason that the school districts would have lied when making their representations. What is more, even if the Court did not view the Terms of Service as conclusive on this point (although it should have, given the absence of contrary evidence), at the very least they established a factual dispute on the question of agency. As explained above, IXL has grounds to argue that the Court was obligated to resolve that factual dispute through discovery, summary judgment, and (if necessary) a mini-trial, before denying IXL's motion to compel. *See supra* II.B.[6]

### D. Plaintiffs' Allegations Regarding IXL's Litigation Conduct are False and Irrelevant.

Perhaps recognizing the weakness of their substantive arguments, Plaintiffs begin and end their brief on a different point entirely—suggesting (remarkably, and at some length) that IXL's statutory right to an automatic stay should somehow turn not on the strength of IXL's appeal, but on various (and largely mutually agreed upon) scheduling minutiae. *See* Mot. 2-4, 13-14. Plaintiffs' primary argument on this point seems to be that the Court should certify IXL's appeal as frivolous because when Plaintiffs and IXL agreed to extend IXL's deadline to "file its response(s) to Plaintiffs' Complaint" to July 12, 2024 and set a briefing schedule to any "responsive motion" IXL may file, *see* ECF Nos. 15, 16, Plaintiffs believed that IXL would be filing a Rule 12(b)(6) motion, rather than a motion to compel arbitration, on that date. *See* Mot. 2-3, 13. Plaintiffs' suggestion that the FAA's automatic stay should dissolve because they were previously confused about whether or when IXL would file a Rule 12(b)(6) motion is baffling—not just because IXL already addressed Plaintiffs' confusion months ago by voluntarily agreeing to set a briefing schedule for a Rule 12(b)(6) motion (which has been completed), but also because the Court itself specifically declined

---

[6] The Court also repeated its earlier contention that even if the Terms of Service established an agency relationship, "IXL has not shown that signing an arbitration agreement on the students' and their parents' behalf is within the scope of the school districts' agency." Order at 8. As explained above (at II.B), IXL has strong arguments that the Court's conclusion on that point was incorrect.

to "hear [IXL's] motion to dismiss on the merits at this time to allow IXL to seek an immediate appeal as to its motion to compel arbitration." Order at 12. Even further afield is Plaintiffs' complaint that IXL resisted participating in a premature Rule 26(f) conference. *See* Mot. at 2-3. Rule 26(f) requires parties to confer "at least 21 days before a scheduling conference is to be held or a scheduling order is due." The case management conference was vacated back in May 2024, and never rescheduled, *see* ECF No. 16—meaning that IXL is under no obligation to participate in a Rule 26(f) conference at this time. Plaintiffs' suggestion that IXL is somehow in violation of Rule 26(f), and in a way that would deprive it of core rights under the FAA, is thus wholly without basis.

### III. CONCLUSION

For all of the foregoing reasons, the Court should reaffirm its prior statement that IXL's appeal is not "at all … frivolous," Oct. 22, 2024 Hearing Tr. at 43:6-12, by denying Plaintiffs' motion.

Dated: January 10, 2025

ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ *David P. Fuad*
Aravind Swaminathan (*pro hac vice*)
aswaminathan@orrick.com
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 639-9157

David P. Fuad (SBN 265193)
dfuad@orrick.com
Thomas Fu (SBN 325209)
tfu@orrick.com
355 S. Grand Ave., Suite 2700
Los Angeles, CA 90017
Telephone: (213) 629-2020

*Attorneys for Defendant IXL Learning, Inc.*