**EDTECH LAW CENTER PLLC**
Julie Liddell (*pro hac vice*)
P.O. Box 300488
Austin, TX 78705
Telephone: (737) 351-5855
julie.liddell@edtech.law

**MORGAN & MORGAN**
Ryan J. McGee (*pro hac vice*)
John A. Yanchunis (*pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
rmcgee@forthepeople.com
jyanchunis@forthepeople.com

Michael F. Ram, CA Bar No. 104805
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
mram@forthepeople.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRETCHEN SHANAHAN, on behalf of herself and her minor children A.S. and B.S., AMY WARREN, on behalf of herself and her minor child B.W., and KIMBERLY WHITMAN, on behalf of herself and her minor child H.W., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IXL LEARNING, INC.<br><br>Defendant. | Civ. No. 3:24-cv-02724-RFL<br><br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION TO CERTIFY AS FRIVOLOUS THE INTERLOCUTORY APPEAL OF IXL LEARNING, INC.**<br><br>Date:  February 11, 2025<br>Time:  10:00 a.m.<br>Court:  Room 15, 18th Fl.<br>Judge:  Hon. Rita F. Lin |

IXL has failed to advance a consistent, coherent theory that would allow it bind to arbitration students who use IXL's services as part of their compulsory public education.

In its opening brief, IXL argued (1) that COPPA authorizes schools to consent to arbitration on behalf of students and parents as a matter of law, and, alternatively (2) that parents consented to IXL's Terms, including the arbitration provision, by allowing their children to continue using IXL's services at school after becoming aware of the arbitration provision in its Terms of Service ("Terms"). On reply, IXL raised a new argument that, perhaps rather than COPPA, it is instead some mix of FTC guidance and common-law agency principles that allows schools to bind students and their parents to arbitration. At oral argument, IXL asserted for the first time that a representation and warranty in IXL's contract of adhesion with school districts that districts have "the authority to provide consent on behalf of parents for IXL to collect information from students under 13" is evidence of the districts' authority to act on parents' behalf. In its opposition to the present motion, IXL asserts yet another theory: that Plaintiffs must prove that any purported assent to arbitration was given involuntarily. IXL's ever-shifting rationale underscores that it lacks any basis in fact or law to assert that students and their parents are bound to the arbitration provision in its Terms, and that its motion to compel—including its appeal from this Court's thorough and well-reasoned order—is sought for the sole purpose of delay. Further demonstrating this point, IXL could not produce any original documentation to support its request, instead relying on snapshots from the Internet archive database Wayback Machine. Plaintiffs respectfully request that the Court certify IXL's appeal as frivolous and allow this case to continue on a trial schedule while IXL's appeal plays out.

### A. IXL's continued-use argument is frivolous.

IXL's Motion to Compel Arbitration devoted a mere two paragraphs to its argument that the Plaintiffs consented to the arbitration clause by allowing their children's continued use of IXL's services with knowledge of the Terms. Dkt. 19 at 6–7. This Court correctly disposed of that argument by observing that California law requires that IXL, as the party alleging that a contract exists in the first instance, "'has the burden to prove each and every element of a valid contract—including mutual assent.'" *Shanahan v. IXL Learning, Inc.*, No. 24-CV-02724-RFL, 2024 WL 4658276, at *6 (N.D.

Cal. Nov. 1, 2024) (quoting *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082 (9th Cir. 2020)).

The Court continued, observing that "California law provides that '[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.'" *Id*. (citing Cal. Civ. Code § 1589) (alterations in original). The Court held that "IXL has failed to show that Plaintiffs' continued use of IXL was voluntary," and therefore that IXL had failed to demonstrate that a contract existed between itself and the Plaintiffs. *Id*.

In its opposition, IXL suggests that it will argue on appeal that a valid contract existed between itself and the Plaintiffs, and that it was the Plaintiffs' burden to prove that their assent—an essential element of the formation of that contract—was not given voluntarily. Dkt. 51 at 3. In other words, IXL presumes the existence of a contract and then improperly shifts the burden to the Plaintiffs to prove that their assent was not freely given. *Id*. This is a surprising strategy given that defendants in data privacy cases routinely take the opposite position—that no valid contracts ever exist until proven. Apparently that is only the case when it inures to plaintiffs' instead of defendants' benefit.

IXL's cited authority regarding the allocation of the burden of proof is distinguishable. In each of the cases IXL relies upon, the party opposing the enforcement of the contract indisputably signed it. *Saheli v. White Mem'l Med. Ctr.*, 21 Cal. App. 5th 308, 314 (2018) (plaintiff signed a training agreement and an acknowledgement that she received a copy of an employee handbook and was aware it contained the arbitration procedures); *Doe v. Steele*, No. 20-CV-1818-MMA (MSB), 2021 WL 927363, at *5 (S.D. Cal. Mar. 11, 2021) (plaintiff signed two agreements for two film projects); *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997), *as modified* (July 30, 1997) (plaintiff signed a health care enrollment agreement); *Olivas v. Hertz Corp.*, No. 17-CV-01083-BAS-NLS, 2018 WL 1306422, at *1 (S.D. Cal. Mar. 12, 2018) (plaintiff agreed to a car rental form); *Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C 11-01036 JSW, 2012 WL 2917450, at *1 (N.D. Cal. July 17, 2012) (parties executed a Settlement Agreement and a Patent License Agreement).

Here, there is no evidence of a signed contract between IXL and the Plaintiffs, nor between IXL and the school districts. "Mutual assent to a contract is essential." *Saheli*, 21 Cal. App. 5th at 324

(2018) (citing Cal. Civ. Code §§ 1550, 1565). In the case of a signed contract, the evidence of the parties' mutual assent is right there on the page. But here, there is no such evidence and therefore no contract, and it remains IXL's burden to prove that there exists a contract to enforce.

The Court properly allocated the burden to IXL as the party alleging the existence of a contract. *Shanahan*, 2024 WL 4658276, at *6 (*citing Stover*, 978 F.3d 1082). This Court's disposition was "so plainly correct" that nothing can be said against it. *Dagdagan v. City of Vallejo*, 682 F. Supp. 2d 1100, 1116 (E.D. Cal. 2010). IXL's argument that the Court applied the wrong legal standard is "wholly without merit" and the result is "obvious": the Ninth Circuit will affirm. *Wilcox v. C.I.R.*, 848 F.2d 1007, 1009 (9th Cir. 1988). Accordingly, the argument is frivolous

### B. IXL's agency arguments are frivolous

IXL next argues "an express agency existed between Plaintiffs and the relevant school districts as a matter of federal law," specifically COPPA and its implementing Rule. Dkt. 19 at 4; *see* Dkt. 51 at 5–8. IXL never sought to establish, as a matter of fact, that an agency relationship existed between Plaintiffs and their school districts under the common law.[1] *See* Dkt. 19 at 4–6.

"[A]gency . . . is generally a question of fact" governed by state law, and not a creature of federal statute as IXL contends. *See Zimmerman v. Superior Ct.*, 220 Cal. App. 4th 389, 392 (2013). The law of agency arises from the common law and is codified in the California Civil Code. *van't Rood v. Cnty. of Santa Clara*, 113 Cal. App. 4th 549, 570–73 (2003). The *van't Rood* court extensively discussed the legal principles of agency, beginning with the definition of an agent and the distinction between actual and ostensible agency. *Id*. "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency. Civ. Code, § 2295. An

---

[1] This Court noted that IXL "suggested" such a common-law relationship for the first time in its reply and "vacillated at oral argument as to whether it was indeed advancing such a claim." *Shanahan*, 2024 WL 4658276, at *5; *see generally* October 22, 2024 Hearing Tr. 17:1–21 ("The premise of our reply brief . . . is that COPPA creates an express authority and the scope of that authority is determined by ordinary principles of agency law" and that "the scope of the agency is filled in by ordinary principles of agency law[.]"); *see generally id.* at 7:3–19:10. A review of IXL's reply is consistent with IXL's representation at the hearing, showing that IXL reiterated its agency-as-a-matter-of-law argument under COPPA and looked to the common law only to determine the scope of that purported agency. Dkt. 32 at 2–3.

agency is either actual or ostensible. Civ. Code, § 2298. An agency is actual when the agent is really employed by the principal. Civ. Code, § 2299. An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. Civ. Code, § 2300." *Id*. at 571 (internal quotations and citations omitted here and in subsequent citations to *van't Rood*).

Regarding the creation of an agency relationship, "[a]ctual agency typically arises by express agreement," though it "may be implied from the conduct of the parties." *Id*. "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. The principal must . . . indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control." *Id*. "Thus, the formation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship." *Id*.

There can be no agency relationship without control of the agent by the principal: "In the absence of the essential characteristic of the right of control, there is no true agency." *Id*. at 572. "Control may not be inferred merely from the fact that one person's act benefits another." *Id*.

"An actual agent may have either actual or ostensible authority to act for the principal." *Id*. "Actual authority is such as a principal intentionally confers upon an agent, or intentionally or by want of ordinary care allows the agent to believe himself to possess. Civ. Code, § 2316. Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess. Civ. Code, § 2317." *Id*.

As to proving the existence of an agency relationship as a matter of fact, "[the] relationship may be established by evidence of the acts of the parties and their oral and written communications." *Id*. at 573. Similarly, "proof of [the scope of an agent's] authority, either actual or ostensible, [ ] may be established by circumstantial evidence." *Id*.

IXL has not alleged an actual agency relationship between the Plaintiffs and their school districts as a matter of fact, and it cannot credibly dispute that no such relationship exists: there is no question that the Plaintiffs do not "really employ[]" their districts, nor that Plaintiffs carelessly misled

their districts to believe they had Plaintiffs' authority. *Id*. at 571 (*citing* Civ. Code, § 2299). Likewise, IXL has not alleged an ostensible agency relationship as a matter of fact; accordingly, IXL has not identified any intentional or careless acts of the Plaintiff parents as principals that caused IXL as a third party to believe that the school districts were the parents' agents, despite not being really employed by the parents. *Id*. at 571 (citing Civ. Code, § 2300).

With actual agency off the table, had IXL sought to prove—as a matter of fact—an ostensible agency relationship between the Plaintiff parents (as principals) and their respective school districts (as agents), IXL itself would have had evidence of Plaintiffs' acts that gave rise to IXL's misplaced belief that the districts were the parents' agents and could have produced it. Had IXL sought to determine the scope of the districts' authority within that ostensible agency relationship, it could have sought early discovery in this case for any evidence it did not already have. But IXL never advanced this argument, nor did it seek discovery pertaining to ostensible agency or the scope of authority, nor did it produce anything relevant from its own records to support this argument.

Instead, IXL advanced only a novel agency-as-a-matter-of-federal-law argument. This Court addressed that argument at length, considering not only whether an agency relationship exists under COPPA, but also the scope of the districts' authority under any such agency. *Shanahan*, 2024 WL 4658276, at *3–*4. This Court correctly concluded that "IXL's reading of COPPA would directly undermine its primary statutory purpose: to 'protect children's online privacy by requiring verifiable parental consent before an operator [of online services] collects personal information.'" *Id*. at *3. Continuing, the Court observed that "[u]nder IXL's view, school districts would be authorized to sign away any privacy rights of children under thirteen without consulting their parents because of the agency relationship created by COPPA, even though no similar authority would exist for high school students over thirteen, to whom COPPA would not apply. IXL identifies no basis to read COPPA to create such a perverse scheme." *Id*.

While IXL protests that it was not misleading in its selective quotations from COPPA 15 U.S.C. § 6501, *et seq*., the COPPA Rule 16 C.F.R. part 312, COPPA's statement of basis and purpose, and blog posts by an FTC employee, nor in its misattribution of the source and authority of those

quotations, the Federal Trade Commission disagreed in no uncertain terms. In their unanimous *amicus* brief, the five commissioners of the FTC deemed IXL statements "mischaracterization[s]," with Commissioner Ferguson going so far as to call them as a "brutal misreading of COPPA." Dkt. 31 at 5–8. And while IXL described remarks in the FTC's January 11, 2024 Notice of Proposed Rulemaking as an "articulat[ion] of the basis" of its agency-as-a-matter-of-law argument and elided[2] that this was just a proposal, in the Final Rule approved for publication on January 16, 2025, "the Commission decided against adopting some proposed changes, . . . including changes relating to the requirements applicable to educational technology companies operating in a school environment."[3]

IXL now contends that its argument for presumptive agency as a matter of law "closely tracks the *Balderas* decision," but IXL did not cite that opinion in its motion or reply. *See generally* Dkts. 19, 32. Further, as with IXL's other cited authority, *Balderas* is readily distinguishable.

In *Balderas*, the State of New Mexico sued Google alleging that its web-based service G-Suite for Education "sp[ied] on New Mexico students' online activities for its own commercial purposes, without notice to parents and without attempting to obtain parental consent." *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1256 (D.N.M. 2020). The State alleged that this conduct violated COPPA and certain New Mexico state laws. *Id*. In granting Google's Rule 12(b)(6) motion for failure to state a claim for relief that Google violated COPPA in relying on schools to serve as the parent's agent or to act as intermediaries between Google and parents in the notice and consent process, the *Balderas* court observed that the State's complaint did not allege either "that Google fail[ed] to obtain consent from schools, or that schools fail[ed] to obtain consent from parents" to collect students' personal information, as the Plaintiffs have here. *Id*. at 1263. Further, *Balderas* did not concern California law, nor did the court's opinion analyze agency principles, the elements of contract formation, or consider whether it was legally possible for students and parents to give assent

---

[2] *See* Dkt. 19 at 5–6 (citing 89 Fed. Reg. 2034, 2055 (2024) but omitting the descriptive title).
[3] *FTC Finalizes Changes to Children's Privacy Rule Limiting Companies' Ability to Monetize Kids' Data*, January 16, 2025 (*available at* https://www.ftc.gov/news-events/news/press-releases/2025/01/ftc-finalizes-changes-childrens-privacy-rule-limiting-companies-ability-monetize-kids-data).

in the context of compulsory public education. *See generally id*. Likewise, *Balderas* did not address whether COPPA authorizes a school district to consent to arbitration on behalf of students and their parents. *See generally id*. Far from "closely track[ing]" the *Balderas* decision, IXL's arguments have virtually nothing to do with it.

This Court's conclusion that COPPA did not create an agency relationship as a matter of law could have ended the inquiry entirely. If there is no agency relationship, then determining the scope of an agent's authority is a purely theoretical exercise. Nevertheless, the Court went on to consider, assuming that COPPA did create an agency relationship as a matter of law, whether the scope of the districts' authority to consent to data collection as agents of the parent principals encompassed the authority to consent to arbitration. *Shanahan*, 2024 WL 4658276, at *3–*4. IXL argued to this Court and apparently intends to argue on appeal that "the FTC's COPPA commentary directly addressed schools' agency [*sic*] to secure education technology services by agreeing to providers' data collection, without mentioning arbitration, [but that] under California law," agreeing to an arbitration agreement is a "necessary step in providing that consent." Dkt. 51 at 5–6.

This Court considered and properly rejected this argument as well. Far from "agree[ing]" with IXL's analysis, *see* Dkt. 51 at 6, the Court distinguished and found "inapposite" the *Crypto Asset Fund* decision upon which it was based. *Shanahan*, 2024 WL 4658276, at *4 (discussing *Crypto Asset Fund, LLC v. OPSkins Group Inc.*, 478 F. Supp. 3d 919 (C.D. Cal. 2020)). In *Crypto Asset Fund*, the agent had actual authority to act on behalf of the plaintiff in a cryptocurrency transaction as a matter of fact, and thus had implicit authority to sign an arbitration agreement to complete a transaction that was actually requested by a cryptocurrency buyer. 478 F. Supp. 3d at 919. The Court acknowledged the basic precepts of California agency law—hardly an "agreement" with IXL's analysis—but held that the facts of this case "stand in sharp contrast" to those in *Crypto Asset Fund*. There, it was not disputed that the plaintiff principal requested that its agent complete the cryptocurrency purchase, whereas here, there is no evidence whatsoever that the Plaintiff parents requested that their school districts act as their agents for any purpose. *Shanahan*, 2024 WL 4658276, at *4.

Because they plainly contradict black-letter law, IXL's agency arguments are "wholly without

merit" and therefore frivolous. *Wilcox*, 848 F.2d at 1009.

IXL did not argue that there is an actual agency relationship as a matter of fact between school districts and parents, and it is indisputable that the Plaintiffs do not "really employ" their respective school districts, so this cannot serve as the basis for its appeal.

IXL likewise did not argue that there is an ostensible agency relationship as a matter of fact between school districts and parents, so this cannot serve as the basis for its appeal either. An ostensible agency relationship is premised on the representations of the principal (here, the Plaintiffs) to a third party (here, IXL), so IXL would have had this evidence if it existed.

IXL never sought discovery as to the existence of an agency relationship between the Plaintiff parents as principals and their school districts as their agents, nor as to the scope of the school districts' authority, so there is no order denying discovery for IXL to appeal.

An appeal on any of these grounds would be "for purely dilatory purposes" and "wholly without merit." *United States v. Dunbar*, 611 F.2d 985, 988 (5th Cir. 1980) (en banc) (*adopted by US v. LaMere*, 951 F.2d 1106, 1109 (9th Cir. 1991)); *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1003 (9th Cir. 2002).

The only issue preserved for appeal is whether COPPA, as a matter of law, created an agency relationship between school districts and the Plaintiff parents. For the reasons explained above, the Court correctly determined it did not and that IXL's reading of COPPA would "undermine its primary statutory purpose." *Shanahan*, 2024 WL 4658276, at *3–4. COPPA and its implementing Rule are utterly silent as to agency. This Court's disposition was "so plainly correct" that nothing can be said against it. *Dagdagan v. City of Vallejo*, 682 F. Supp. 2d 1100, 1116 (E.D. Cal. 2010). IXL's argument that COPPA imposes an agency relationship on parents is "wholly without merit" and the result is "obvious": the Ninth Circuit will affirm. *Wilcox*, 848 F.2d at 1009. Accordingly, IXL's arguments with respect to agency are frivolous

**C.    IXL's representation and warranties argument is frivolous.**

For the first time at oral argument, IXL advanced the theory that the Terms represent that school districts have authority to consent to data collection on behalf of parents. *Shanahan*, 2024 WL

4658276, at *4. IXL now seeks to characterize this argument as a "claim" instead of an "argument," and for this reason asserts that it was not waived for the purposes of appeal. Dkt. 51 at 8, n. 5. However, the law is clear: "the district court need not consider arguments raised for the first time in a reply brief," nor at oral argument after the briefing is closed. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (on reply); *Ramirez v. Salvation Army*, No. C06-0631 TEH, 2006 WL 1867722, at *9 (N.D. Cal. July 6, 2006) (*citing Eberle v. City of Anaheim*, 901 F.2d 814, 817–18 (9th Cir. 1990)) (at oral argument). While the Court would not have erred in declining to consider this argument, *Zamani*, 491 F.3d at 997, the Court did indeed consider it. *Shanahan*, 2024 WL 4658276, at *4. IXL thus has no basis to argue on appeal that the Court erred in failing to consider an argument that it in fact considered; to do so would be "wholly without merit." *See Kitsap*, 314 F.3d at 1003.

IXL likewise argues that the Court misunderstood its point that, rather than show apparent authority, the representation and warranties clause in its Terms is evidence of a school district's actual authority to bind students to arbitration. *See* Dkt. 51 at 8–9, *see* Hearing Tr. at 11:1–19:8. Perversely, IXL attributes statements in its own purported contract of adhesion—it is not in dispute that districts are unable to negotiate provisions in IXL's Terms of Service—to the districts themselves, arguing that "there is no reason that the school districts would have lied when making their representations." [4] Dkt. 51 at 9. But it is clear that the Court understood this argument perfectly well and simply rejected it. *Shanahan*, 2024 WL 4658276, at *4 ("[E]ven if the school districts had actually obtained the required authorization from the parents to consent to data collection, that still does not mean the parents impliedly authorized the school districts to consent to arbitration.").

The Court's disposition of this argument was "so plainly correct that nothing can be said on the other side," and the "result is obvious": the Ninth Circuit will deem this argument waived. *Dagdagan*, 682 F. Supp. 2d at 1116 (E.D. Cal. 2010) (citation omitted); *Wilcox,* 848 F.2d at 1009.

---

[4] To the extent that IXL believes that the "lies" of its school district customers put them in breach of its Terms of Service that govern IXL's relationship with those districts, pursuant to Section 22 of the Terms, IXL's remedy would be to initiate individual arbitration against those districts through "JAMS, under the Optional Expedited Arbitration Procedures then in effect for JAMS." Terms of Service, *available at* https://www.ixl.com/termsofservice (accessed January 16, 2024).

**D. The Court may consider whether an appeal is intended to run up costs or delay.**

If a student in the putative class was nearing the end of Kindergarten when this case was filed in May 2024, she will be within three months of the end of first grade by the time the Court hears oral argument on this motion. This case has not substantially progressed in the nine months that will have passed since it was filed. IXL intends to abuse the appeals process to continue to delay the justice owed to the millions of children whose information it is alleged to have unlawfully profited from.

The Court may consider IXL's dilatory conduct when deciding whether to certify IXL's appeal as frivolous. *See Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 790–91 (9th Cir. 2018).

**E. Conclusion.**

Plaintiffs appreciate that their request to certify IXL's appeal as frivolous places the Court in uncharted territory, but it is territory that the *Coinbase* majority expressly invited district courts to explore. While the power to certify an interlocutory appeal as frivolous originally arose in the context of appeals from rulings relating to qualified immunity, double jeopardy, and separation of powers, *see* Dkt. 48 at 10, the *Coinbase* court recognized that, as in those circumstances, an interlocutory appeal from a wholly meritless motion to compel arbitration serves neither the interests of justice nor the purposes of the Federal Arbitration Act. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 745 (2023).

Plaintiffs do not make this request lightly and respectfully ask that the Court, despite its initial reservations[5] and with the benefit of the parties' briefing and upcoming oral argument, certify IXL's appeal as frivolous and allow this case to proceed on the current schedule.

Dated: January 17, 2025                    Respectfully submitted,

By: /s/ *Julie Liddell*

---

[5] The Court's remarks on this point were as follows:

> I understand Plaintiffs' position. I will say that I'm not inclined to view this as a frivolous issue. We had an extensive back-and-forth because I don't see this as -- as you can probably tell from the questions, I have a lot of doubts about the motion to compel arbitration; but at the same time in the event that I deny it, I don't think that the position that IXL has taken is at all -- is frivolous, which is a pretty high bar; but you can bring whatever motion you think is appropriate, and I understand Plaintiffs' position in that respect.

October 22, 2024 Hearing Tr., 43:5–14.

| | |
|---|---|
| Julie Liddell (*pro hac vice*) <br> julie.liddell@edtech.law <br> **EDTECH LAW CENTER PLLC** <br> P.O. Box 300488 <br> Austin, TX 78705 <br> Telephone: (737) 351-5855 | Michael F. Ram (CA Bar No. 238027) <br> mram@forthepeople.com <br> **MORGAN & MORGAN** <br> 711 Van Ness Avenue, Suite 500 <br> San Francisco, CA 94102 <br> Telephone: (415) 358-6913 <br> Facsimile: (415) 358-6923 <br><br> Ryan J. McGee (*pro hac vice*) <br> rmcgee@forthepeople.com <br> John A. Yanchunis (*pro hac vice*) <br> jyanchunis@forthepeople.com <br> **MORGAN & MORGAN** <br> 201 N Franklin Street, 7th Floor <br> Tampa, FL 33602 <br> Telephone: (813) 223-5505 <br> Facsimile: (813) 222-4736 <br><br> *Attorneys for Plaintiffs* |